UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAMON CHAPPELLE,**<br>　　Plaintiff<br><br>v.<br><br>**DAVID VARANO,**<br>　　Superintendent, Sci-coal Township<br>**MICHELLE KODACK, RECORDS**<br>　　Supervisor, Sci-coal Township<br>**DEBORAH HERBST, RECORDS**<br>　　Specialist, Sci-coal Township<br>**MR. DUNN,**<br>　　Unit Manager, Sci-coal Township<br>**MS. FOULDS,**<br>　　Counselor, Sci-coal Township<br>**JOHN DOE;**<br>**JANE DOE 1; and**<br>**JANE DOE 2,**<br>　　　　Defendants | NO.: 4:11-cv-00304<br><br>JUDGE CONNER<br><br>MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
(Doc. 7)

　　Damon Chapelle filed this civil rights suit under 42 U.S.C. §1983 alleging an Eighth Amendment claim of overdetention following service of his maximum state sentence. Chappelle also alleges that an erroneous state detainer prevented his release into a halfway house at the end of his federal sentence. Defendants are employees of the Pennsylvania Department of Corrections (DOC) assigned to the State Correctional Institution at Coal Township (SCI Coal), a medium security prison.[1] Chapelle also asserts

---

[1] Defendants are sued in their individual and official capacities. (Compl. ¶¶ 5–8, Doc. 1.) Chappelle alleges they deprived him of his constitutional rights while acting under color of state law. (*Id*. ¶ 7).

2

a claim for false imprisonment under Pennsylvania state law. As relief, he seeks damages and a declaratory judgment that defendants violated his constitutional rights.[2]

Before the court is a motion to dismiss filed by the five named defendants—Varano, Kodack, Herbst, Dunn, and Foulds ("movants").[3] The motion has been referred to the undersigned magistrate judge for a report and recommendation[4] and is now ripe for adjudication.[5] For the following reasons, it is recommended that the motion be granted in part and denied in part.

*FINDINGS AND RECOMMENDATIONS*

**I. Factual Background**

The facts alleged in plaintiff's complaint are accepted as true for purposes of the motion, and are viewed in the light most favorable to plaintiff. The relevant factual allegations in Chappelle's complaint can be summarized as follows (*See* Compl., ¶ ¶ 9-72,

---

[2] The court has jurisdiction over the constitutional claims under 28 U.S.C. §§1331 and 1343; to issue declaratory relief under *id.* §§ 2201(a) and 2202; and over the state law claims via the supplemental jurisdiction provisions of *id.* § 1367(a).

[3] Doc. 7.

[4] On August 31, 2011, Judge Conner referred the motion to the undersigned magistrate judge. (Doc. 15.)

[5] Chappelle initiated this suit on February 11, 2011, with the filing of his complaint. (Doc. 1.) On March 1, 2011, the Court granted Chappelle's request to proceed *in forma pauperis*. (Doc. 6.) Movants filed their motion to dismiss (Doc. 7) on April 18 and a brief in support (Doc. 9) on May 2. Movants attached several exhibits to their brief (Docs. 9-1 to 9-6) which plaintiff contends are inadmissible. This issue is discussed *infra*. Plaintiff's brief in opposition (Doc. 10) was filed May 16; movants' reply brief (Doc. 11), May 19.

Doc. 1): Chappelle was convicted in 1996 on state charges and began serving a term of 6-12 years.[6] He was released on parole in April 2001, but was arrested on new state charges in September 2001. The federal government decided to adopt the prosecution of the new charges, and the state charges were dropped. Chappelle remained in state custody, however, until July 18, 2007, to finish serving the remainder of his maximum 12-year sentence on the 1996 conviction (his parole had been revoked). In the interim, Chappelle was convicted on the federal charges. When Chappelle completed his maximum state sentence on July 18, 2007, he was transferred to federal custody to begin serving his federal sentence.

    Despite the fact that Chapelle had completed his state sentence, a state detainer was lodged against him while he was in federal custody. The detainer prevented Chappelle from participating in the Release Preparation Program which had been recommended by the federal sentencing judge. Under the latter program, a federal prisoner can be released to a halfway house near the end of his sentence. Because of the detainer, Chappelle was not eligible for release to a halfway house on February 11, 2009, and remained in the federal prison until the end of his sentence on April 14, 2009. (Compl., ¶¶ 18-22, Doc. 1). On the latter date, instead of being released, Chappelle was transferred back to SCI Coal and re-incarcerated. Despite numerous complaints made by

---

[6] For sentence computation purposes, Chappelle began serving his sentence the previous year, on January 26, 1995, presumably due to pre-trial detention. Chappelle was convicted under the alias "Kevin Jessup."

Chappelle and his federal criminal attorney that he had already served his maximum sentence, movers either ignored his requests or took no meaningful action. At one point, movants Kodack and Herbst told Chappelle that "the DOC had extended his maximum date to 2014." (*Id*. ¶ 27.) He was later told he needed to direct his complaints to the Parole Board, which he did to no avail. (*Id*. ¶¶ 29-33). Chapelle was not released from custody until July 31, 2009, about ten days after he filed a *pro se* mandamus petition in the Commonwealth Court of Pennsylvania. (Compl. ¶ 67-69, Doc. 1).

Chappelle details in his complaint extensive efforts made by him and his attorney made to have his over-detention recognized, including the following:

- While in federal custody, he "sought help from Defendants in getting the detainer lifted so that he could participate in the required programs and be eligible for supervised release on or about February 11, 2009." (Compl. ¶ 20, Doc. 1).

- Immediately after his transfer from federal custody back to state custody on April 14, 2009, he began filing requisite forms and using the grievance process to alert DOC staff members that he was being illegally detained." (*Id*. ¶ 24.)

- Initially, DOC records staff, including Kodack and Herbst, gave him a Sentence Status form correctly showing his maximum release date had been January 26, 2007. (*Id*. ¶ 25.)

- "Approximately ten days later," Kodack and Herbst "informed Mr. Chappelle that the DOC had extended his maximum date to 2014." (*Id*. ¶ 27.)

- On April 22, 2009: Chappelle's federal criminal attorney wrote to Superintendent Varano, informing him that an error had been made in calculating Chappelle's sentence and asking him to order a review of Chappelle's records to correct the error. (*Id*. ¶ 45.)

5

- Around May 18, 2009: Chappelle filed a written request to Kodack, asking to speak with her about the error in his sentence calculation. (*Id.* ¶ 28.) Herbst "summarily responded" that Chappelle "needed to contact the Parole Board for answers." (*Id.* ¶ 29.)

- Kodack responded similarly, "stating that the Parole Board was responsible for sentence calculations and that the issues raised in his grievance needed to be addressed to the Parole Board." (*Id.* ¶ 30.)

- Chappelle sought, but received no assistance from the Parole Board, leaving him "entirely dependent on Defendants at SCI-Coal Township, to investigate and resolve this urgent problem." (*Id.* ¶ 32–33.)

- Chappelle appealed his initial grievance denial to Verano, who "rubber-stamp[ed]" Kodack's initial response that sentence-calculation issues are handled by the Parole Board. (*Id.* ¶ 34.)

- Chappelle sent written request forms directly to Varano, explaining that he "had previously served his entire state sentence and was currently being held illegally," but Varano merely told Chappelle to "direct his issue" to the Records Office—where Kodack and Herbst worked—and that a supervisor would be able to assist him. (*Id.* ¶¶ 42–43.)

- Despite requests from both Chappelle and his attorney, Varano took no "steps to investigate or resolve the problem." (*Id.* ¶ 46.)

- Between April 14 and July 31, 2009, Chappelle frequently asked movants Unit Manager Dunn and Counselor Foulds "for help regarding his illegal detention and regarding the universal refusal of other DOC employees to help him." (*Id.* ¶ 50.) Neither Dunn nor Foulds took any meaningful action to investigate or resolve Chappelle's situation. (*Id.* ¶ 51.)

- Similar patterns played out with the three unnamed defendants (*Id.* ¶¶ 53, 54, 56–63); no action was taken.

- Around July 20, 2009: Chappelle filed a pro se mandamus petition in the Commonwealth Court of Pennsylvania seeking release from DOC custody, asserting that he was being illegally imprisoned in SCI Coal. (*Id.* ¶ 67.) The DOC never filed a response.

- On July 31, 2009: The DOC released Chappelle from custody without explanation.

## II. Issues Presented

Movants do not dispute the length of plaintiff's over-detention, the accuracy of the relevant dates, the fact that mistakes were made, nor the legal principle that imprisonment beyond one's term constitutes "punishment" within the meaning of the Eighth Amendment. Rather, movants contend that the sentence computation error was made by the Pennsylvania Bureau of Probation and Parole ("Parole Board") and that "the Court, as a matter of law, can hold that defendants are not liable due to their reliance on another administrative agency." (Doc. 9, at 9). As to the effect of the state detainer on Chappelle's federal sentence, movants argue that prisoners have no right to be incarcerated in any particular facility, including a halfway house.

## III. Standard of review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must "accept all [of the plaintiff's] factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche*

7

*Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1322–23 (2011) (applying the Rule 12(b)(6) standard).

The complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must do more than present "bald assertions" and "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . . .

*Twombly*, 550 U.S. at 555 (alteration in original)(citations omitted). Plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id.* at 570. *See also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (reviewing *Twombly*).

8

A plaintiff "armed with nothing more than conclusions" is not entitled to discovery. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. *Twombly*, 550 U.S. at 556. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd on other grounds*, 129 S. Ct. at 1937).

The Third Circuit has outlined a two-part analysis that courts should use when deciding a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1950) (internal

9

quotation marks omitted). That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. *Id.* at 211.

## IV. Discussion

### *(A) Section 1983 claim for Eighth Amendment over-detention*

Section 1983 creates no substantive rights, but rather provides a remedy for infringement of rights established by other federal laws. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . ."). The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (West 2010). Recovery under § 1983 requires proving that "a person acting under color of state law" deprived the plaintiff of a "right secured by the Constitution and the laws of the United States." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Chappelle claims that movants deprived him of his Eighth Amendment right to be free of cruel and unusual punishment in that they caused him to be incarcerated without penological justification. Such a claim under § 1983 requires the plaintiff to establish three elements:

> (1) a prison official had *knowledge* of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either *failed to act or took only ineffectual action* under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a *causal connection* between the officials response to the problem and the unjustified detention.

*Montana v. Thompson*, 603 F.3d 243, 253 (3d Cir. 2010) (emphasis added) (citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)). *See generally Sample*, 885 F.2d at 1108–09 (discussing two ways in which incarceration can be penologically justified).

**(1) Release to halfway house while in federal custody**

There is no dispute that the detainer lodged against Chappelle while he was serving his federal sentence was based upon an error. At the point he began service of his federal sentence, Chappelle had already served his maximum state sentence on the 1996 conviction, and there is no allegation that Chappelle had any other outstanding state charges pending against him. Accordingly, it is undisputed that there was no legal basis for the state detainer.

How the state detainer came into existence is not known. Chappelle contends only that movants had a duty to "investigate the illegality of [] the state detainer placed on him while he was in federal custody . . . ". (Doc. 10, at 2). Movants argue:

> . . . somehow the plaintiff is claiming that the defendants had the ability to lift a detainer placed upon him by some unknown entity. There is no basis in law or logic that the DOC has a duty to investigate whether a detainer not issued by them was lawfully imposed . . . or to become legal advocates on behalf of the plaintiff . . .

(Doc. 9, at 7-8).

11

Regardless of whether movers were responsible for the detainer or failed to investigate its illegality, plaintiff cannot state a claim for relief based upon his non-eligibility for release to a halfway house. Plaintiff does not contend that the detainer caused him to serve additional time on his federal sentence; only that he could have been released to a halfway house but for the detainer.

A federal prisoner has no right to serve his sentence in any particular facility, including a halfway house. Title 18 U.S.C. § 3621(b) provides that "[a]ny order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau [of Prisons] . . . to determine or change the place of imprisonment of that person." *Id.* As applied in this case, BOP was not bound by the federal court's recommendation that Chappelle be allowed to participate in a pre-release program, including release to a halfway house two months prior to the end of his sentence. Accordingly, the complaint fails to show a plausible Eighth amendment claim on this ground because the first element is missing: Chappelle did not receive "unwarranted punishment" while in federal prison.

**(2)     Chappelle's over-detention at SCI Coal after release from federal custody**

Chappelle alleges that he and his attorney repeatedly alerted movants that Chappelle had already served his maximum sentence and was being illegally incarcerated.

12

Despite numerous requests for help from mid-April to mid-July 2009, none of these movants took any meaningful action.

Movants respond that the Parole Board issued an order saying that Chappelle's maximum date for release had not yet expired, and movants were entitled to rely on this conclusion:

> The DOC tended to believe that the assertions of the [Parole Board] [were] more reliable and their reliance thereon cannot be said to be even negligent even if the Board of Probation and Parole improperly recomputed his sentence. . . The Court, as a matter of law, can hold that defendants are not liable due to their reliance on another administrative agency.

(Doc. 9, at 8-9). Movants provide no legal authority for the assertion that they are shielded from responsibility because of the actions of the Parole Board, even if such were factually established.

In support of their theory of non-liability, movants attach six exhibits to their motion.(Docs. 9-1 to 9-6). Thus, the propriety of considering exhibits outside the pleadings must be first addressed.

**Consideration of evidence outside the pleadings (Movants' Exhibits)**

The exhibits in question consist of Parole Board and DOC documents related to plaintiff's sentences, along with an unsigned declaration from movant Kodack dated July 31, 2009.

In adjudicating a motion to dismiss, courts may "consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public

13

record." *Id.* (citing 5A Charles A. Wright & Alan Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)). With few exceptions, the consideration of material outside the pleadings and attachments requires converting the motion to one for summary judgment so that the plaintiff has an opportunity to respond. *Id.* (citing *Cortec*, 949 F.2d at 48).

Only "narrowly defined types of material" fit the exception to the rule against considering material outside the complaint and its attachments. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). *See*, e.g.*, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)(contract which was basis of plaintiff's claim could be considered); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)(annual report could be considered where the complaint made an "unambiguous reference" to figures contained therein).

Movants argue that the six exhibits attached to their motion should be considered because "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit ,* 998 F.2d at 1196(citing, *e.g.*, *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

Plaintiff correctly points out that the exhibits relate to movants' defense, and not to plaintiff's claims for purposes of a Rule 12(b)(6) motion. Further, plaintiff's claims are not based upon the documents, or even upon the question of the origin of the sentencing computation errors. Plaintiff claims that regardless of where the error came from,

14

defendants were notified of the error and "failed to take meaningful action to resolve the complaints he made *to them* about his illegal detention." (Doc. 10, at 9).

For the foregoing reasons, the undersigned concludes that the documents do not relate to plaintiff's claims and therefore do not fall within the "narrowly defined types of material" that justify departure from the normal procedure. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Accordingly, it is recommended that the exhibits be excluded from consideration for purposes of the pending motion.

**Whether the complaint states a claim for a relief**

As discussed above, in order to survive a motion to dismiss, the complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Reading the complaint as a whole, plaintiff has stated a plausible Eighth Amendment claim as to his over-detention at SCI-Coal from April 14, 2009 to July 31, 2009. Plaintiff has alleged that 1) movants were DOC prison officials who had knowledge of the risk that unwarranted punishment was being inflicted; (2) movants either failed to act or took only ineffectual action, indicating deliberate indifference to

15

plaintiff's plight; and (3) a causal connection between movants' response and the unjustified detention. *Montana v. Thompson*, 603 F.3d at 253.

One of the leading cases on overdetention claims in the Third Circuit is *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). In that case Sample, was serving a life sentence for murder when the sentence was vacated. *Id.* at 1102. The authorities holding Sample contacted Diecks, the Senior Records Officer in the Pittsburgh Correctional Institution, to find out whether Sample could be released. *Id.* Diecks said no: Sample, he said, had time to serve on another sentence. *Id.* Sample was not released until nine months after his sentence should have been completed, and only after Parole Board "eventually determined" the error and Sample sent Diecks a copy of the Parole Board's determination. *Id.* at 1102–03. In upholding the District Court's ruling that Diecks was liable to Sample on an overdetention claim, where the question of deliberate indifference was hotly contested, the Third Circuit observed:

> It is not disputed that Diecks had the duty, believed he had the duty, and was understood by prisoners to have the duty expeditiously to unravel sentencing problems such as Sample's, as well as the authority to release inmates when his interpretation of their records indicated release to be appropriate.

*Id.* at 1112.

Here, movants have offered no factual or legal authority for the proposition that they had no duty to "unravel sentencing problems" regardless of where they originated. Whether movants were entitled to rely upon the Parole Board's computation (a

proposition for which they offer no legal authority), is beside the point. The sole issue for resolution here is whether plaintiff has stated a plausible claim against movants for overdetention at SCI Coal. For the reasons stated, the undersigned concludes that he has.

It is therefore recommended that the Court deny movants' motion to dismiss the Eighth Amendment claims as they relate to the time that Chappelle spent at SCI Coal on and after April 14, 2009.

### *(B) False Imprisonment*

Although movants' motion requests that "the complaint" be dismissed, which would include dismissal of Chappelle's false-imprisonment claim in Count II of the complaint, movants do not discuss the claim at any point in their briefs, rendering the motion inapplicable to Count II.

### V. Conclusion

For the foregoing reasons, it is recommended that the Court rule on the pending motion to dismiss as follows:

1. GRANT the motion as to all movants on the Eighth Amendment claim insofar as it arises out of Chappelle's alleged missed opportunity to be released to a halfway house in February 2009;

2. DENY the motion as to all movants on the Eighth Amendment claim insofar as it arises out of the time Chappelle spent at SCI Coal on and after April 14, 2009.

Signed on September 30, 2011.

_____
MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE