## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON CHAPPELLE,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 4:11-CV-304** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DAVID VARANO, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

### I.  Background

This matter comes before the court for resolution of a time-sensitive discovery dispute involving a subpoena *duces tecum* issued to a third-party deponent for records regarding a settlement entered into between the plaintiff and that third-party agency, the Pennsylvania Board of Probation and Parole.

Briefly, the factual background of this dispute is as follows:  The plaintiff, Damon Chappelle, was previously confined in state prison, where he was being held as a state parole violator.  Chappelle has now brought a civil action against state Department of Corrections' officials alleging that these officials violated his rights under the Eighth Amendment to the United States Constitution when they held Chappelle in custody, over his protests, beyond what should have been his maximum release date, a maximum release date that Chappelle alleges was miscalculated by

1

parole authorities. Thus, while this lawsuit names only Department of Corrections officials as defendants, the underlying conduct which lies at the heart of this litigation involves allegations of excessive detention arising out of what may have been a miscalculation of a state parole violations sentence.

In the course of discovery, the defendants have recently learned that Chappelle has separately settled a claim with the Pennsylvania Board of Probation and Parole (PBPP). The defendants have now noticed a deposition of a state parole official, to question that official about the parole calculation in Chappelle's case and to elicit information regarding the degree to which corrections officials as jailers may challenge these parole violation sentence calculations. In addition, the defendants seek in this deposition to learn more about the settlement entered into by Chappelle and the PBPP. Towards that end, the defendants have served a subpoena *duces tecum* upon the deponent directing him to produce all state parole records in that agency's possession that relate to Chappelle, including records pertaining to this settlement.

On August 3, 2012, the plaintiff moved to quash this subpoena to the extent that it sought settlement documents. (Doc. 33.) On August 6, 2012, the defendants responded to this motion to quash, making a proffer of relevance in support of this subpoena,(Doc. 36.), and this dispute was referred to the undersigned for resolution. (Doc. 35.) Recognizing that the discovery deposition in issue here was scheduled for August 8, 2012, we immediately conferred with counsel on August 6, 2012, (Doc.

38.), and directed the "PBPP [to] produce for the Court's *in camera* review all documents, correspondence, and other documents related to the settlement of plaintiff's claims against the PBPP." (Doc. 37.)  Mindful of the parties' deposition schedule, we also stated that:  "Following the Court's *in camera* review, the Court will promptly rule upon Plaintiff's motion to quash." (<u>Id</u>.)

We have now received this *in camera* submission, which consists of approximately 16 pages, reflecting e-mail exchanges between Chappelle's counsel and PBPP attorneys, along with the settlement agreement between the parties. Having conducted an *in camera* review of these materials we conclude in light of the proffer of relevance made by the defendants that these records do not contain information that is probative, relevant or calculated to lead to the discovery of admissible evidence.  Therefore, we will grant this motion to quash.

## II.   <u>Discussion</u>

With respect to the use of subpoenas directed to non-parties as discovery tools, we note that rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment.  For example, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court."  <u>DiGregorio v. First Rediscount Corp</u>., 506 F.2d 781, 788 (3d Cir. 1974).  Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the court.  <u>Wisniewski v. Johns-Manville Corp</u>.,

812 F.2d 81, 90 (3d Cir. 1987).  Thus, a court's decisions regarding the conduct of

discovery, and whether to permit disclosure of certain information, will be disturbed

only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699

F.2d 129, 134 (3d Cir. 1983).  This far-reaching discretion extends to rulings by

United States Magistrate Judges on discovery matters.  In this regard:

> District courts provide magistrate judges with particularly broad
> discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l
> Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585
> (D.N.J.1997).  When a magistrate judge's decision involves a
> discretionary [discovery]  matter . . . , "courts in this district have
> determined that the clearly erroneous standard implicitly becomes an
> abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224
> F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States,
> 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate
> judge's discovery ruling "is entitled to great deference and is reversible
> only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys.
> Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v.
> BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)
> (holding that discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223
> F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's
> resolution of discovery disputes deserves substantial deference and
> should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

When presented with requests for the disclosure of documents relating to the

settlement of claims, however, certain basic principles guide the exercise of this

discretion.  In this specific factual context, there is an "inherent tension between

Fed.R.Evid. 408, which prohibits the use of settlement discussions to prove liability,

and Rule 26, which permits liberal discovery." Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J. 2009).  Thus, while the "Third Circuit does not recognize a settlement privilege, . . .  Parties seeking to discover such [settlement] communications must make a heightened, more particularized showing of relevance. See Lesal Interiors v. Resolution Trust Corp., 153 F.R.D. 552 (D.N.J.1994)." Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J. 2009).  Accordingly, only a " ' "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement" ' Morse/Diesel, Inc. v. Fidelity & Dep. Co., 122 F.R.D. 447, 450 (S.D.N.Y.1988) (quoting Bottaro v. Hatton Assoc., 96 F.R.D. 158, 159 (E.D.N.Y.1982)); Morse/Diesel, Inc. v. Trinity Indus., 142 F.R.D. 80 (S.D.N.Y.1992)," Doe v. Methacton Sch. Dist., 164 F.R.D. 175, 176 (E.D. Pa. 1995) will justify the release of these settlement documents.  Moreover, in order to ensure the confidentiality of these settlement records courts have in the past examined disputed records *in camera*, in order to determine whether the release of specific documents is supported by a particularized showing of relevance.  Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J. 2009).

This is the approach we have adopted here.  In conducting this *in camera* review we have been guided by the proffer of relevance articulated by the defendants in their response to this motion to quash.  This proffer alleged that: "Counsel wants

to review these documents to see if there are any factual matters in the documents which supports the defense that it was PBPP's fault Plaintiff was overdetained." (Doc. 36, p.2.)  Therefore, in light of this particularized proffer, we have examined these materials with an eye towards determining whether they contain admissions of liability by the PBPP, acknowledging that that agency was solely responsible for any constitutional infractions relating to Chappelle's detention.[1]

Reviewing these materials in light of the defendant's proffer of particularized relevance, and mindful of the fact that Rule 408 generally prohibits the use of settlement documents as evidence, we conclude that the proffered settlement records should not be disclosed.  At the outset, we find the terms and provisions of the settlement documents make it clear that the parties to this settlement did not envision the public release of these records but rather took steps to ensure the confidentiality

---

[1]We note that defense counsel's letter to the deponent transmitting the subpoena, which is attached as an exhibit to the plaintiff's motion to quash also suggested that defense counsel wanted to determine whether Chappelle's attorney had claimed in communications to the PBPP that that agency was in some way responsible for the excessive detention of her client. To the extent that defense counsel seeks to discover whether Chappelle's own attorney, during settlement discussions with some other non-party in this lawsuit implied that this other, non-party had some potential exposure to litigation, we make the following observations. First, it is the role of attorneys as advocates to advance their client's interests and to argue on behalf of their clients. In this role, attorneys often argue matters in the alternative, without being strictly bound to a rigid consistency of claims. Indeed, this practice of making claims in the alternative is expressly endorsed by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8.  Given the right, and responsibility, of counsel to advance claims in the alternative, we conclude that the representations of counsel would not be relevant, admissible, or calculated to lead to the discovery of admissible evidence.

of this agreement, and made certain mutual commitments to one another in this regard. We further find that nothing in these materials constitutes in any way an admission of liability for any constitutional tort by any party, and nothing in these documents endeavors to apportion any form of liability whatsoever among the Department of Corrections and the PBPP. Given these findings, we conclude that the defendants as the "parties seeking to discover such [settlement] communications [have not made] a heightened, more particularized showing of relevance, See Lesal Interiors v. Resolution Trust Corp., 153 F.R.D. 552 (D.N.J.1994)," Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J. 2009), which would entitle them to obtain these settlement documents. Therefore, we will grant this motion to quash.

Accordingly, for the foregoing reasons the plaintiff's motion to quash this subpoena to the extent that it sought settlement documents, (Doc. 33.), is GRANTED[2].

IT IS FURTHER ORDERED THAT defendants' counsel shall provide a copy of this order to counsel for the PBPP.

---

[2]Of course, while this ruling precludes access to these settlement documents which were proffered by PBPP, nothing in this ruling prevents defense counsel at the deposition from inquiring about the parole calculation in Chappelle's case and seeking information regarding the degree to which corrections officials as jailers may challenge this parole violation sentence calculations. These factual matters are relevant subjects of inquiry. Moreover, should discovery disputes arise between the parties in the course of this deposition, the court stands ready to address those disputes and concerns.

So ordered this 7th day of August 2012.


***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge