# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT

OF PENNSYLVANIA

\* \* \* \* \* \* \* \*

DAMON CHAPPELLE,                    \*

    Plaintiff            \*   Civil Action - Law

    vs.                  \*   No. 11-0304

DAVID VARANO, JOHN                  \*

DUNN, DEBORAH HERBST,       \*   (Judge Conner)

MICHELLE KODACK and          \*

RENEE FOULDS,                    \*   Electronically Filed

    Defendants            \*

\* \* \* \* \* \* \* \*

DEPOSITION OF

JOHN JANIS

August 8, 2012

Any reproduction of this transcript is
prohibited without authorization by the
certifying agency.

2

1                    DEPOSITION

2                        OF

3    JOHN JANIS, taken on behalf of the Defendants

4    herein, pursuant to the Rules of Civil

5    Procedure, taken before me, the undersigned,

6    Kayla Bolze, a Court Reporter and Notary Public

7    in and for the Commonwealth of Pennsylvania, at

8    the offices of Riverfront Office Center, 1101

9    South Front Street, Harrisburg, Pennsylvania, on

10   Wednesday, August 8, 2012, beginning at

11   9:32 a.m.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                A P P E A R A N C E S

2

3    JENNIFER J. TOBIN, ESQUIRE

4    Pennsylvania Institute Law Project

5    718 Arch Street

6    Suite 304 South

7    Philadelphia, PA   19106

8        COUNSEL FOR PLAINTIFF

9

10   TIMOTHY P. KEATING, ESQUIRE

11   PA Office of Attorney General

12   Strawberry Square

13   15th Floor

14   Harrisburg, PA   17120

15       COUNSEL FOR DEFENDANTS

16

17   ALAN M. ROBINSON, ESQUIRE

18   Deputy Chief Counsel

19   PA Board of Probation & Parole

20   1101 South Front Street

21   Suite 5100

22   Harrisburg, PA   17104-2517

23       COUNSEL FOR BOARD OF PROBATION & PAROLE

24

25

4

INDEX

WITNESS: JOHN JANIS

EXAMINATION

   By Attorney Keating                    7  -   48

EXAMINATION

   By Attorney Tobin                     49  -  144

RE-EXAMINATION

   By Attorney Keating                  144  -  145

DISCUSSION AMONG PARTIES                 145  -  146

5

## EXHIBIT PAGE

| LETTER | DESCRIPTION | PAGE IDENTIFIED |
|--------|-------------|-----------------|
| A | DOC16E Document Closed 7/30/09 | 30 |
| B | Order to Release on Parole/Reparole | 31 |
| C | 48 Hour Order to Detain | 36 |
| D | Appeal Documents | 48 |
| E | PBPP-15 | 64 |
| F | PBPP-39 | 120 |
| G | Official Recommit Order 4/16/09 | 126 |
| H | Order to Recommit 4/17/09 | 129 |
| I | Order to Recommit 7/29/09 | 138 |

6

1                        OBJECTION PAGE

2

3    ATTORNEY                                      PAGE

4    Keating      66, 70, 76, 91, 96, 128, 141, 143

5    Robinson           74, 76, 109, 133, 134, 143

6    Tobin                                          145

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

```
1                   P R O C E E D I N G S

2     -------------------------------------------------

3     JOHN JANIS, HAVING FIRST BEEN DULY SWORN,

4     TESTIFIED AS FOLLOWS:

5     -------------------------------------------------

6     EXAMINATION

7     BY ATTORNEY KEATING:

8     Q.   Mr. Janis, my name is Timothy Keating.   I'm

9     here on behalf of the Office of Attorney General

10    and I represent the Defendants in the case of

11    Damon Chappelle versus Varano, Kodack, Herbst,

12    Dunn and Foulds.   They're all employees of the

13    Department of Corrections.   Have you ever been

14    deposed before?

15    A.   No, this is my first time, sir.

16    Q.   Typically what we do is that I will go

17    through a set of instructions, how the

18    deposition works and stuff like that.   Then I

19    will ask you a series of background questions,

20    your education and that sort of thing.   And then

21    I'm going to ask you questions about how

22    Probation and Parole works, more general

23    questions about that.   And we're going to talk

24    about Mr. Chappelle who's also known as Mr.

25    Jessup.   Okay.   Is that fair?
```

8

1    A.    Sounds good, sir.

2    Q.    Okay.   Initially one thing is, you have to

3    answer all the questions verbally.   You can't

4    just shake your head yes or no because we have a

5    court stenographer and it has to go on the

6    record.   Okay?

7    A.    Understood.

8    Q.    Okay.   If you don't hear a question that I

9    ask because I slur my words or I do not speak

10   loudly enough, please let me know and I will

11   repeat the question.   Is that fair?

12   A.    Okay.

13   Q.    And if I ask you a question you don't

14   understand because the question is confusing,

15   tell me that and I will restate the question and

16   we'll try to clear away the confusion for you.

17   A.    Okay.

18   Q.    So I ask you a question, you answer a

19   question I'm going to assume you heard the

20   question, understood the question and you're

21   answering to the best of your belief, knowledge,

22   understanding, et cetera.

23   A.    Okay.

24   Q.    Are you currently on any medications or

25   anything at all that would stop you from

9

1   understanding questions and answering them

2   truthfully and honestly?

3   A.   No.

4   Q.   If I ask you a question and you don't want

5   to answer it because it's too personal for

6   whatever reason, we can take a break and you can

7   talk to Counsel about that and we'll figure it

8   out.

9   A.   Understood.

10   Q.   I don't anticipate in this type of

11   deposition that occurring, but if it does,

12   that's fine.  If at any time you want to take a

13   break for any reason, take a break for any

14   reason.  Okay?

15   A.   Okay.

16   Q.   Is there any reason that you can think of

17   today why you should not or cannot have your

18   deposition taken today?

19   A.   No.

20              ATTORNEY KEATING:

21              Did I miss any opening

22   instructions?

23              ATTORNEY TOBIN:

24              Not that I can think of.

25   BY ATTORNEY KEATING:

10

1   Q.   As a background, how old are you?

2   A.   I am 59 years old.

3   Q.   And what is your educational background?

4   A.   I have an Associate of Arts Degree from

5   Harrisburg Community College in Correctional

6   Rehabilitation, a Bachelors of Science Degree

7   from Penn State in Criminal Justice.

8   Q.   When did you receive that, sir?

9   A.   1990.  May of '90.

10  Q.   And what about any other post-graduate

11  education degrees?

12  A.   Just training certificates, which are

13  numerous, too numerous, to go into at this time.

14  Q.   Mostly relating to ---?

15  A.   Criminal justice field, probation and

16  parole.

17  Q.   And what about your work history?

18  A.   Graduating from college in 1990, I was

19  appointed as a Lebanon County probation officer.

20  Served as a Lebanon County adult probation

21  officer for approximately 12 years.  Came to the

22  Board in September, on September 10th, 2011.

23  I've been with the Board since that time.  My

24  duties over the years included the manager or

25  supervisor of the Violators Unit, ---

11

1   Q.   Uh-huh (yes).

2   A.   --- which is responsible for the issuance of

3   recommitment actions and the recalculation of

4   maximum sentences.  And I'm presently the

5   Director of the Case Analysis Division.  Under

6   my division is, in part, the Violators Unit.

7   Q.   Okay.  Let's step back for half a minute.

8   When you were with the Lebanon County Probation

9   Office, what was the nature of your duties,

10  generally?

11  A.   The supervision of probation parolees in all

12  facets of their probation.

13  Q.   And would that be limited to those who are

14  doing county time?

15  A.   That would be limited to, yes, those who are

16  under the supervision of county Probation and

17  Parole.

18  Q.   And as a general proposition, and I know

19  there are exceptions to it, if an individual is

20  sentenced to a period of incarceration, which

21  the minimum is less than two years, typically do

22  they get --- do they serve the sentence in a

23  county facility?

24  A.   That's correct.

25  Q.   And if it's more, they're typically to do

12

1    their time in a state facility?

2    A.   That's correct.

3    Q.   And there are exceptions to that; correct?

4    A.   Exactly.

5    Q.   Okay.  But as a general rule that's how

6    that's determined; correct?

7    A.   Correct.

8    Q.   Now, when you worked for Lebanon County

9    Probation as a Lebanon County Probation officer,

10   what kind of caseload did you have ---

11   A.   I had ---.

12   Q.   --- or did it change throughout the years?

13   A.   It was basically every type of supervision

14   that the County afforded.  We had different

15   levels of supervision, which is the same parole

16   agents the State has.  We have minimum

17   supervision --- medium supervision levels and

18   maximum supervision levels.  And that was based

19   on risk and needs assessments.

20   Q.   Were you in any type of managerial position

21   or did you have ---?

22   A.   I was a Probation Agent II --- or Parole

23   Officer II.

24   Q.   And did you have training relative to the

25   Pennsylvania statutes that concern parole?

13

1   A.   Yes.   I completed basic officers training,

2   which is the Board's BTA.   Presently it's called

3   BTA.   In June of 1990.

4   Q.   And statutorily do you know what statute,

5   what Act, generally concerns and outlines the

6   duties of Probation and Parole?

7   A.   I believe it would be the Prisons and Parole

8   Code.   It used to be called the Parole Act.   As

9   for the exact citing of the statute, I'm not ---

10  I don't know it offhand.

11  Q.   Is that Title 61?

12  A.   I believe it is.

13  Q.   Now, I guess you indicated ---.   I believe

14  you indicated that you are currently --- as part

15  of your role, you calculate maximum sentences of

16  parolees?

17  A.   Recalculate.   The initial calculation

18  process is --- the responsibility and authority

19  for that is given to the Department of

20  Corrections.

21  Q.   Meaning when they're initially sentenced?

22  A.   Exactly.

23  Q.   Okay.   So DOC figures out what their max is

24  when they first get in there?

25  A.   Correct.

14

1   Q.   And is there a general rule of thumb after

2   an inmate has ---?  I want to talk now about

3   state sentences.  Okay?

4   A.   Correct.  Gotcha.

5   Q.   Is there a general rule of thumb relative to

6   inmates as to when they're parole-eligible?

7   A.   Is there a general rule of thumb ---?

8   Repeat the question ---.  They're eligible for

9   parole upon reaching their minimum expiration

10  date as established by the DOC.

11  Q.   When you say they're eligible, that means

12  they're eligible for consideration for parole?

13  A.   Yes.  I believe the Board is presently

14  reviewing minimum cases three months out, three

15  to four months.

16  Q.   You mean three to four months prior to the

17  minimum ---?

18  A.   Correct.  So that we can get them out on the

19  minimum date.

20  Q.   How does the Parole Board keep track of

21  that, as to which inmates are coming up and

22  which ones are not?  How do they do that?

23  A.   The DOC structures an inmate's sentence on

24  Department of Correction Form 16E.  When our

25  Institutional Parole Office receives that

15

1  information from that 16E, they place the

2  individual inmate on a docket to be reviewed.

3  Our Case Management Division prints out those

4  dockets.  And that begins the parole process.

5  If the inmate is --- it's a first time review,

6  they would assign a parole number.  They would

7  create a file.  They would enter the initial

8  sentence into the sentence profile.  They would

9  get the case ready, forward that file to the

10  Institutional Parole Office and it would be

11  waiting for the decision makers when they come

12  to review that case for parole, whatever docket

13  it's on.

14  Q.  And you say they will get the case ready for

15  the Parole Board for review, are you talking

16  about DOC individuals or Board of Probation and

17  Parole individuals?

18  A.  The Case Management Division employees in

19  part get the file to the institutional parole

20  staff for their part, I mean, creating ---.

21  Q.  When you say case management, I'm not sure

22  if you're talking individuals.  Are case

23  management individuals DOC employees or ---?

24  A.  Board employees.

25                    ATTORNEY TOBIN:

16

1       And are those located here in
2   Harrisburg?
3   A.   Yes.
4           ATTORNEY KEATING:
5           Well, you'll get your chance to
6   talk.
7   A.   Sorry.
8   BY ATTORNEY KEATING:
9   Q.   We'll talk about that.  I'll get to that.
10  So those are Parole Board employees?
11  A.   Yes.
12  Q.   Okay.
13  A.   They are under the Board's Secretary.
14  Q.   And you've talked about Institutional
15  Office.  Do each of the State Correctional
16  Institutions have Parole Board offices within
17  the institutions?
18  A.   It is my understanding they do.
19  Q.   Do you know for a fact whether Coal Township
20  has it?
21  A.   Yes, they do.
22  Q.   Have you ever been to Coal Township?
23  A.   No, I haven't.
24  Q.   Either in the capacity as probation, parole
25  officer and/or in a more --- just as a capacity

17

1  as a guest there against your wishes?

2  A.   Rephrase that, sir.  I'm sorry.  I didn't

3  catch it.

4  Q.   Have you ever been there in a capacity as a

5  Parole Board --- or have you ever been sentenced

6  there to do time?

7  A.   No.

8  Q.   Okay.  Do you have interaction ---?  Do you

9  personally have interaction with any of the

10  Parole Board officers at the institutional

11  offices or the ---

12  A.   Yes.

13  Q.   --- correctional facilities?  If an inmate

14  is granted parole by the Board of Probation and

15  Parole, that does not necessarily mean that

16  they're released from incarceration.  Is that a

17  correct statement?

18  A.   That is a correct statement.

19  Q.   And how does the mechanism work, where

20  someone is granted parole, even considered for

21  parole?  What I'm looking for is an inmate would

22  come up for parole review, can you just

23  generally tell us what happens?

24  A.   Steps that occur to effectuate the parole.

25  As I said, the Case Management Division ships

18

1    the files to the Institutional Parole Offices

2    when an inmate is placed on a docket for minimal

3    parole review --- I mean parole review.  When

4    the decision makers meet with the inmate and

5    interview him for parole, a decision is

6    rendered.  That decision can be to refuse

7    parole, continue their decision pending receipt

8    of certain information or grant the parole or

9    reparole, which may be the case.

10       Their decisional instruments are forwarded

11   with the review packet in the file back to

12   central office.  The Minimum Review Unit, upon

13   gaining all the necessary signatures on a case

14   to render a decision, issue a Board action,

15   record that Board action, whether it's a refuse,

16   a parole, reparole, whether the decision makers

17   are continuing their decision pending receipt of

18   information.

19       So to answer your question, if a parole

20   decision is rendered or a reparole decision is

21   rendered, the Board action is issued.  The

22   release orders and the conditions of parole

23   supervision are issued.  The inmate does not

24   effectuate parole until he is signed out, he

25   signs his conditions of parole, and is released.

19

1   The fact that a Board action has been issued
2   does not mean that an inmate has effectuated his
3   parole.  It's when he signs his conditions of
4   release.
5   Q.   He has to agree to the conditions they put
6   on it?
7   A.   He has to sign his conditions of release,
8   his PBPP-11s and his 10s.  Until that point he
9   is not considered on parole.
10  Q.   Because the inmate may be granted
11  conditional parole in that he has to agree to
12  the terms and conditions set by the Parole
13  Board; right?
14  A.   It could be considered conditional.  I mean,
15  the Board is issuing a grant, but that parole
16  isn't official.  It hasn't been effectuated
17  until he signs his conditions.  A Board action
18  can be issued, but that individual is not on
19  parole solely based on the fact that the Board
20  issued a parole.
21  Q.   He has to agree to the conditions?
22  A.   Right.  He has to sign.
23  Q.   Yeah.  Well, by signing he's ---
24  A.   Right.
25  Q.   --- agreeing to the conditions.  Is that the

20

1  green sheet?

2  A.   The green sheet is PBPP-15, which outlines

3  the Board's decision, reasoning, conditions, max

4  date recalculated, max date.  The PBPP-10s

5  accompany an acting grant ---.  The PBPP-10s are

6  the official release orders.  PBPP-11s are ---

7  accompany that, which are the actual conditions

8  of parole.

9  Q.   So if someone's not being --- if an inmate

10  is not being granted parole, ---

11  A.   Correct.

12  Q.   --- they would get a PBPP-15, but not a 10

13  or 11?

14  A.   Exactly.

15  Q.   Okay.  Does the PBPP indicate what the

16  maximum date ---?

17  A.   The PBPP-15 and the 10s do indicate the

18  maximum expiration date on both paroles and

19  reparoles.

20  Q.   Is there a mechanism whereby an inmate can

21  bring to the Board's attention that they believe

22  the maximum date in the PBPP-15 is an error?

23  Can they bring that to the Board's attention?

24  A.   On recommitment Board actions there's an

25  appeals clause that accompanies every

21

1   recalculated max, which informs the

2   inmate/parole violator that he has appeals

3   rights to that recommitment Board action.  I do

4   not believe he has appeal rights to a parole ---

5   reparole.

6   Q.   If the Board of Probation and Parole has a

7   max date calculated for an inmate, who other

8   than a member of the Pennsylvania Board of

9   Probation and Parole has the right or ability to

10  change that max date?

11  A.   Your question's kind of vague.  If I may

12  answer and --- what I think your question ---.

13  On any recalculated max, and that would be on a

14  parole violator, whether it's a technical or

15  direct parole violator who was convicted of new

16  criminal charges, the Board is solely

17  responsible for recalculating that max date on

18  that Board action, notifying the offender and

19  everyone else privy to that Board action what

20  the recalculated max is.

21      In answer to your question, no, it is the

22  Board's sole responsibility to recalculate that

23  max date.  And it is our responsibility to

24  recalculate that max date for any changes.

25  Q.   So if an inmate is released, put on parole

22

1    as his conditions, and is convicted of a new

2    crime, say a federal crime, what steps does the

3    Parole Board take, if any?

4    A.    The Parole Board, upon receipt --- or being

5    informed of the conviction will first have to

6    afford the parolee his due process rights, which

7    would include a recommitment hearing for the

8    direct parole violation.  Based on that hearing

9    and the recommendations, the hearing report is

10   forwarded to the Violators Unit, which is under

11   the Case Analysis Division.  The Violators

12   Unit's responsibility is to secure the necessary

13   signatures on that hearing to effectuate the

14   action that has been recommended, the sanction,

15   if so be it.  Upon garnishing all of the needed

16   signatures is the Violator Unit technicians,

17   parole staff technicians, who are responsible,

18   then, for issuing the PBPP-15, the green sheet,

19   for the recommitment Board action, which would,

20   in fact, indicate or state a recalculated max

21   date.

22       A PBPP-39 accompanies that recommitment

23   Board action, which is forwarded to the DOC, the

24   institutional parole staff, the inmate, his

25   attorney if he has one, all interested parties.

23

1   A PBPP-39 is the Board's official recommitment

2   action.  And what that has on it is the outline

3   of the individual's case and the recalculated

4   max.  The DOC then updates their records to

5   reflect what the recalculated max is now on the

6   PBPP-39, what the Board recalculated.

7   Q.  And the DOC updates their records as to the

8   recalculated max?

9   A.  That's correct.  The Board's responsible for

10  the recalculation of the max.  As we indicated

11  earlier, the DOC's responsible for the initial

12  sentence computation.  The Board's tasked with

13  the responsibility for all recalculated maxes

14  once an individual is brought back as a

15  violator.

16  Q.  If a member of the DOC believes that the

17  recalculated max done by the Board is in error,

18  can an employee of the DOC just change that?

19  A.  No.

20  Q.  Why not?

21  A.  As I indicated previously, the Board is

22  responsible for establishing the recalculated

23  max.  The only way the DOC could change that

24  recalculated max is if they modified PBPP-39,

25  the Board's official Recommitment Order has been

24

1   issued.

2   Q.   Do you know Damon Chappelle?

3   A.   No.

4   Q.   Did you ever meet him, ---

5   A.   No.

6   Q.   --- to your knowledge?   What about Kevin

7   Jessup?

8   A.   No.

9   Q.   Prior to coming here today, did you review

10  any documents?

11  A.   Yes.

12  Q.   What did you review?

13  A.   I reviewed the Plaintiff's petition.   I

14  reviewed the Kevin Jessup --- we have him as

15  a/k/a --- his parole file.

16  Q.   To your knowledge, were you ever his parole

17  officer?

18  A.   No.

19  Q.   Is there any indication in his parole file

20  that you were ever his parole officer or had any

21  direct or indirect contact with him?

22  A.   No.

23  Q.   You know what his claims are; correct,

24  generally?

25  A.   Yes, I'm familiar with them.

25

1   Q.   If an inmate like Mr. Chappelle is out on

2   parole, if convicted of a federal offense and is

3   doing his total sentence, is a detainer placed

4   on him?

5   A.   A detainer was placed on the parolee as soon

6   as our field supervision staff was aware of the

7   arrest which occurred.

8   Q.   And that would be done by the Board of

9   Probation and Parole?

10  A.   That's correct.

11  Q.   Who other than the Board of Probation and

12  Parole has the ability to lift that detainer?

13  A.   No one with the exception of the court, I'm

14  sure, could order it, but we actually have to

15  issue it --- or lift it.

16  Q.   So even if the court wanted to, they'd have

17  to give you ---?

18  A.   Yeah.  I'm sure if the court gave an Order

19  to lift it, it would be lifted.  But to answer

20  your question, no, I don't think any other

21  parties would be privy to --- or have the

22  authority to lift one of our warrants.

23  Q.   And this may sound like a silly question.

24  If the Board of Probation and Parole

25  recalculates an inmate's maximum sentence, after

26

1   being returned from doing his federal sentence

2   that he had when he was out on parole, and the

3   Department of Correction's employee believes

4   that that recalculation is an error, what would

5   happen if the Department of Corrections just on

6   their own decided to release the inmate without

7   getting permission from the Board of

8   Probation ---?

9   A.   That's not a question for me to answer, sir.

10  Q.   Okay.  Have you ever heard of that

11  happening?

12  A.   No.

13  Q.   Someone would be in a lot of trouble,

14  wouldn't they?

15  A.   I ---.

16  Q.   Okay.

17  A.   I can't answer that.

18  Q.   Well, does a Department of Corrections

19  employee have the legal authority to release an

20  inmate prior to the recalculated max date by

21  Probation and Parole without Probation and

22  Parole's approval?

23  A.   No, they don't.  There's a series of checks

24  and balances that lie within the Department of

25  Corrections where if we calculate a max, you

27

1   know, and that individual --- it's unforeseeable

2   that they could just release them.  I mean,

3   somewhere along the line they would need a

4   release or they would need a new Board action,

5   39, modifying the max --- the recalculated max

6   to a date lesser than what we actually initially

7   calculated.  It has never been heard of by me

8   that an inmate who has a recalculated max can be

9   released prior to that date.  With the

10  exception, as I said previously, without a Court

11  Order.  I mean, there's certain things that

12  supercede and that would be one of them.

13  Q.   Okay.  Have the Congress maybe meet ---?

14  A.   Could be.

15  Q.   I want to make reference to Mr. Chappelle as

16  Mr. Chappelle, not Mr. Jessup, because

17  apparently that's what his birth name is.  And I

18  don't think he has ever had it formally changed.

19  I know he does go by Kevin Jessup.  But we have

20  Mr. Chappelle's profile with us.  Can you give

21  that to --- we're going to talk a little bit

22  about what his records show about his offenses

23  and that sort of thing.

24  A.   Sure.

25  Q.   Can you tell, from a review of his records,

28

1  when he was first sentenced to do state time?

2  A.   Yes.   On 1/25/1996 Judge Defino, Albert

3  Defino, Philadelphia County, sentenced ---.   And

4  this is where we differ.   Sentenced Kevin

5  Jessup, parole number 496AS, on one count of

6  robbery associated with criminal indictment

7  number 33/9503 to a five to ten year sentence,

8  the minimum being five years, maximum being ten

9  years.

10       He also sentenced him on 1/25/1996

11  Philadelphia County, same Judge, Albert Defino,

12  on criminal indictment number 33/9503, which is

13  carry a firearm in public area to a consecutive

14  one to two year sentence for a total, for a

15  total confinement of 6 years to 12 years.   The

16  DOC established his minimum, controlling minimum

17  date, to be 1/26/2001.   His maximum date,

18  controlling maximum date, to be 1/26/2007.

19  Q.   For purposes of this deposition, if I make

20  reference to Mr. Jessup or Mr. Chappelle, you

21  can consider them to be the same person.

22  A.   Exactly.

23  Q.   For the purposes of any records you have in

24  front of you, whether they make reference to Mr.

25  Jessup or ---

29

1   A.   Okay.

2   Q.   --- Mr. Chappelle, we're talking about the

3   same person, just for the record so we can keep

4   it straight.

5   A.   I understand.

6   Q.   Was there a point in time when Mr. Chappelle

7   was released ---?

8   A.   Yes.   The official ---.

9   Q.   Hold on a second.   Are the documents that

10  you're making reference to today, are they extra

11  copies of documents from Probation and Parole?

12  A.   Yes, they are.

13  Q.   Okay.   Do you mind if we mark them and enter

14  them as exhibits?

15  A.   No, that would be fine.   I have copies ---.

16               ATTORNEY KEATING:

17               Mr. Robinson, do you want to review

18  those and make sure that these documents are not

19  considered to be confidential in any way?

20               ATTORNEY ROBINSON:

21               I got the release orders and the

22  16s.

23               ATTORNEY KEATING:

24               Let the record show I'm handing out

25  the DOC 16E on Mr. Chappelle/Jessup and the

30

1    release orders and conditions and supervision,

2    which were signed by Mr. Chappelle.  We're going

3    to have to slow down because we're going to have

4    to mark each of these as a different exhibit

5    number, so when you're making reference to a

6    document we know which one.

7    BY ATTORNEY KEATING:

8    Q.   The first document that you were looking off

9    of, which one is that, sir?

10   A.   That was the DOC 16E.

11   Q.   And is that one of three and it says down at

12   the bottom closed 7/30/2009?

13   A.   7/30/2009.  Exactly.

14   Q.   Okay.  So that's this one here (indicating)?

15   A.   That would --- yes.

16              ATTORNEY KEATING:

17              Okay.  We're going to mark that one

18   as Exhibit A.

19              (Janis' Deposition Exhibit A marked

20              for identification.)

21   BY ATTORNEY KEATING:

22   Q.   You gave another document.  It says order to

23   release on parole and reparole.  And that is a

24   four-page document, with the first page ---.

25   A.   That's the PBPP-10.

31

1             ATTORNEY KEATING:

2             I think I'm going to call that

3 Exhibit Two (sic)?

4            (Janis' Deposition Exhibit B marked

5            for identification.)

6 A.   We can call this whole grouping --- it's the

7 PBPP-10, PBPP-11.

8 BY ATTORNEY KEATING:

9 Q.   Well, why don't we just call the whole

10 group ---

11 A.   The whole grouping.

12 Q.   --- B, Exhibit B?

13 A.   Okay.

14 Q.   And then if you make reference to a certain

15 page, you can say Exhibit H, one, two, three,

16 four, whatever.  Okay.  And you were talking

17 about Exhibit A.

18 A.   Could you give me the question again?  I

19 believe it had something to do with the

20 effectuation of parole ---.

21 Q.   Yeah, I was asking ---.  I believe I started

22 out by asking was there a point in time after he

23 received the 6 to 12-year sentence when he was

24 released on parole?

25 A.   Yes.  If you refer to Exhibit B, ---

32

1   Q.   Okay.

2   A.   --- the signed release orders, ---

3   Q.   Okay.

4   A.   --- which are the PBPP-10s and the attached

5   11.  His parole was effectuated.  If you look

6   near the bottom right-hand corner it says actual

7   date of release.

8   Q.   Uh-huh (yes).

9   A.   4/9 of 2001 he was released on parole by the

10   Board.

11   Q.   According to the documents, is that the

12   first time he was released on parole after his 6

13   to 12 year sentence?

14   A.   Yes.

15   Q.   And when did he start his sentence?

16   A.   When did he start his sentence or his

17   parole?

18   Q.   His sentence.

19   A.   I'll have to go back to Exhibit A.

20   Q.   Looking at Exhibit B, does it say date of

21   sentence January 25th, 1996?

22   A.   That's the date of ---.

23   Q.   Of sentencing?

24   A.   Date of sentencing.

25   Q.   He could have ---?

33

1   A.   Yes, he did.   His commitment credit started

2   on 1/26/1995.

3   Q.   '95.

4   A.   So Mr. Chappelle had approximately one year

5   preconfinement credit before his sentencing.

6   And then his minimum date was established by the

7   DOC to be 1/26/2001.

8   Q.   It says his actual release date was April

9   9th, 2001.   Is that different from when --- the

10  actual date in which he was granted parole?

11  A.   Yes, it is.

12  Q.   When is he granted parole?

13  A.   The Board action granting parole was issued

14  on 11/29 the year 2000.

15  Q.   That's November 29th, 2000?

16  A.   That's correct.

17  Q.   And he was released on April 9, 2001?

18  A.   That's correct.

19  Q.   From November 29th of 2000 through April 9th

20  of 2001, was he considered to be on parole?

21  A.   No.

22  Q.   Was he in jail?

23  A.   He was incarcerated on a present offense.

24  Q.   Okay.   So the 11/29/2000 to 4/9/2001, that

25  time went towards his time served?

34

1    A.   That time went towards that initial 6 to 12

2    year sentence.

3    Q.   Okay.  He was actually physically released

4    on April 9, 2001; correct?

5    A.   That's correct.

6    Q.   And then what happened after that?

7    A.   Well, Mr. Chappelle is paroled, as we said,

8    on 4/9/2001.  He absconds parole supervision on

9    6/15/2001 and is declared delinquent by the

10   Board on 6/18/2001.  He's arrested by

11   Philadelphia Police Department 9/16/2001.  The

12   Board detained him, holding a detention hearing.

13   And a decision is rendered by the Board to

14   detain pending disposition of criminal charges,

15   on that date that I mentioned, 10/24 of 2001.

16   Q.   And do you know what date it was that the

17   Board ---?

18   A.   Yes, I do.

19   Q.   When?

20   A.   The Board's warrant was issued on 9/26/2001.

21   Q.   Okay.  And I see you're referring to a

22   document in front of you when you gave that

23   answer?

24   A.   Pardon me?

25   Q.   I said I see you're referring to a document

35

1  that's sitting in front of you when you provided

2  that answer.

3  A.   Right.  I mean, I can go through the file

4  and actually pull the actual Board warrant.

5  There's notes that I have.

6  Q.   Okay.

7  A.   Would you rather I go through the Board's

8  file to pull information from there?

9  Q.   I believe Ms. Tobin's going to do quite a

10  few documents.

11  A.   Okay.

12           ATTORNEY TOBIN:

13           I have it.

14           ATTORNEY KEATING:

15           Okay.  You have it?

16           ATTORNEY TOBIN:

17           I think this is what he's talking

18  about.

19  BY ATTORNEY KEATING:

20  Q.   Is this the one, the same that we have here

21  in front of us?

22  A.   No.  The warrant to detain is dated the same

23  date that I just gave you, 9/26/2001.  The

24  warrant that Attorney Tobin has in her

25  possession, I believe, is dated 9/27.  Am I not

36

1  correct?  And I can clarify the warrant that you

2  have.  See, originally or initially when an

3  individual's arrested we have a 24/7 unit

4  and ---.  They're open 24/7.  That's why we call

5  it 24/7 unit.  But anyway if an individual's

6  arrested on the street, the information comes

7  into that unit first.  And what I'm in

8  possession of is a 48-hour detainer, which then

9  was within 48 hours replaced by the warrant

10  that's in the attorney's possession.  But the

11  original date of the warrant that I'm referring

12  to is dated 9/26/2001.  And for our

13  recalculation purposes that is the date that we

14  consider Mr. Chappelle/Jessup in our custody.

15                  ATTORNEY KEATING:

16                  Okay.  Can we get a copy of that

17  and mark that Exhibit C?

18                  (Janis' Deposition Exhibit C marked

19                  for identification.)

20                  ATTORNEY KEATING:

21                  Because once I read this

22  transcript, I'm going to need copies of all

23  we're talking about.

24  A.   Yes, it's getting pretty complicated.

25  BY ATTORNEY KEATING:

37

1    Q.   Is it fair to say that calculating and

2    recalculating the maximum sentence of parole

3    violators is not easy?

4    A.   No, really it is ---.  It's pretty basic

5    stuff.  All that my Recalculation Division is

6    doing is they're taking the individual's maximum

7    expiration date as established by the DOC ---

8    Q.   Uh-huh (yes).

9    A.   --- subtracting our release on parole date/

10   And that is the amount ---

11   Q.   That is the amount ---?

12   A.   --- that we're left with of the unserved

13   portion of his original sentence.  So in Mr.

14   Jessup's case it's a rather simple calculation.

15   His maximum date was established 1/26/2007.  He

16   was released on parole 4/9/2001.

17   Q.   Uh-huh (yes).

18   A.   The unserved portion of Mr. Jessup's

19   sentence, or Mr. Chappelle, was 5 years, 9

20   months, 17 days.  That is the amount of time

21   that is applied to his recalculation when he

22   becomes available to us.  And in Mr.

23   Chappelle/Jessup's case, he received a 24 month

24   federal sentence, which cannot be served

25   concurrently with the back time, which is the 5

38

1    years, 9 months, 17 days.  The way we

2    recalculated his max was he was arrested on

3    9/26/2001.  His charges were nolle prossed on

4    3/11/2002.  The Feds picked him up and charged

5    him on 2/20 of 2002.  He would have completed

6    his 24-month sentence on 2/20 of 2004.  That's

7    the date that he became available to us.  We

8    awarded him complete credit for everything but

9    that 24 month federal sentence and recalculated

10   his max to 7/14/2009.  The amount of time that

11   he owes, the 5 years, 9 months, 17 days, we

12   subtract out the 2 months, 28 days, which he

13   would receive credit because originally the

14   state arrested him and then they nolle prossed

15   his case.

16       Our warrant defaults the only reason for his

17   recommitment.  Therefore we give him credit.

18   The only reason for his detention --- we stopped

19   credit, though, when the Feds arrest him and he

20   doesn't post bail on 2/20 of 2002.  That period

21   from 2002 to 2004, 2/20/2004, we considered Mr.

22   Chappelle/Jessup as serving his 24-month

23   sentence.

24       He was resentenced to serve that resentence

25   and released from that sentence on 4/14/2009.

39

1   That becomes the date that he is available to

2   us.  All time, with the exception of that two

3   year sentence, we credited Mr. Chappelle and

4   that's how we recalculated his --- recalculated

5   the max 7/14/2009.  So, no, it's not that

6   complicated.

7   Q.   It's complicated to me.  So I guess if ---

8   how many of these have you done since you've

9   worked with Probation and Parole?

10  A.   I have no idea.  I've done a few.

11  Q.   A hundred?  The other thing is don't try to

12  guess.  You may estimate.

13  A.   Yeah, I have no knowledge.  The calculation,

14  recalculation process carries over from being a

15  probation officer where you have to establish

16  min and max dates and recalculate max dates.

17  And when you have somebody who serves --- or is

18  available to be released and then, you know, it

19  carried on here at the Parole Board, so

20  it's ---.

21  Q.   So when you were a Lebanon County probation

22  officer you did a lot of the same types of

23  duties?

24  A.   Exactly.

25  Q.   When do the records show that Mr. Jessup was

40

1    released from federal detention and returned

2    back to SCI-Coal Township?

3    A.   I believe I have 4/14/2009 he was released.

4    Q.   When an inmate is back in this situation,

5    does he automatically have a new max date

6    recalculated or does it take time for

7    Probation/Parole to catch up and figure it out?

8    How does that work?

9    A.   The only recalculations that we can provide

10   are generated off of a violation hearing report,

11   so he has to have a hearing and the Board has to

12   sign off on it.  And then we can initiate the

13   recalculation.  So, yes, there is time involved.

14   It's not an immediate ---.  Now, as in Mr.

15   Chappelle's case the modifications and

16   recalculations, soon as they're brought to our

17   attention, we can do the recalculations, but the

18   initial calculation takes time.

19   Q.   When an inmate is returned off of --- and

20   then parole violated back into the state system

21   are they assigned a specific parole officer

22   within the Institutional Office, if you know?

23   A.   I can't answer that.  I'm not familiar with

24   that process.

25   Q.   Are you familiar with the process by which

41

1    inmates notify or contact parole officers who

2    are assigned to the Institutional Offices?

3    A.   No, I am not privy to that either.

4    Q.   Mr. Chappelle is claiming that he was

5    illegally in prison on April 14, 2009 to July

6    31st, 2009.  I believe that the record

7    shows ---.  When was he released, the 30th or

8    the 31st?

9              ATTORNEY TOBIN:

10             I know that's a question ---.  I

11   think that he signed some papers on the 30th,

12   but then maybe got out on the 31st or not.

13             ATTORNEY KEATING:

14             Okay.

15   BY ATTORNEY KEATING:

16   Q.   But a review of his full file by you today

17   demonstrates that his maximum date was what

18   date?

19   A.   7/14/2009 is the recalculated max, which

20   is ---.

21   Q.   That's the correct date?

22   A.   Yes.

23   Q.   Okay.  When Mr. Chappelle was returned to

24   SCI-Coal Township on April 14, 2009, was he

25   being held in Coal Township based on a detainer

42

1   lodged by the Board of Probation and Parole?

2   A.   That's correct.

3   Q.   At some point in time between April of 2009

4   and July of 2009 I believe there's a

5   recalculation done by the Board that indicated

6   that his maximum date was 2014.  Do you have any

7   records ---?

8   A.   Yes, I do.

9   Q.   That maximum calculation date of 2014 was

10   not correct, was it?

11   A.   Well, it was correct as recalculated by the

12   technician at the time.  April 16, 2009 a Board

13   action was issued for the recalculation,

14   establishing a max date of 9/6/2014.

15   Q.   And that April 16, 2009 calculation ---

16   strike that.

17        That April 16, 2009 maximum --- strike that.

18        The recalculation done on April 16, 2009,

19   was Mr. Jessup given notification of that

20   recalculation?

21   A.   Yes, he was.

22   Q.   How?

23   A.   He was mailed a Decision on April 24th,

24   2009.

25   Q.   Is that by way of what's called a green

43

1   sheet.

2   A.   By way of mail.

3   Q.   Was that contained on a green sheet?

4   A.   Oh, the Decision, yeah, that we mailed.

5   Yes.  Yes.  The official document is a PBPP-15.

6   Q.   And for the record, you call them green

7   sheet because they're actually green; right?

8   A.   That's correct.

9   Q.   Well, if you can't see ---

10  A.   Yeah.

11  Q.   --- what a green sheet is.  They're actually

12  green; right?

13  A.   That's correct.

14  Q.   Is there any indication on that notification

15  that if the inmate has a disagreement with that

16  calculation that he should take certain steps to

17  notify the Board or anyone else?

18  A.   Yes.  As I indicated earlier, on every

19  recommitment Board action we --- our technicians

20  indicate an appeals clause.  An appeals clause

21  on this green sheet indicates if you wish to

22  appeal this Decision you must file a request for

23  administrative relief with the Board within 30

24  days of this Order.  This request shall set

25  forth specifically the factual and legal basis

44

1  for the allegations, see 37 Pa. Code Section 73,

2  period.  You have the right to an attorney in

3  this appeal and in any subsequent appeal to the

4  Commonwealth Court, period.  Date mailed April

5  23rd, 2009.  The inmate has 30 days from that

6  date that it was mailed to appeal.

7  Q.  Is there any indication in your records that

8  Mr. Jessup/Chappelle appealed the Decision?

9  A.  I can't answer that.  I'm not responsible

10  for the appeals process.  I believe that would

11  be something the Chief Counsel would have to be

12  queried on.

13  Q.  If he were to submit an appeal, would that

14  document or should that document be in his

15  parole file?

16  A.  It should.  I mean, I've seen them

17  previously, but the only involvement that we

18  have with appeal is when the Chief Counsel's

19  Office feels that a modification needs to be

20  made based on ---.  If they get the appeal, they

21  review the case, and then they would come and

22  advise my division to make the necessary

23  modifications to that Board action.

24  Q.  So I understand your testimony is that you

25  don't know if he did or not, based on documents

45

1  you have in front of you?

2  A.   We have a file here.   We could go through

3  it.   What I'm saying is, that is not something

4  that I should be responsible for to look for a

5  document and testify.   It is out of my relevant

6  authority.

7                    ATTORNEY KEATING:

8                    Understood.

9                    ATTORNEY ROBINSON:

10                   He's asking you to look in the file

11  and see if there's an administrative appeal.

12  A.   Or is this going to stretch, though?   I

13  mean, that's, you know, one thing.   Locating an

14  administrative appeal ---.

15                   ATTORNEY ROBINSON:

16                   You know, if you looked through the

17  file and then from there based on whether there

18  is one ---.

19                   ATTORNEY KEATING:

20                   I don't want to spend too much of

21  your time.

22  A.   That's fine.   We can take a look, yeah.

23  WITNESS REVIEWS DOCUMENTS

24                   ATTORNEY KEATING:

25                   And the goldenrod is called the

46

1  goldenrod because ---

2  A.   It's gold.

3              ATTORNEY KEATING:

4              --- it's gold.

5  A.   Yeah, they keep everything the norm here.

6  Yes, there are numerous appeals, two that I see

7  anyway.

8  BY ATTORNEY KEATING:

9  Q.   Can you tell me what date those appeals are?

10  A.   No, I would defer to Chief Counsel.  I mean,

11  there are ---.  It appears that there's one

12  received July 31st, 2007, responded to on ---.

13  It's mailed October 2nd, 2007.  It appears there

14  was another appeal by Mr. --- signed by Mr.

15  Damon Chappelle, a/k/a Kevin Jessups.  Jessup,

16  excuse me.  Date stamped that it was received

17  January 8th, 2009.  Responded to by the Board

18  February 23rd, 2009.

19       Another appeal December 3rd, 2008.  April

20  22nd, 2009.  So, yes, there are appeals in here.

21  And there are responses from the Chief Counsel's

22  Office regarding those appeals.

23  Q.   And one of them's dated April 22nd, 2009;

24  correct?

25              ATTORNEY ROBINSON:

47

1              If you would like copies, I'll make

2    copies.  I think the concern is there's advice

3    in there from us.  I can give you what you ---

4    what the response from the Board was, if that

5    works for you all.

6                   ATTORNEY KEATING:

7              Sure.  Is that okay with you?

8                   ATTORNEY TOBIN:

9              Yeah.

10                  ATTORNEY KEATING:

11             Yeah.  If there's any confidential

12   --- because we don't want any of that stuff ---

13                  ATTORNEY ROBINSON:

14             Okay.

15                  ATTORNEY KEATING:

16             --- to go on --- any lawyer/client,

17   work product, settlement.

18                  ATTORNEY ROBINSON:

19             Give me ten minutes?

20                  ATTORNEY KEATING:

21             How about we give you five minutes?

22   Thank you, Deputy Chief Counsel Robinson.  Are

23   we taking five?

24                  ATTORNEY ROBINSON:

25             We're taking a five-minute break.

48

1    SHORT BREAK TAKEN

2                ATTORNEY KEATING:

3                I've just been given several

4    documents, which are 11 pages in length.  The

5    first one says Kevin Jessup a/k/a Kevin

6    Chappelle --- July 30, 2007.  Can I see your

7    stapler?  And I'm going to take the entire

8    packet and make that as one exhibit.  Why don't

9    I give you this entire packet and make that ---

10   what exhibit are we on?  D.  Okay.

11               (Janis' Deposition Exhibit D marked

12               for identification.)

13   BY ATTORNEY KEATING:

14   Q.   And, Mr. Janis, what these exhibits are, are

15   responsive to my request for documents

16   concerning appeals by Kevin Jessup a/k/a Damon

17   Chappelle to the Board of Probation and Parole

18   and responses thereto.  Is that a correct

19   statement?

20   A.   Yes.

21   Q.   We don't know whether these are all of them

22   or not, but these are all that we found in the

23   file and ---.

24   A.   That's correct.

25               ATTORNEY KEATING:

49

1    I have no further questions.

2    EXAMINATION

3    BY ATTORNEY TOBIN:

4    Q.   Good afternoon.  Good morning still, Mr.

5    Janis.  I'm Jennifer Tobin, as you know.  I

6    represent Mr. Chappelle in this case.  My first

7    question is, prior to this deposition other than

8    your counsel, Mr. Robinson, did you speak with

9    anyone about the facts underlying this case?

10   A.   No.

11   Q.   Okay.  Have you ever worked for the

12   Department of Corrections?

13   A.   No.

14   Q.   So just the Lebanon County Parole Board and

15   the State Parole Board?

16   A.   Yes.

17   Q.   Okay.  Does the Parole Board have any

18   procedures manual which sets forth the

19   procedures that employees must follow while

20   doing the calculations?

21   A.   Yes.

22   Q.   What is that called?

23   A.   Calculations manual.

24   Q.   And how often is that updated?

25   A.   As need be.  I mean, we just updated it.  I

50

1  think we issued the most recent one within the

2  last month, but it's a constant ongoing ---.

3  Q.   And where is that kept?

4  A.   At our desks.  At the technician's desk.

5  Chief Counsel's privy to it.  They have a record

6  of it, we have record of it.

7  Q.   And the technicians, I believe you said

8  earlier, are the ones who actually do the

9  calculations?

10 A.   Yes.

11 Q.   Does the Parole Board issue policies that

12 govern how it carries out its duties?

13 A.   Yes.

14 Q.   And what are those called?

15 A.   I believe we have the Prisons and Parole

16 Codes, which established the Parole Board and

17 the Parole Board's workings.  I believe that was

18 in 1941.  It was originally called the Parole

19 Act.  Then when it was opened up in legislation,

20 it changed certain ways things were done, which

21 included federal sentence recommitment,

22 recommitted offenders.

23     It was changed to the Prisons and Parole

24 Code because it was codified.  Also the Board

25 has its policies and procedures which we follow.

51

1   Q.   With regard to the update on how to handle

2   federally sentenced parole violators, ---

3   A.   Right.

4   Q.   --- is there a specific code section or ---?

5   A.   That would have to be posed to the Chief

6   Counsel's Office.

7   Q.   Is it what's also known as --- I seen under

8   regulations under Title 37, I believe; is

9   that ---?  Do you know if it's ---?

10  A.   I default to ---.

11  Q.   Oh, well, I can't ask him.  So is it

12  something that you use in order to figure out

13  how to handle parole violators who have been

14  federally sentenced?

15  A    Is what?

16  Q.   Is it a Parole Act or a code?

17  A.   Right.  That was our initial framework on

18  the recalculation processes.  And since that

19  time there have been cases which have been

20  brought forth by other entities that ended up in

21  Pennsylvania Supreme Court and so on, which then

22  added to the way that we process like Dorian

23  Decision.  Dorian indicates that the reason to

24  recommit the sentence or the reason to recommit

25  must be served consecutive to the

52

1   incident/offense that you are on parole for.  So
2   there are case law cases that then changed the
3   way that we do things.  And our recalculation
4   manual is then modified to incorporate those
5   cases.
6   Q.   So the recalculation manual would explain
7   that to the technician who's doing the work?
8   A.   That's correct.
9   Q.   Does the Parole Board have the authority to
10  release an inmate from prison when the inmate
11  has completed his maximum sentence?
12  A.   Yes.
13  Q.   And how so?  What is that authority based
14  on?
15  A.   I would think it would be based on the fact
16  that we would be holding an inmate illegally if
17  we're holding one past their max date.  I mean,
18  as to case law that you're looking for, a
19  decision or --- I'm not ---.
20  Q.   No, I'm not asking for case law, just your
21  understanding.
22  A.   My understanding is when that individual
23  reaches his maximum expiration date, if we're
24  holding him, if we're detaining him on our Board
25  warrant and a conviction is not in place, then

53

1  whoever issued that Board warrant has to lift

2  it, declare the individual delinquent for

3  control.  Which is basically saying that he is

4  at his max date and he has open criminal

5  charges, which he hasn't been convicted for and

6  we are following them.  If, in fact, an

7  individual is convicted any time down the road,

8  it would be the responsibility, then, to arrest

9  that subject, detain him in a correctional

10  facility, afford him his due process and then my

11  division would do any recalculations based on

12  the Board's Decisions.

13  Q.  And then once he's in and serving the

14  remainder of his original sentence, does the

15  Parole Board monitor when that sentence expires

16  and then send the DOC some kind of document that

17  says, he's finished his sentence, you can now

18  release him to the street?

19  A.   No, we do that at the front end.  As I

20  indicated under testimony from --- questions

21  from Attorney Keating, when we do a

22  recalculation, we issue the green sheet and the

23  PBPP-39, which is the Board's official

24  Recommitment Order.  On that green sheet we

25  would indicate any review for parole date and we

54

1    would indicate a max date.  On that 39, our

2    official recommitment, the max date is

3    established and the DOC has that max date then

4    as part of their record.

5        If you look at the 16E that was entered into

6    the --- as an exhibit ---.  I believe it was A,

7    if I'm being correct.  If you look in the center

8    to the right-hand column where you have new PB

9    max in Mr. Kevin Jessup ---.  In this case, the

10   max date, which was our recalculated max, is at

11   7/14/2009.  Now, how the prison prompts itself

12   to release that individual on that date that we

13   provide them, I have no knowledge.

14   Q.   Okay.

15   A.   We recalculate and that's it.

16   Q.   If an inmate has completed his maximum

17   sentence, does the Parole Board have any

18   responsibilities or duties with regard to the

19   inmate at that point?

20   A.   No.

21   Q.   And you mentioned that the --- you have the

22   DC-16E.  Where do you get those from?

23   A.   The DOC ---?  Once we issue 39, which then

24   establishes the PB max, any time a 16E is

25   changed, they issue a new version.  If you look

55

1   at the bottom, this is version number six.  So

2   based on our recalculation on 7/30/2009 at

3   2:36:10 in the p.m. they issued a new 16E by

4   updating the 16E to reflect our recalculated

5   max.

6   Q.   And how are these ---?  Do you get the

7   updates?

8   A.   Yes.

9   Q.   And how are they transmitted to you?

10  A.   They're not transmitted to us.  I mean, if

11  an individual has time remaining with due dates

12  and so on, we would print those off of the DOC

13  doc net.  I mean, in this case this --- there is

14  no need for this to be transmitted to us and

15  they're not transmitted to us.  And we

16  established the max at 7/14/2009 on July 29th,

17  2009.  The DOC updated it July 30th, 2009.  If

18  the individual was 15 days past his max when we

19  issued recommitment, we would have no need for a

20  16E.

21  Q.   So you have access to you said doc net?

22  A.   Access.  Correct.

23  Q.   And what can you do with that access?

24  A.   View and print documents.

25  Q.   What documents can you view and print?

56

1  A.   DOC 16E, detainers, ICSA documents.

2  Q.   What was that?

3  A.   Minimal parole summaries.  I believe they're

4  called ICSA, I-C-S-A.  There's certain

5  information that we have access to.  I mean, we

6  don't have access to everything.

7  Q.   When do you first access the DOC 16E?  Is

8  that when you are notified by your Institutional

9  Parole Office that someone's coming up on their

10  parole review date, their minimum date?

11  A.   My division wouldn't access them.  Another

12  division within the Board, Case Management

13  Division, they print off a docket.  In other

14  words, they'll go in as like they're working

15  three months ahead.  We're in August.  They

16  would be printing November, December docket.

17  And on there would be the individual they're

18  identifying, the information, DOC number, parole

19  number, type of interview that the individual is

20  scheduled for, reparole, minimum, the type of

21  case that it is.  They print that.

22       Then the first thing that they do is they

23  have this information.  They make sure that it

24  is updated in our sentence profile.  Make sure

25  that a file has been created for the individual.

57

1    Because then you have to realize that Mr.

2    Chappelle/Jessup he's coming back as a parole

3    violator, so that ---.  We already did all that

4    stuff that was needed to begin the --- needed to

5    be done to get him seen, to get him reviewed and

6    effectuate a parole.  But there's cases that are

7    out there and nothing has been done like Mr.

8    Jessup's case when a 16E was first issued.

9        But anyway, they enter the sentence

10   information, create a file.  If a file is

11   created, they get that file ready to be shipped

12   to the SCI to be reviewed.

13   Q.   Does the Parole Board have a document that

14   is similar to the DOC 16E for each person in the

15   --- each parolee --- potential parolee's file?

16   A.   Since we had this file in here --- we used

17   it previously.  When the Board receives a 16E,

18   they enter this information into what is called

19   our sentence profile.  That information then

20   generates, in our system, the actual sentence

21   profile that the Board is using.  So any time we

22   have an update on the initial sentence, we would

23   change this.  We don't have a comparable

24   document.  What we're doing is we're taking the

25   DOC's information, entering it into our system.

58

1    And it's spitting out the indictment number

2    sentence date, the sentence.  As we indicated

3    earlier, five to ten, and a consecutive one to

4    two, the Judge, all that relevant information.

5    Q.   And you're referring to a document that ---

6    A.   It's called ---

7    Q.   --- says sentence profile?

8    A.   --- sentence profile, yes.  Would you like a

9    copy of it?

10   Q.   Uh-huh (yes).  I would.  I don't need it

11   right now.

12   A.   Oh, okay.

13   Q.   So that also has the total aggregate

14   sentence?

15   A.   Yes, it does.  It has that 6 to 12 year

16   sentence.

17   Q.   Do you also keep track of the inmate's

18   federal sentences in addition to state

19   sentences?

20   A.   Not within this system, but, yes, we do.

21   Q.   Where do you keep track of the federal

22   sentence?

23   A.   Per se not keep track.  We're responsible

24   for the recalculation of the recalculated max

25   date for a direct parole violator, someone

59

1   that's brought back, because we're responsible

2   for that sentencing information from the other

3   domain.  In other words, if it's another state,

4   it's a federal conviction.  So, yes, that

5   information is kept by us.

6   Q.   And how do you factor that in ---?  Let me

7   back up.  You mentioned earlier that the

8   recalculation of the parole violator max date is

9   a relatively simple calculation.

10  A.   Correct.

11  Q.   And I believe you testified that it's the

12  max --- original max date minus the date the

13  person was released on parole?

14  A.   That's correct.  That's the total amount of

15  the unserved portion of the original sentence

16  that he was serving.

17  OFF RECORD DISCUSSION

18                  ATTORNEY TOBIN:

19                  Do you want to take a short break

20  or can I keep going?

21  A.   No, no.  Keep going.

22  BY ATTORNEY TOBIN:

23  Q.   Okay.  So is that unserved portion of the

24  original sentence also known as back time?

25  A.   Yes, it is.

60

1   Q.   Okay.   Does back time have any other

2   meanings other than that unserved portion of the

3   original sentence?

4   A.   No.

5   Q.   Okay.   Does the Parole Board keep track of

6   whether a sentence is concurrent or consecutive?

7   A.   Yes.

8   Q.   And would that be a state sentence or a

9   federal or both?

10   A.   Any sentence.

11   Q.   And how do you --- why do you keep track of

12   that?

13   A.   In the initial sentencing information, which

14   wouldn't be applicable to what we're talking

15   about presently, Mr. Chappelle originally had 5

16   to 10 and then a consecutive 1 to 2.   That's

17   making the sentence 6 to 12.   On the

18   recommitment portion, it's important to know

19   that information for our recalculation purposes.

20   Q.   In what way?

21   A.   What manner?   We may have an individual that

22   is on parole and receives a county sentence,

23   which is a reason to recommit.   Say a 6 to 12

24   month sentence and the court orders it to be

25   served in the SCI consecutive to his back time.

61

1    For our recalculation purposes, the order of the
2    service of the sentences, we would need to know
3    that.  The way that the order of service of the
4    sentence works is if it's an SCI to SCI
5    sentence, we issue a final recommitment Board
6    action.  Then the individual does that
7    recommitment sentence after he's paroled or
8    maxed from the instant offense.  He'd be paroled
9    on max to the detainer sentence SCI to SCI.  If
10   it's, as I mentioned, the consecutive county
11   sentence, he would begin serving the 6 to 12
12   after he's paroled or maxed from the instant
13   offense.  The DOC would hold that as a detainer.
14       For our calculation purposes, say an
15   individual received a 6 to 12 in the county and
16   it was ordered to be served in the county and it
17   was ordered to be served concurrently.  Contrary
18   to the Judge's clear intent --- under the Draper
19   Decision, which reads, regardless of a
20   sentencing Judge's clear intent to the contrary
21   back time and a new sentence must be served in
22   consecutive order.  Commonwealth versus Draper
23   293 A.2d 614 of 1992.  The county sentence would
24   have to be served first.  The court would have
25   to parole the individual from the county

62

1    sentence.  Then he would become available to the

2    Board to issue a final recommitment Board

3    action.  There are numerous scenarios that, yes,

4    we need to know the order of the sentence that

5    was imposed on the recommitment.

6    Q.  And do you get that information from the

7    Court Orders from whichever court imposed the

8    sentence that ---?  How do you get the

9    information about concurrent, consecutive ---?

10   A.  We get that information various modes, from

11   the courts that imposed the Orders, from the

12   Court of Common Pleas dockets, which are online,

13   our agents.  I mean, if we receive information

14   --- as in Mr. Chappelle's case, if something was

15   changed in nature or structure of that sentence,

16   you know, then, yes, we need to get that

17   information and make our recalculations

18   accordingly.

19   Q.  Is back time the same as what I've heard

20   refer to as street time?

21   A.  You know, I noticed that in your petition,

22   which there is a difference.  I mean, you're

23   saying that, well, he only had this little

24   period of street time.  And street time is time

25   that he spent on parole liberty.  So there is a

63

1  distinct difference.  We're calling it the

2  unserved portion of an inmate's sentence.  And

3  parole liberty, as you're referring to, is

4  street time.

5  Q.   So they're not the same?

6  A.   No.

7  Q.   Okay.  Is there a label or a word to refer

8  to the amount of time that a returning parole

9  violator has to wait before he can seek

10  reparole?

11  A.   In the Board's sanction, when they hold the

12  violation or revocation hearing, the revocation

13  hearing being for a direct parole violation, a

14  criminal offense, they --- in their sanction

15  they would determine the length of time that

16  they want the individual to sit for prior to the

17  next reparole eligibility for review date.  Go

18  ahead.  I'm sorry.  It looks like ---.

19  Q.   And so I'll just pull out ---.  I'm going to

20  just show you a document that might help me ask

21  the question.  Do you recognize this group of

22  documents?

23  A.   Yes, I do.  They're ---

24  Q.   What are they?

25  A.   --- Board actions.

64

1    Q.   Okay.

2    A.   PBPP-15.

3                    ATTORNEY TOBIN:

4                    Okay.  We'll call this Exhibit E.

5                    (Janis' Deposition Exhibit E marked

6                    for identification.)

7    BY ATTORNEY TOBIN:

8    Q.   And these aren't numbered at the bottom, but

9    if you could take a look at the second stapled

10   document in this packet.

11   A.   March 14, 2002?

12   Q.   Yes.

13   A.   Okay.

14                   ATTORNEY TOBIN:

15                   And if you could just review it and

16   let me know when you're done.

17   WITNESS COMPLIES

18   A.   Okay.

19   BY ATTORNEY TOBIN:

20   Q.   Okay.  On that third --- approximately the

21   third paragraph down it's just a sentence.  It

22   says, recommit to a State Correctional

23   Institution as a technical parole violator to

24   serve 18 months back time when available.  What

25   does that mean?

65

1   A.    That means at the time of the --- this is a

2   technical parole violation hearing that was held

3   and the Board action, which is in front of me,

4   that was generated off of that hearing is for

5   the violations of conditions.  If you look at

6   the next paragraph, the hyphenated condition

7   number two, count number one, count number two,

8   these are technical parole violations that the

9   individual incurred.  The reason he is when

10  available is the Board is saying at this time

11  you are not available to serve his sanction.

12  And the reason being was the open criminal

13  charges that the individual had to serve prior

14  to becoming available, the federal charges.

15  Q.   And then that's helpful, but I also want to

16  know what it means specifically to serve 18

17  months of back time.

18  A.    Oh, that would be the sanction that ---.

19  When the final calculation is prepared, what the

20  technician will do is not only establish the ---

21  or reestablish the new max, recalculated max,

22  because of the violation hearing, if necessary,

23  they also would establish a review date.  When

24  the Board action is finalized, it would give the

25  individual the date that he would be eligible

66

1   for reparole review.

2   Q.   And that means that he has to wait for 18

3   months before the Parole Board will consider him

4   again for reparole?

5   A.   Well, exactly.   There are scenarios.   I

6   mean, after 12 months from the date of the Board

7   action, the individual can file a petition for

8   Parole to see him.

9   Q.   So that amount of time, that 18 months,

10  isn't the same as the remaining portion that he

11  has left to serve on his original sentence?

12  A.   No, that has nothing to do with it.

13  Q.   So what I'm trying to figure out is why this

14  is called back time and that other time period

15  is also called back time?

16                 ATTORNEY KEATING:

17                 I'm going to object to that

18  question.

19  BY ATTORNEY TOBIN:

20  Q.   Did you understand my question?

21  A.   Yes, I do.   Out of that total amount of

22  time, which was in excess of five years,

23  according to this --- when he's available, he'll

24  serve 18 months of that period and then he would

25  be reviewed.

67

1    Q.   So it could mean serve 18 months of his back

2    time?

3    A.   Right.

4    Q.   Okay.  Thank you.  The when-available

5    determination, how does the Parole Board make

6    the decision of when someone's available?

7    A.   Various criteria.  Some of the criteria to

8    determine when he becomes available is basically

9    when a Board's warrant is the sole purpose for

10   his incarceration and he is at the SCI, DOC

11   custody where he was paroled from, he would be

12   determined available.  So basically what we're

13   looking for is the same premise for which we

14   allocate back time, which is if the Board's

15   warrant is the sole purpose for your

16   incarceration, you're not only entitled to back

17   time, at that point we would determine you as

18   being available to serve that back time.

19   Q.   And are there any regulations or statutes

20   for procedures that govern how you make that

21   determination, the when-available determination?

22   A.   Yes, I believe it would come down to when

23   the Board's warrant is the sole purpose for your

24   incarceration depends on your availability.  In

25   Mr. Chappelle's situation he had open criminal

68

1   charges which he hadn't posted bail for.  He had

2   a criminal conviction, which he had to serve

3   prior to becoming available and that's why he

4   had a when-available Board action.

5   Q.   Is that explanation of how you're supposed

6   to make that determination in the recalculation

7   manual?

8   A.   Yes.

9   Q.   Okay.

10  A.   I mean, it's outlined in case law that I

11  brought along with me also.  And we're not going

12  to get into that.

13             ATTORNEY ROBINSON:

14             We're not going to get into that.

15  A.   Right.  We're here on the factual ---.

16             ATTORNEY ROBINSON:

17             I'll give a little leeway.  He's

18  not called as an expert witness.  In the Prisons

19  and Parole Code I can give you the cite.  The

20  regs are out there, 37 Pa. Code and there's a

21  whole slew of Commonwealth Court case law that

22  says how we do and don't calculate sentences.

23  I'd be happy to talk about that after the

24  deposition.

25             ATTORNEY TOBIN:

69

1          No, I'm just trying to get the

2    terminology ---

3          ATTORNEY ROBINSON:

4          Okay.

5          ATTORNEY TOBIN:

6          --- and the calculations down.

7    BY ATTORNEY TOBIN:

8    Q.   Okay.  So if somebody has --- just an

9    example.  If somebody has a ten-year sentence,

10   is paroled at five years and is out on the

11   street on parole for two years and then goes

12   back, how much back time do they have?

13   A.   It depends.  If it's a direct parole

14   violator, which would encompass a new criminal

15   conviction, he would lose all credit for any

16   time he spent on the street.  When we do our

17   recalculation, he's going to owe five years back

18   time, which would be the difference of the

19   unserved portion of the sentence when we paroled

20   him.  In your case scenario, five years left on

21   his max, so when we do our recalculation we're

22   taking all of his time and giving him no credit

23   for anything.  The calculation is going to take

24   that five years and reallocate it.

25   Q.   And the parole violator max date can't cause

70

1   the person's sentence to exceed the court-

2   imposed sentence?

3   A.   Correct.

4   Q.   Are the technicians the ones who calculate

5   back time?

6   A.   They do the recalculation of the --- for the

7   Board actions off of the hearings.

8   Q.   What does the Parole Board have to have in

9   Order to Recommit someone to prison, what

10  documents or information?

11              ATTORNEY ROBINSON:

12              We're getting into legal questions

13  about sufficiency of evidence.  I mean, maybe if

14  you could ask him what happened in this case, I

15  think it would be more in line with my

16  understanding of the purpose of this deposition.

17  BY ATTORNEY TOBIN:

18  Q.   But in Mr. Chappelle's case, then ---.  You

19  mentioned that the field staff person notified

20  the Parole Board of an arrest.  They became

21  aware of the arrest and you had the 24/7 Unit

22  issue a temporary detainer?

23              ATTORNEY KEATING:

24              I object to that.  I'm not sure

25  that's what he did testify to ---

71

1   BY ATTORNEY TOBIN:

2   Q.   Is that what you testified ---?

3                ATTORNEY KEATING:

4                --- because your question is asking

5   well he testified based on his own ---.   It

6   makes it sound like based on his understanding

7   and belief.   My understanding is he does not

8   know about this case of Mr. Chappelle except for

9   what's reflected in the documents before him.

10  A.   Right.

11               ATTORNEY KEATING:

12               Do you understand what I'm saying?

13  A.   The warrant that was issued was for --- we

14  were just trying to clarify why you had a

15  different warrant date than the one that was

16  actually in the file.

17               ATTORNEY KEATING:

18               Are you testifying from your own

19  knowledge of what happened or ---

20  A.   Where it's issued from, no.

21               ATTORNEY KEATING:

22               --- from the review of the

23  documents you have in front of you?   I don't

24  know if this change --- I mean ---.   Okay.

25               ATTORNEY ROBINSON:

72

1              He's simply asking, were you

2      involved?

3      A.   No.

4                   ATTORNEY ROBINSON:

5                   Or did you look at a document?

6      A.   I looked at a document.

7                   ATTORNEY ROBINSON:

8                   Okay.

9                   ATTORNEY KEATING:

10                  None of this is from personal

11     information.  It's from review of ---

12     A.   Right.

13                  ATTORNEY KEATING:

14                  --- what you have in front of you?

15      Okay.

16     BY ATTORNEY TOBIN:

17     Q.   And so the person doesn't have to have a

18     conviction in order to be recommitted?

19     A.   You have two types of recommitments.  You

20     have technical parole violation and you have

21     direct parole violation.  To be considered a

22     direct parole violation, which would be for new

23     criminal offenses, they have to meet two

24     prerequisites.  They have to have a conviction

25     and a court record and the conviction has to be

73

1  for a crime which would carry a term of
2  imprisonment.
3  Q.   Is a direct parole violator also known as a
4  convicted ---
5  A.   Yes.
6  Q.   --- parole violator?  Okay.
7              ATTORNEY KEATING:
8              You have to let her finish the
9  question before you answer.
10 A.   Okay.
11 BY ATTORNEY TOBIN:
12 Q.   And that's what brings the person back to
13 prison as a direct parole violator is the
14 conviction and the sentence that is of whatever
15 term you just testified?
16 A.   Correct.
17 Q.   Is the inmate's original sentence that was
18 imposed by a court affected by that?
19 A.   On the recalculation it is.  The max date
20 would be extended as in Mr. Chappelle's case.
21 Q.   So the max date would be extended, but the
22 amount of time ---
23 A.   No.
24 Q.   --- wouldn't change?
25 A.   Correct.

74

1   Q.   Okay.   If the inmate is recommitted as a

2   convicted parole violator and then is

3   resentenced on the same conviction, goes back to

4   court, gets a better sentence from the Judge,

5   does that alter his status as a convicted parole

6   violator?

7   A.   No.

8   Q.   Does it have any impact on the inmate's

9   original sentence?

10                  ATTORNEY ROBINSON:

11                  I'm going to object.   You just

12   asked him if the sentence was vacated or

13   changed.

14   A.   Not vacated.   She said resentenced.

15                  ATTORNEY ROBINSON:

16                  Resentenced.   What sentence are

17   you ---?

18                  ATTORNEY TOBIN:

19                  Oh, the first sentence, the one

20   from which he was paroled on.

21   BY ATTORNEY TOBIN:

22   Q.   Is that affected?

23   A.   No, it's never changed.

24   Q.   And so his back time on that first sentence

25   would just stay the same.   On his new second

75

1    sentence he could get resentenced multiple

2    times, the original sentence ---?

3    A.   The amount of back time that he has is

4    static.  It's just how we allocate it based on

5    the resentencings.

6    Q.   Okay.  And you had mentioned earlier,

7    testified earlier, that in Mr. Chappelle's case

8    he got a federal sentence of 24 months and that

9    that was determined to be served while he was at

10   Coal Township at the Parole Board?  I believe

11   you testified that.  Am I wrong?

12   A.   No, I didn't testify to that.

13   Q.   Okay.  Well, how did the Parole Board handle

14   that 24-month sentence?

15   A.   The Parole Board, in our recalculation

16   process?  Is that ---

17   Q.   Yes.

18   A.   --- what you're asking?

19   Q.   Yes.

20   A.   Okay.  We treated that 24 month as service

21   of another sentence.  In other words, the period

22   from 2/20 of 2002 when Mr. Chappelle was

23   arrested and failed to post bail, two years from

24   that point, 2/20 of 2004, was time that we

25   credited towards the service of that federal

76

1  sentence.  He did not get credit towards back

2  time for that period.

3  Q.   Okay.  And what was the basis of that

4  decision?  What triggered that decision to

5  credit it towards the federal sentence instead

6  of the back time?

7              ATTORNEY ROBINSON:

8              I'm going to object ---

9  A.   Yeah.

10             ATTORNEY ROBINSON:

11             --- to that.  I think we're going

12  into I think perhaps legal advice.  I mean, he

13  has explained how the Board calculated the

14  sentence.  And as a fact witness I think that's

15  all he's required to do.

16             ATTORNEY KEATING:

17             I'll join that objection.

18             ATTORNEY TOBIN:

19             I disagree.  I think that it's

20  relevant why the Board did what it did, why the

21  Board choose to ---.

22             ATTORNEY ROBINSON:

23             If you want to ask him what

24  document he relied on?  I don't have a problem

25  with that or ---.  What document that the Board

77

1   relied on, as to the rationale, I think is

2   beyond the scope of what we're here for.

3                ATTORNEY KEATING:

4                It's definitely beyond the scope of

5   Direct.

6   BY ATTORNEY TOBIN:

7   Q.   Was there a document that you relied on or

8   that the Board relied on to do that crediting?

9   A.   I don't believe ---.

10                ATTORNEY KEATING:

11                Wait a minute. He didn't do ---.

12  A.   No, it's my staff back in ---.

13                ATTORNEY KEATING:

14                So you're asking him to testify as

15  to what other people relied on? You can't do

16  that.

17                ATTORNEY TOBIN:

18                Throughout this whole deposition

19  he's been testifying about what's been happening

20  in the file. That's all I'm asking is what

21  happened in this file that was reviewed.

22                ATTORNEY KEATING:

23                Okay. If you're asking him what

24  documents in the file suggest one thing or the

25  other, that's fine, but to ask him what the

78

1    Board relied on, that's speculation.  I never

2    asked him what the Board did or didn't do.  I

3    asked what the documents reflected in the file.

4    A.   And if I may, I can probably remedy this.

5    I'm sure --- we were advised by the Chief

6    Counsel's Office.

7                    ATTORNEY ROBINSON:

8                    Stop.

9    A.   Oh, okay.

10   BY ATTORNEY TOBIN:

11   Q.   Do you know, was there a document that ---

12   A.   Not that I'm aware of.

13   Q.   --- the Board relied on?  Was there any

14   document that set forth this decision making

15   that was given to Mr. Chappelle that said we're

16   going to count these two years towards your

17   federal ---

18   A.   Yes.

19   Q.   --- sentence?  And what was that document?

20   A.   His PBPP-39.

21                    ATTORNEY ROBINSON:

22                    That's within the documents that

23   were recovered for you out of the file.

24   BY ATTORNEY TOBIN:

25   Q.   So the PBPP-39 form told him that the two

79

1   years for his federal sentence was going to go

2   towards --- those two years were going to go

3   towards the federal sentence; is that correct?

4           ATTORNEY ROBINSON:

5           The documents here and that's --- I

6   don't know what it told him.  I mean, he

7   understood it and he read it, but ---.

8           ATTORNEY TOBIN:

9           Could you tell me what document ---

10          ATTORNEY ROBINSON:

11          Sure.

12          ATTORNEY TOBIN:

13          --- you're looking at?

14          ATTORNEY ROBINSON:

15          Keep going.  Behind the Notice of

16  Board Decision.

17          ATTORNEY TOBIN:

18          Okay.

19          ATTORNEY ROBINSON:

20          That's it.

21          ATTORNEY TOBIN:

22          Is this the Order to Recommit and

23  at the bottom it says, modify 7/29/09?

24          ATTORNEY ROBINSON:

25          Correct.

80

1        ATTORNEY TOBIN:

2            Okay.

3    BY ATTORNEY TOBIN:

4    Q.  So, Mr. Janis, if you could review this page

5    and let me know what on here reflects that

6    decision to credit the --- to take two years out

7    of the amount of time and credit it towards

8    federal.

9    WITNESS COMPLIES

10            ATTORNEY KEATING:

11            Is this one of the documents that's

12   been entered in as an exhibit?

13            ATTORNEY TOBIN:

14            It is.  Exhibit D.

15            ATTORNEY KEATING:

16            And what page is Exhibit D ---?

17            ATTORNEY TOBIN:

18            It is the second ---.

19            ATTORNEY KEATING:

20            We have the whole exhibit stapled

21   together.  Can we look at the exhibits marked

22   and see what ---.  It's a stapled exhibit, so

23   we're clear for the record what we're looking

24   at.

25            ATTORNEY TOBIN:

81

1              This is page nine.

2                   ATTORNEY KEATING:

3              Okay.  And what is it about page

4      nine you're asking?

5                   ATTORNEY TOBIN:

6              I'm asking if there's anything on

7      that document that reflects the Parole Board's

8      crediting of the two years of --- for the

9      federal sentence to the federal sentence.

10     A.   Right.  And I refer you to the bottom of the

11     first page of 39, convictions resulting in

12     recommitment.  Sentence date is 11/24/2008,

13     sentence federal indictment number 02CR0032-01,

14     period, 24 month.  Place of confinement,

15     federal.

16     BY ATTORNEY TOBIN:

17     Q.   At this point was Mr. Chappelle in federal

18     custody or in a federal prison or in a state

19     prison?

20     A.   I believe at this point ---.

21                   ATTORNEY KEATING:

22              At what point?

23                   ATTORNEY TOBIN:

24              At this point.

25                   ATTORNEY KEATING:

82

1          Give us a date, please.

2               ATTORNEY TOBIN:

3               July 29th, 2009.

4   A.   Give me one second.  I believe off the top

5   of my memory ---.  I have a green sheet here.  I

6   believe he was in our custody --- or not our

7   custody, in DOC custody.  Yes, on this date he

8   returned to the SCI 4/15/2009, from federal

9   custody.

10  BY ATTORNEY TOBIN:

11  Q.   Is there something on this document that

12  reflects when this decision was made to credit

13  the two years to the federal sentence?

14  A.   I believe the custody for return date, if

15  you look back at the 39, is dated 4/14/2009.

16              ATTORNEY ROBINSON:

17              Listen to the question.  You're

18  asking him when that calculation was performed;

19  correct?

20              ATTORNEY TOBIN:

21              I think so, yes.

22              ATTORNEY ROBINSON:

23              I don't want to put words in your

24  mouth.

25              ATTORNEY TOBIN:

83

1          Right.

2     BY ATTORNEY TOBIN:

3     Q.   From this document, can you tell when the

4     calculation --- the recalculation was performed?

5     A.   Yes.  If you look at the very right-hand

6     bottom it says modification date, last modified

7     and time 7/29/2009, 2:43:25 p.m.

8     Q.   And my understanding is that the Board makes

9     the decision and then the Order to Recommit is

10    done by a technician at the Central Office?

11    A.   That's correct.

12    Q.   Is this date at the bottom, 7/29/09, the

13    date the technician made the recalculation, or

14    the date the Board made the decision, or both,

15    or neither?

16    A.   This the date that the medication was

17    issued.  The Decision by the Board to recommit

18    was previous.

19    Q.   I need to re-ask this.  When was the

20    decision to apply the two years to the federal

21    sentence made?

22    A.   On 7/29/2009.

23    Q.   And that Decision was made by the Board?

24    A.   That decision was made by my technician.

25                   ATTORNEY KEATING:

84

1              Can I ask the stenographer to

2    repeat that question, please?

3    PREVIOUS QUESTION READ BACK

4    BY ATTORNEY TOBIN:

5    Q.   If you look at page 12 of the same packet,

6    which I believe was Exhibit D ---.  And it's

7    the December 3rd, 2008 letter to Catherine

8    McVey.

9    A.   This is the handout exhibit which you just

10   furnished?

11   Q.   No, it's what Mr. Robinson passed out.  It

12   might be in this packet.

13              ATTORNEY ROBINSON:

14              December 3rd, '08?

15              ATTORNEY TOBIN:

16              Letter.

17              ATTORNEY ROBINSON:

18              From Burton Rose?

19              ATTORNEY TOBIN:

20              Yes.

21   A.   Okay.

22              ATTORNEY TOBIN:

23              If you could just take a moment

24   to read that to yourself and let me know when

25   you're done.

85

1  WITNESS COMPLIES

2  A.   Okay.

3  BY ATTORNEY TOBIN:

4  Q.   Do you recognize that document?

5  A.   No.

6                  ATTORNEY KEATING:

7                  She's going to ask you about it

8  anyway.

9  BY ATTORNEY TOBIN:

10  Q.   So just reading what this is, what does

11  this mean to you, if anything?

12  A.   That it would be notification to the Board

13  in the modification of the federal sentence on

14  November 24th from U.S. District Judge Timothy

15  Savage in the criminal case which we're

16  discussing today, Criminal Action Number

17  02-32-01.  It's been modified to a term of

18  24-month imprisonment.

19  Q.   And it states that it was effective as of

20  July 18th, '07; correct?

21  A.   Correct.  And the letter's dated 12/3/08.

22  Q.   So what's your understanding of what the

23  federal sentence, the running time and the

24  order of sentence, is from this letter?

25  A.   The order of sentence ---.

86

1          ATTORNEY KEATING:

2               Again, are we getting into fact

3     witness or is this ---?  He can testify as to

4     what happened ---

5               ATTORNEY TOBIN:

6               Yeah.

7               ATTORNEY KEATING:

8               --- and when it happened.

9               ATTORNEY TOBIN:

10              I'm trying to understand ---.

11              ATTORNEY KEATING:

12              Let me finish.  And there's no

13    dispute what the letter says.  And it said

14    where the credit went.  Which are all factual

15    questions.

16              ATTORNEY TOBIN:

17              Let me ask you a question.

18              ATTORNEY KEATING:

19              Let me finish.  But what his

20    understanding of this ---.  I don't see how

21    that is relevant.

22              ATTORNEY ROBINSON:

23              Well, he's not testifying he's an

24    expert.

25              ATTORNEY TOBIN:

87

1        Okay.  I'll withdraw the

2   question.

3                ATTORNEY KEATING:

4                Thank you.

5   BY ATTORNEY TOBIN:

6   Q.   So the information in this letter, would

7   the Parole Board --- would your Operations Unit

8   have used the information in this letter in any

9   way?

10  A.   Yes.

11  Q.   And how would you have used it?

12  A.   Upon gaining a certified copy,

13  verification that the sentence was actually

14  changed, we would then look at our recommit

15  action to look to see if modifications need to

16  be made to the original modification.  Which

17  would have been ---.  Because if Mr. Chappelle

18  continued to go back to Court to be resentenced

19  it would have been a modification upon a

20  modification.

21  Q.   And do you know, from your review of the

22  file, whether what you just described happened,

23  whether there was a review and a modification

24  of his sentence?

25  A.   Yes, there was.

88

1    Q.   After receiving this, after this letter

2    was written?

3    A.   There were two modifications.  I don't

4    know if it was prior to or after this.  Our

5    first modification was regarding the Board

6    action that was issued --- just bear with me

7    here ---

8    Q.   Take your time.

9    A.   --- April 16, 2009.  We received

10   information and we modified Mr. Chappell's

11   Board action on that date for the first time.

12   That's where we recalculated his max as

13   9/6/2014.

14   Q.   And how did that calculation ---.  How was

15   that calculation done?

16   A.   That calculation was done in the same

17   manner as all of our calculations.  We're

18   taking the date that the individual was

19   paroled, subtracting it from his max date, and

20   then allocating that time appropriately.  And

21   in this case Mr. Chappelle wasn't allocated

22   that time, and that is why the 9/6/2014 date is

23   what the original recalculated max turned out

24   to be.

25   Q.   So you're saying he was not allocated back

89

1   time?

2   A.   That's correct.

3   Q.   And you said there was a second

4   modification after this letter?

5   A.   Yes, the July 29, 2009 Board action.  It's

6   part of the record that was issued on that

7   date, July 29, 2009, which establishes a parole

8   violation max at 7/14/2009.  We've modified

9   that previous Board action of 4/16/09 to now

10  allocate back-time credit for everything, with

11  the exception of the two-year period that he

12  was serving his federal sentence.

13  Q.   And for that two-year period you testified

14  earlier that it was the 2002 to 2004, I believe

15  you said.  February 20th of '02 to February

16  20th of '04 was the ---

17  A.   Yes.

18  Q.   --- two-year period.  Where did that time

19  period come from?

20  A.   The federal charges were levied.  He was

21  indicted.  He did not post bail on 2/20/2002.

22  Twenty-four (24) months from that point would

23  calculate out to 2/20 of 2004.  After all the

24  dust settled on all of the resentencings, we

25  took that period as service of that federal

90

1    sentencing.  The court resentenced him to serve

2    24 months and that's the period that seemed

3    most logical.  He was given credit for all

4    periods before that and all periods after that.

5    Q.   The Court resentenced him to 24 months in

6    November of 2008; correct, the federal court?

7    Actually, if you look at page ---.

8    A.   Right.  The Burton Rose letter to the

9    Chairman indicates that on November 24,

10   2008 ---.  Okay.

11   Q.   And if you flip two pages beyond that in

12   that same packet.

13   A.   To the Court Order?

14   Q.   Yes.

15   A.   Okay.

16   Q.   So this document, this Court Order, is

17   signed by the Judge in the federal case;

18   correct?

19   A.   Correct.

20   Q.   And this states that the 24 months is

21   effective as of July 18th, 2007; correct?

22   A.   As I'm reading it, as per the Order that

23   the Defendant's term of imprisonment is reduced

24   to 24 months, effective as of July 18, 2007.

25   When the prison term is effective.  It does not

91

1  specify what dates.  It just says that this

2  resentencing is effective on that date.  That's

3  the way I'm interpreting it.

4  Q.  Does the Parole Board ---?  Does your

5  office use information from Court Orders in

6  doing your calculations?

7  A.  Yes.

8  Q.  And who in your office uses that

9  information?

10  A.  I do, my technicians do, my parole

11  managers do.

12  Q.  Okay.  And after getting a copy of this

13  Order, you said when all the dust settled you

14  allocated the two years to the 2002 to 2004

15  period?

16  A.  Yes.

17              ATTORNEY KEATING:

18              Objection.  I don't believe he

19  said that he allocated it.

20  A.  My technician allocated it.

21  BY ATTORNEY TOBIN:

22  Q.  Instead of allocating it from July 18th,

23  2007 forward?

24  A.  That's correct.

25  Q.  Does the Parole Board have any ---?  Does

92

1  your office have any ability to determine

2  whether someone is serving their federal

3  sentence in a state institution?

4  A.   Rephrase that.  I'm kind of unclear what

5  you're asking.

6  Q.   Does the Parole Board or your technicians

7  have authority to determine or to make

8  someone's federal sentence be served while

9  they're in a state institution?

10  A.   No, we don't ---.

11           ATTORNEY ROBINSON:

12           You're asking him whether the

13  Board can designate it or whether they can find

14  out what's happening?

15           ATTORNEY TOBIN:

16           Whether they have the authority

17  to apply credit for a federal sentence while

18  somebody is serving time in a state

19  institution.

20           ATTORNEY ROBINSON:

21           That's a legal ---.  I mean,

22  that's a question of law, I think.

23  A.   As responded to previously ---.

24           ATTORNEY ROBINSON:

25           It either can or it can't,

93

1    according to how sentences are calculated under

2    the Prisons and Parole Code, Parole Act, as it

3    was known then, as interpreted by the

4    Commonwealth Court.

5              ATTORNEY TOBIN:

6              So let me ask a different

7    question then.

8    BY ATTORNEY TOBIN:

9    Q.   When you're doing your calculations, how

10   do you know or find out which sentence someone

11   is serving at a particular time when they're in

12   prison?  How do you know that?

13   A.   Our order is the service of the sentences.

14   And it dictates how we calculate.  As I was

15   explaining earlier, if it's an SCI sentence,

16   back time comes first, the recommitment

17   sentence comes second.  If it's a sentence in

18   another domain or county, that sentence has to

19   be served first prior to becoming eligible,

20   available to the Board for us to issue a final

21   correction.  So there's different criteria that

22   we have to follow which dictates how we

23   calculate and recalculate or make a Board

24   action when available for finalizing.

25   Q.   But you don't make the determination of

94

1   which sentence someone is serving at a ---?

2   You don't make the concurrent, consecutive or

3   order of sentences determination?

4   A.   No, the court does that.  The Parole Act,

5   or the Prisons and Parole Code, as it is called

6   now, established all the criteria for which we

7   work with to finalize these cases.

8   Q.   In Mr. Chappelle's case, did you consult

9   with or communicate with the DOC or any of your

10  staff about Mr. Chappelle's federal --- how to

11  handle Mr. Chappelle's federal resentencing?

12  A.   Over the years?

13  Q.   Yes.

14  A.   Did I personally?  Of course.

15  Q.   And ---.

16  A.   I mean, Mr. Chappelle's been back into

17  court for resentencing so many times.  I was

18  involved in vacating the other recommitments,

19  coordinating the new hearings to be scheduled

20  with our field staff.  And as to, was I

21  involved in this most recent recalculation or

22  previous recalculation?  I really don't

23  remember.

24  Q.   When you say involved, did that include

25  communicating with the DOC Records Office or

95

1    records administrator about this issue?

2    A.   They could have been.  I can't say for

3    certain.  His original sentence ---.

4                    ATTORNEY ROBINSON:

5                    Do you recall whether you

6    communicated with DOC about ---?

7    A.   No, I don't.  You have to realize that

8    originally not only was the 162 or 3 month

9    sentence vacated, so was the conviction, which

10   meant then that our recommitment hearing was

11   invalid.  And he was resentenced, I believe,

12   then to a 65-month sentence, so another hearing

13   had to be held.  And I do recall being involved

14   with the legwork to get everything moving up to

15   the point where we're at now.  But what my

16   involvement was ---.

17   BY ATTORNEY TOBIN:

18   Q.   And you testified earlier you don't recall

19   having discussions with Mr. Chappelle about

20   this?

21   A.   No.

22   Q.   So during the federal resentencing, his

23   back time on his original court-imposed

24   sentence didn't change?  The amount of time he

25   had left to serve on that original sentence

96

1  didn't change?

2  A.   No, that stays static.  And that's

3  controlled --- as I testified to previously,

4  the difference between the max date and the

5  parole date.  The actual date that he signs his

6  release orders dictates that amount of time.

7  Q.   I'm sorry.  The date that who signs his

8  release orders?

9  A.   The inmate.

10  Q.   Okay.  The PB-10 and 11?

11  A.   Yes.

12  Q.   Okay.  Does a Federal Court's Order that a

13  federal sentence should run concurrent to a

14  state sentence have any impact on how the Board

15  does the recalculation?

16          ATTORNEY KEATING:

17          I'm going to object to that

18  question.  You're asking for ---.

19          ATTORNEY TOBIN:

20          If you know.

21          ATTORNEY KEATING:

22          No, you're asking for a legal

23  opinion, Board opinion.  We're talking about

24  how Mr. Chappelle's time gets calculated.

25          ATTORNEY TOBIN:

97

1              If he can answer the question, he

2     should be able to answer the question.

3              ATTORNEY KEATING:

4              I'm objecting to ---.

5              ATTORNEY TOBIN:

6              And your objection is noted.

7              ATTORNEY ROBINSON:

8              What are you asking him?

9              ATTORNEY TOBIN:

10             I'm just ---.

11             ATTORNEY ROBINSON:

12             Are you asking him does the Board

13    consider Federal Court Orders or are you asking

14    him how do we interpret these Federal Court

15    Orders as they apply to Pennsylvania State Law

16    as ---?

17             ATTORNEY TOBIN:

18             Neither.  Neither.  I'm asking

19    how ---.

20             ATTORNEY ROBINSON:

21             What are you asking?

22             ATTORNEY TOBIN:

23             I'm asking what I thought I asked

24    before, which was in the recalculation process,

25    does the fact that a Federal Court has ordered

98

1    a federal sentence to run concurrently to a

2    state sentence impact the recalculation

3    process.

4                    ATTORNEY ROBINSON:

5                    You're asking hypothetical

6    questions.  If you can show me factually how

7    that relates to this case, ---

8                    ATTORNEY TOBIN:

9                    Okay.

10                   ATTORNEY ROBINSON:

11                   --- perhaps we can get there.  I

12   mean the Order is the Order, and it says what

13   it says.  And he has explained how he

14   calculated the sentence.  So if you're going

15   beyond that, he's being called as something

16   other than a fact witness, which ---.

17                   ATTORNEY TOBIN:

18                   Okay.  Well, I will show you a

19   document.

20                   ATTORNEY KEATING:

21                   You asked it before.  Did he

22   answer it before?

23                   ATTORNEY TOBIN:

24                   He did not, I don't believe.

25                   ATTORNEY KEATING:

99

1        Was it subject to an objection?

2   BY ATTORNEY TOBIN:

3   Q.   Do you know whether Mr. Chappelle was ---

4   one of his federal resentencings was for 95

5   months running concurrent to his state

6   sentence?

7   A.   I believe one of the resentencings was.  I

8   believe it went from 162 months, and he was

9   resentenced to 95 months and four years

10  probation supervision.  Off the top of my head

11  I don't know whether it was ordered concurrent

12  or consecutive, but as I indicated earlier, you

13  know, at the time ---.

14            ATTORNEY ROBINSON:

15            Answer the question.

16  A.   No.

17  BY ATTORNEY TOBIN:

18  Q.   So ---.

19            ATTORNEY KEATING:

20            Wait a minute.  The question was

21  whether the federal sentence was concurrent to

22  the state sentence?

23            ATTORNEY TOBIN:

24            Yes.  Was ordered to run

25  concurrent to the state sentence.

100

1          ATTORNEY KEATING:

2                Okay.

3    A.   Yes, it could have been.

4    BY ATTORNEY TOBIN:

5    Q.   Okay.  I can't find the Order in here.

6    Unfortunately, I didn't bring my whole file.

7    Do you have a section of the file that contains

8    Federal Court Orders in Mr. Chappelle's file?

9    A.   We don't have a section file with Court

10   Orders.  No, I don't.

11   Q.   Well, I will represent to you that he was

12   sentenced to 95 months to run concurrent to his

13   state sentence.

14   A.   Okay.

15   Q.   Unfortunately, I don't have the document

16   right in front of me.  Did that have any impact

17   on the recalculation of his parole max date?

18   A.   May I answer?

19              ATTORNEY ROBINSON:

20              If you can.  And I mean he has

21   already explained how the sentence is

22   calculated.

23   A.   Our calculation ---.

24              ATTORNEY ROBINSON:

25              He answered several times.

101

1  A.   Right.

2                  ATTORNEY ROBINSON:

3              They allocated 24 months to the

4  federal time, based on what he said they did.

5  Whether that was right, wrong, or different is

6  something we've probably discussed before, and

7  is a legal question.  So I mean he has already

8  explained how they calculated the sentence.

9  BY ATTORNEY TOBIN:

10  Q.   Is the Parole Board responsible or is your

11  unit responsible for making sure that the

12  inmate serves his federal sentence first before

13  serving the remainder of his original state

14  sentence?

15  A.   We're responsible for the issuance of

16  Board actions.  We would not issue a final

17  recommitment Board action until the offender is

18  available to us.  And that's one of the

19  criteria, is that he would have to serve that

20  sentence prior to becoming available.

21  Q.   And how do you get notified?  How are you

22  notified that he has served that sentence?

23  A.   There are a number of different ways that

24  we get notified.  If the Board is tasked with

25  transporting the individual, whoever does the

102

1    transport.  If it's interstate, they're

2    responsible for arranging ---.  If it's a

3    private entity that's doing the transport, they

4    would bring us the file.  They would notify us.

5    There would be documentation in the file

6    regarding the release from the federal sentence

7    date to pick up by the state.  The agent, if

8    the agent is aware and picks the individual up,

9    they would notify us.  If the institutional

10   parole officer ---.

11        You have to realize that we have one

12   available Board action.  And that one available

13   Board action was issued contingent on the

14   service of the sentence becoming available to

15   the Board.  And one of the things typically is,

16   he's not at the SCI or in SCI custody, DOC

17   custody.  As in Mr. Chappelle's case, he was in

18   and out, in and out, in and out.  Once he is

19   returned, you know, they could notify us and we

20   would look at the case.

21   Q.  Okay.

22   A.  So there's a lot of different ways that we

23   get notified, you know.

24   Q.   In Mr. Chappelle's case, is there a

25   document that exists in the file that shows you

103

1    he's now available to serve his parole

2    violation?

3    A.   The Board actions are proof of the

4    recalculations.  The Board actions that we

5    issue are verification that we would have

6    gotten notification.

7    Q.   So looking back at Exhibit E, which was

8    the packet that I passed out --- it is the

9    Board actions.

10   A.   Got it.

11   Q.   If you could look through those and see if

12   there is one that indicates the when-available

13   --- that Mr. Chappelle is now available to

14   serve his --- the remainder of his original

15   sentence.

16              ATTORNEY KEATING:

17              When you say original sentence,

18   you mean state sentence?

19              ATTORNEY TOBIN:

20              Yes.

21   WITNESS REVIEWS DOCUMENT

22   A.   If you refer to the April 16, 2009

23   recommitment Board action, which you furnished

24   my packet, that would be the first indication

25   that the Plaintiff, Mr. Chappelle, was

104

1    available to us.  Issued the final recommitment

2    Board action at that time.

3    BY ATTORNEY TOBIN:

4    Q.   Okay.  What triggered this April 16th,

5    2009 Board action?  What led to this?

6    A.   I believe this would have been issued upon

7    receiving and verifying information that he was

8    resentenced to a 24-month term of imprisonment

9    and that he would have been available to us.

10   Q.   That would have been the Federal Court

11   Order?

12   A.   Correct.  It may not have been the Court

13   Order that you're providing as an exhibit, but

14   we would have verified the --- had to have

15   verified the information of the sentence change

16   prior to ---

17   Q.   Okay.

18   A.   --- initiating the calculation.

19   Q.   And if you look back through the previous

20   Notice of Board Decisions, starting with the

21   one on November 9th, 2006.  This is also

22   Exhibit E.

23   A.   Okay.

24   Q.   Am I correct in understanding that this

25   notice told Mr. Chappelle that he was being

105

1   paroled to his federal sentence?

2   A.   His federal detainer sentence.

3   Q.   What's the difference between a federal

4   sentence and a federal detainer sentence?

5   A.   In this case he had a federal detainer,

6   which was a sentence lodged at the DOC.

7   Q.   What is a federal detainer sentence?

8   A.   In this case it would have been, at this

9   point, a federal detainer for the unserved

10  sentence --- it was either the 162 or 3 month

11  or the 95-month sentence --- was lodged as a

12  detainer with the DOC.  I mean, you could have

13  a detainer.  It could be a parole violation

14  detainer.  There are a number of different

15  detainers.  He was being reparoled through a

16  federal detainer sentence.

17  Q.   And what would have triggered this Board

18  action?

19  A.   I believe that this was the 162-month

20  sentence.  Because that whole conviction was

21  vacated, which then made this an invalid

22  action.  That's why we had the rescind down the

23  road.  It could have played out different ways,

24  but I believe the detainer in this case was

25  that initial sentence.

106

1   Q.   Okay.   So this action, the November 9th,

2   2006 action, was rescinded?

3   A.   Yes.   And to answer your question, that

4   decision was based off of a reparole review.

5   Q.   And if you look at the next Notice of

6   Board Decision, dated March 2nd, 2007, it

7   states that it rescinds the Board actions of

8   5/6/03, 12/2/03, 3/5/04, 9/7/04, 9/23/05 and

9   11/9/06.   What does that mean, rescind those

10   Board actions?

11   A.   This Board action was prompted by Mr.

12   Chappelle's conviction being vacated.   Not just

13   resentenced, the entire conviction sentence was

14   vacated by the court.   He entered a guilty plea

15   and then was resentenced.   Therefore, any

16   recommitment actions that we issued previously,

17   the reparole to the detainer were invalid.   We

18   voided the original hearing, which was the

19   recommitment hearing for the 172 or 162-month

20   conviction, and we had to hold new hearings.

21      Once that conviction was vacated, you have

22   to remember that, you know, the criteria that

23   we outlined earlier, there has to be a

24   conviction in a court record.   The conviction

25   has to be upon --- that would carry jail time.

107

1    Well, when the conviction was vacated, all bets

2    were off.  That hearing was void.  The Board

3    actions were invalid.  Our field staff had to

4    set up new hearings.  And that is why we have

5    rescission or rescind Board actions in

6    this ---.  Then we returned him to unavailable

7    because now you have to realize he's not

8    available again, because now he has a new

9    sentence that he hasn't served yet.

10   Q.   And these Board actions that were

11   rescinded --- they're also I believe in the

12   same packet of Notice of Board Decisions ---

13   were these Board actions just denying him

14   parole during that time period?

15   A.   A lot of them are the refusals and are

16   prefaced with the rescinding of those ---.

17                    ATTORNEY ROBINSON:

18                    Listen to the question.

19   BY ATTORNEY TOBIN:

20   Q.   So during that time period, Mr. Chappelle

21   had parole hearings and he was denied parole?

22   A.   Correct.

23   Q.   And he was in Coal Township during that

24   time period, while he was having those Board

25   hearings?

108

1    A.    More than likely.   I really didn't match

2    up the dates of the Board actions and where he

3    was being housed.

4    Q.    And during that time period, the Board

5    actions of 5/6/03 through 11/9/06, he was

6    serving his original state sentence --- or was

7    he serving his original state sentence?

8    A.    No.

9    Q.    What was he serving?

10   A.    He was when available, according to the

11   March 2nd, 2007 Board action.

12   Q.    Okay.

13   A.    I mean, what he was serving at that time,

14   because of the federal detainer for that

15   sentence, he really wasn't available to us, so

16   he wasn't serving our sentence.   As what the

17   Feds gave him credit for, that was solely up to

18   them.

19   Q.    The Notice of Board Decisions state at the

20   top, as recorded on and then a date.   Are the

21   Board Decisions recorded any place other than

22   the Notice of Board Decision and their

23   Recommitment Orders?   Are there other documents

24   that are recorded when the Board makes a

25   Decision?

109

1    A.   Not that I'm aware of.

2    Q.   So it would just be the Notice of Board

3    Decision and the Recommitment Order?

4    A.   Correct.

5    Q.   And so the rationale behind the Board

6    Decision, would that be included on either

7    document?

8              ATTORNEY ROBINSON:

9              I'm going to object.  The Board's

10   Decision says what it says.  I'm not sure you

11   need the rationale behind it.

12   BY ATTORNEY TOBIN:

13   Q.   The reason for the Board's Decision, is

14   that recorded anywhere?

15             ATTORNEY ROBINSON:

16             He just testified that is the

17   Board's Decision right there.

18             ATTORNEY TOBIN:

19             So the answer is that the reason

20   would be included on the Notice of Board

21   Decision itself?  There's no backup document,

22   is what I'm trying to get at.  No other

23   document that generates the Notice of Board

24   Decision.

25             ATTORNEY ROBINSON:

110

1              Are we talking about a

2    recalculation order?

3                   ATTORNEY TOBIN:

4              I'm just asking what other

5    documents are generated when the Parole Board

6    reviews someone when they're applying for

7    parole.

8                   ATTORNEY ROBINSON:

9              When they're applying for parole?

10                  ATTORNEY KEATING:

11             Or subsequent to the hearing?

12                  ATTORNEY TOBIN:

13             Subsequent to the hearing, yes.

14   Thank you.  The documents that are issued after

15   the hearing, what do they consist of?  Is it

16   only the Recommitment Order and the Notice of

17   Board Decision or is there another document

18   that's generated?

19                  ATTORNEY KEATING:

20             There may be a vote sheet, but

21   that's confidential.  I don't know if you'd

22   have a vote sheet.

23                  ATTORNEY ROBINSON:

24             I'm not trying to be cagey here,

25   I'm just trying to understand what you're

111

1  asking.  The Board's Decision is the Board's

2  Decision.  When there's a hearing conducted, of

3  course they'd rely on the evidence that is

4  presented.  You know, there's testimony,

5  there's exhibits, I'm sure the Board members

6  take notes.

7              ATTORNEY TOBIN:

8              Sure.  No, I'm talking about ---.

9              ATTORNEY ROBINSON:

10             We're talking about a different

11 animal here.   We're talking about a

12 recalculation order.

13             ATTORNEY TOBIN:

14             I just want to make sure that I'm

15 not ---.  I have a stack of Notice of Board

16 Decisions and a stack of Recommitment Orders

17 that are issued after the hearings.  I just

18 want to know if there's another category of

19 document that is also issued after the hearing.

20             ATTORNEY ROBINSON:

21             No.  Well, I guess I can't

22 testify.

23             ATTORNEY TOBIN:

24             Yeah.

25 BY ATTORNEY TOBIN:

112

1   Q.   Can I ask you that?

2   A.   I believe I already testified to no.  I

3   mean, prior to all this dialogue.

4   Q.   Okay.  I apologize.  I must have missed

5   that.  What is delinquent time?

6   A.   Delinquent time is when a parolee absconds

7   parole supervision.  From the point that he

8   absconds to the point that he's detained on our

9   Board warrant, during that period he's

10  considered delinquent.

11  Q.   Does the Parole Board calculate delinquent

12  time?

13  A.   Yes.

14  Q.   And what impact does that have on the

15  inmate's court-imposed sentence, if any?

16  A.   None.

17  Q.   Is delinquent time ---?

18                  ATTORNEY ROBINSON:

19                  Wait.  Which court-imposed

20  sentence?

21                  ATTORNEY TOBIN:

22                  The original court-imposed ---.

23                  ATTORNEY ROBINSON:

24                  The original court-imposed ---

25                  ATTORNEY TOBIN:

113

1          Yes.

2               ATTORNEY ROBINSON:

3               --- sentence or the new one?

4               ATTORNEY TOBIN:

5               The original court-imposed

6    sentence.

7               ATTORNEY KEATING:

8               Okay.  But the Board didn't

9    impose any sentence.

10              ATTORNEY TOBIN:

11              Right.  I said court-imposed.

12              ATTORNEY KEATING:

13              And I believe ---.

14              ATTORNEY ROBINSON:

15              You said Board sentence, I

16   believe.

17              ATTORNEY KEATING:

18              Well, I mean ---.

19   A.   When I answered the emphatic, no, I

20   thought you were referring to a recommitment

21   sentence.  Delinquent time has no impact on a

22   direct parole recalculated max date.  On a

23   technical parole violation, the amount of

24   delinquent time on a recalculation only would

25   be added to the max date.

114

1       In Mr. Chappelle's case, a direct parole

2   --- as being a direct parole violator, we're

3   looking at his back time, which would trump and

4   make the delinquent time a moot point.  We're

5   going to take the date that he's paroled from

6   the max date, and that's what we're going to be

7   allocating.

8   BY ATTORNEY TOBIN:

9   Q.   And is it correct to say that delinquent

10  time is one subset of state time?

11  A.   Yes.

12  Q.   Okay.  If an inmate has questions about

13  his back-time calculation or parole violator

14  max date calculation, is there another way,

15  apart from appealing the Board Decision, that

16  he can address those issues with the Parole

17  Board?

18  A.   I believe the appeals process.  I mean,

19  that's something that Chief Counsel ---.  But I

20  believe it's the appeals process.

21  Q.   Okay.  You don't have an inmate help line

22  at the Parole Board where they can call up

23  and ---?

24  A.   As a matter of fact, we do.  It's called

25  the inmate inquiry.

115

1    Q.   Oh.

2    A.   And if there would be an inquiry, they

3    would look at it and bring it to our attention.

4    Q.   And that's here at the Central Office?

5    A.   Correct.

6    Q.   Is there a phone number?

7    A.   I don't know it offhand.

8    Q.   Is there a person, like one particular

9    person, who handles recalculation issues or

10   does each staffer have a caseload?

11   A.   That's correct, each parole staff

12   technician is assigned a caseload.

13   Q.   And is there a person who is assigned to

14   be a liaison with the DOC about issues relating

15   to Parole Board calculations?

16   A.   No.

17   Q.   Can the staff technicians communicate with

18   the DOC about these parole calculations?

19   A.   Yes.

20   Q.   Is the DOC able to contact those

21   technicians and ask about a particular

22   calculation?

23   A.   Yes.

24   Q.   Do you know if that happens?

25   A.   Yes.

116

1   Q.   And how frequently does it happen?

2   A.   It's rather frequent.

3   Q.   If there had been, in Mr. Chappelle's

4   case, communications from the DOC to the Parole

5   Board about particular calculations, would

6   those be in his file?

7   A.   They may, they may not be.  They may.

8   Q.   Do you know who the technician was who was

9   assigned to Mr. Chappelle's case?

10  A.   Yes.

11  Q.   Who was that?

12  A.   Which calculation?  Yes.  I mean, we have

13  three.  We have the original recalculation,

14  done I believe around 2002, was a technician

15  who's no longer with us, who retired, Judy

16  Magaro (phonetic).  Yeah.  I'm sorry, Mary

17  Risetta (phonetic) was the first one,

18  3/14/2002.  Judy Magaro --- I saw her initials

19  here --- December 2nd, 2003, issued that

20  recalculation.  Yvonne Bricker issued the

21  recalculation, I believe it was in ---.  Hold

22  on, let me get to the right one ---.  I'm

23  sorry, I believe that was Juanita Herndon

24  (phonetic).  She was responsible for the

25  rescind Orders, March 2nd, 2007.  I think

117

1   probably every one of my staff probably looked

2   in these.  On June 25th, 2007 Carol Frankavilla

3   (phonetic).  On April 16, 2009, Yvonne Bricker.

4   And then the last Board action on 7/29/09 it

5   looks like it was Yvonne Bricker again.

6   BY ATTORNEY TOBIN:

7   Q.  So Mr. Chappelle's file wasn't with one

8   person the whole time?  There was no one

9   technician responsible for his ---?

10  A.  That's correct, there were plenty of eyes

11  on this case from the very beginning.

12  Q.  And how are the communications between the

13  DOC and the Parole Board technicians

14  documented?  Would there be a note in the file,

15  for example?

16  A.  There may be a note.  Maybe e-mail

17  correspondence.

18  Q.  And you were supervising each of these

19  technicians throughout the course of this?

20  A.  Yes.

21  Q.  Did you ever receive any phone calls from

22  the DOC about the Parole Board recalculations?

23  A.  Oh, I don't remember.

24  Q.  When you get the DC-16E form or when you

25  have access to it on a computer, does the

118

1    Parole Board double-check the accuracy of the

2    numbers that are put on it --- that are input

3    onto the form?

4    A.   Not on every 16E.

5    Q.   On some of them?

6    A.   On recommitments, where the inmate is

7    rolling over.  As I explained earlier, the SCI

8    sentence where he's rolling over, he's being

9    paroled or maxed from the instant offense and

10   now he's being rolled over to the reason to

11   recommitment, which is to be served at the SCI.

12   The office of the Board Secretary will review

13   that to make sure that he's getting the credit

14   that he should get or is getting credit he

15   shouldn't be getting.

16   Q.   Any other times when the Parole Board

17   would check the accuracy of the DC-16E?

18   A.   That would be a different division.  That

19   would be our Case Management Division that

20   creates the sentence profile.  They would be

21   dealing with the 16Es on that end.  And if

22   anything looked out of skew, they would be

23   addressing it on that end, not my technicians.

24   Q.   And the technicians work in the Violator

25   Division, I think you said.  Is that the name?

119

1   A.    That's correct, the Violator Unit.

2   Q.    What's the custody for return date?

3   A.    That's the date that the inmate/parolee

4   becomes available to the Board.

5   Q.    Is that the same as the when-available

6   date?

7   A.    No.   The individual is when available

8   until he becomes available to us.   A custody

9   for return date may be a sentencing date, a

10  date that he's paroled from the reason to

11  recommit sentence.   It's when, as I explained

12  previously, he's available to us when our

13  warrant is the sole purpose for his

14  incarceration.   So if he has another sentence

15  that he's serving, is a reason to recommit, he

16  becomes available, his effective date of return

17  would be when the court releases him from that

18  sentence.

19  Q.    But it's not the same as the

20  when-available date?

21  A.    No.

22  Q.    And who calculates the custody for return

23  date?

24  A.    It's not calculated, it's a matter of

25  fact.

120

1    Q.   And you said it comes from ---?

2    A.   The court.

3                (Janis' Deposition Exhibit F

4                marked for identification.)

5    BY ATTORNEY TOBIN:

6    Q.   I'm going to show you this document

7    labeled F.  If you could review that.  Do you

8    recognize that document?

9    A.   Yes, I do.

10   Q.   And what is this?

11   A.   This is a hand-typed PBPP-39, the Board's

12   official Recommitment Order.  I believe it

13   would have been dated in this case December

14   2nd, 2003.

15   Q.   And under custody for return on this

16   document it says 9/23/02.  Do you know why that

17   date is there; what that relates to?

18   A.   It probably is the initial sentencing of

19   Mr. Chappelle.  9/23/2002 he was sentenced, the

20   U.S. District Court Eastern District,

21   indictment number 02CR0032-01, counts one, two,

22   three.  So a total of a 162-month sentence.  So

23   that would be the date that he was originally

24   sentenced on his federal conviction.

25   Q.   And then a few lines up it says back-time

121

1   dates from 9/26/01 to 2/20/02.

2   A.   Okay.

3   Q.   What does that time period represent?

4   A.   That would represent the date that our

5   warrant was lodged, and then the date that the

6   State charges were withdrawn and the Feds

7   stepped in.  So as indicated in my testimony

8   previously, when our warrant defaults to the

9   sole purpose for his incarceration, we would be

10  giving him credit towards the court's original

11  sentence.  And that's what we did in this case

12  at that point.

13  Q.   So that credit goes to his original ---

14  A.   Yes.

15  Q.   --- sentence?

16                   ATTORNEY ROBINSON:

17                   You have to let her finish the

18  question.

19  A.   All right.

20  BY ATTORNEY TOBIN:

21  Q.   And so the time period from 2/20/02 to

22  9/23/02, how is that accounted for?

23  A.   Could you repeat that?

24  Q.   So the time period from the end of the

25  back-time dates period, which is 2/20/02, to

122

1   the custody for return date, how is that time

2   period accounted for?

3   A.   Which time period are you looking at?

4   Q.   From February 20th of 2002 to 9/23/02.

5   That time, roughly seven months.

6   A.   Oh, that would go towards his federal

7   sentence.  You're referring to the back-time

8   dates, 9/26/01 to 2/20/02, and then you're

9   looking for what happens from 2/20/02 to

10  9/23/02?

11  Q.   Yes.

12  A.   Okay.  He was arrested on 2/20/2002 by the

13  Feds.  He didn't post bail.  That would be

14  credited towards the reason to recommit.

15  Q.   Okay.  You testified earlier that the

16  Parole Board decided to credit that to his

17  federal sentence?

18            ATTORNEY ROBINSON:

19            I don't know whether the Board

20  can credit anything to a federal sentence.  We

21  will calculate our sentence based on the

22  requirements of the parole statute and the case

23  law.  And what the Feds do with that time, I

24  mean that's up to them, obviously.

25            ATTORNEY TOBIN:

123

1            But that's how you calculate ---.

2            ATTORNEY ROBINSON:

3            We don't calculate federal

4    sentences.  You need to be clear on that.

5    BY ATTORNEY TOBIN:

6    Q.   And what is confinement time on this

7    document?  What does that mean?

8    A.   If you notice, there is nothing indicated.

9    Q.   What is it?

10   A.   That would be any previous time that he

11   was confined on the Board's warrant from the

12   date of his release up to the date that we do

13   this.  We would be giving him a credit from any

14   periods that we had him detained towards that

15   initial sentence which he's on parole.  But it

16   is blank.  He hadn't been detained prior to

17   that.

18   Q.   If I'm understanding what you've said so

19   far --- tell me if I'm not --- the two year

20   federal sentence was applied in your

21   calculation in July of 2009?

22   A.   Correct.

23   Q.   So at the time that this Recommitment

24   Order was issued in 2003, that hadn't been done

25   yet, it was retroactively done in July of 2009?

124

1    ATTORNEY ROBINSON:

2         You're asking him whether he did

3    something ---?

4    A.   2003.   That occurred in 2009?   I'm

5    not ---.

6    BY ATTORNEY TOBIN:

7    Q.   The Board's application of two years of

8    federal time didn't happen until 2009.   That's

9    what you testified to earlier.   At the time

10   that this was issued, that decision hadn't been

11   made yet, had it?

12   ATTORNEY ROBINSON:

13        I don't think it could be.   He

14   stated that the calculation was done in 2009,

15   and this calculation was done in 2003.

16   ATTORNEY KEATING:

17        Unless he went in a way back

18   machine.

19   ATTORNEY TOBIN:

20        All right.

21   OFF RECORD DISCUSSION

22   BY ATTORNEY TOBIN:

23   Q.   And how is the recomputed max date on this

24   document, 2/16/08, how did that get calculated?

25   ATTORNEY KEATING:

125

1          Is that an exhibit?

2          ATTORNEY TOBIN:

3          It is.  It's Exhibit ---

4          ATTORNEY KEATING:

5          Exhibit what?

6          ATTORNEY TOBIN:

7          --- F.

8     A.   It was calculated the way I explained that

9     we calculate.  If you look at the document, the

10    PBPP-39, the maximum date is 1/26/2007, Board

11    warrant date 4/9/01.  The back-time credit

12    subtracted from that raw figure, the back time

13    owed, which I said was 5 years, 9 months, 19

14    days, is calculated out to the back time owed,

15    which was 5 years, 4 months, 23 days.  That is

16    added to the custody return date and that's how

17    you get the recalculated max of 2/16/2008.

18    BY ATTORNEY TOBIN:

19    Q.   And so the time period from 2/20/02 to

20    9/23/02 isn't credited --- isn't included as

21    back-time credit?

22    A.   Correct.

23    Q.   Okay.

24    A.   Well, it's not credited.  As we discussed

25    earlier, the back-time credit stopped at

126

1   2/20/2002, but we issued a final Board action

2   as a recomputed max, as indicated on here,

3   2/16/2008.

4   OFF RECORD DISCUSSION

5   A.   If Mr. Chappelle would have ---.  I mean,

6   he would have got out in 2008 if he wouldn't

7   have continued to have his sentences ---.

8                    ATTORNEY ROBINSON:

9                    You don't have a question in

10  front of you.

11                   (Janis' Deposition Exhibit G

12                   marked for identification.)

13  BY ATTORNEY TOBIN:

14  Q.   Okay.  In this Exhibit F, which is a

15  collection of ---.  Actually, it's just one.

16  I'll show you another document.  We'll call

17  this Exhibit G.  Do you recognize that

18  document?

19  A.   Yes, I do.

20  Q.   And what is this?

21  A.   This is the Board's official Recommitment

22  Order, PBPP-39, and it's dated 4/16/2009.

23  Q.   And was this Recommitment Order ---?  What

24  conviction was this Order to Recommit based on?

25  A.   This was based on Chappelle's second

127

1   resentencing to 24 months in federal custody.

2   Q.   And was that the case that he caught when

3   he was arrested in September of '01?

4   A.   Correct.

5   Q.   And he ---.

6                    ATTORNEY KEATING:

7                    Excuse me.  Was that a case he

8   caught when he was arrested in 2001?  The

9   question ---.

10  BY ATTORNEY TOBIN:

11  Q.   Was this the conviction that stemmed from

12  his arrest on September 26, 2001?

13  A.   Yes.

14  Q.   After the State nolle prossed his charges?

15  The State nolle prossed the charges and the

16  Feds picked up the case; is that accurate?

17  A.   We're going back now to 2001.  I mean ---.

18  Q.   It's the same arrest.

19  A.   The same arrest.

20  Q.   And he'd already been recommitted due to

21  that arrest; isn't that correct?

22  A.   He was recommitted, yes.  But, then, as

23  you recall, we rescinded those because the

24  sentence on the recommitment was vacated, the

25  conviction.  So we had to go through everything

128

1  all over again.

2  Q.   And that sentence was the one imposed in

3  2002?

4  A.   2006, I think.   I may stand corrected.

5  11/21/2006 he entered another plea of guilty

6  and sentenced to 95 months.

7  Q.   So he had already come back on that.   Then

8  that was vacated in 2008 and then this Order

9  came out because of the ---?

10                    ATTORNEY KEATING:

11                    Objection.

12  BY ATTORNEY TOBIN:

13  Q.   He was already recommitted based on the

14  arrest in 2001 and the federal conviction

15  stemming from that arrest; isn't that accurate?

16  It's the same case.

17                    ATTORNEY KEATING:

18                    You said he was recommitted.

19  That's a different question than whether it's

20  the same case.

21  BY ATTORNEY TOBIN:

22  Q.   Is it accurate to say that he had several

23  --- three Recommitment Orders related to the

24  same federal case?

25  A.   That would be accurate.   I mean, I believe

129

1   he had two, not three.   Recommitment Orders,

2   yes.

3   Q.   Three Recommitment Orders related to the

4   same ---?

5   A.   Yes.

6                    (Janis' Deposition Exhibit H

7                    marked for identification.)

8   BY ATTORNEY TOBIN:

9   Q.   Were there any other ---?  And so that I'm

10  not just talking --- let me show you Exhibit H.

11  Is this also --- Exhibit H also a Recommitment

12  Order based on the same federal case?

13  A.   Yes.

14  Q.   Other than these three Orders to Recommit,

15  were there any other Orders to Recommit issued

16  by the Parole Board?

17                  ATTORNEY KEATING:

18                  Now you're way over ---.

19                  ATTORNEY ROBINSON:

20                  When you're saying three, are we

21  talking about a final one included in that

22  number, ---

23                  ATTORNEY TOBIN:

24                  Yes.

25                  ATTORNEY KEATING:

130

1          --- i.e., the July 29th?

2               ATTORNEY TOBIN:

3               Yes.  I want to make sure I have

4    all the Orders to Recommit.

5               ATTORNEY KEATING:

6               You got them all.  You got them.

7               ATTORNEY TOBIN:

8               Okay.

9    BY ATTORNEY TOBIN:

10   Q.   And if you'll take a look at the document

11   at the bottom, which is labeled Bates 945.

12   It's Exhibit G.  There doesn't appear to be any

13   section on this form that shows the total

14   sentence imposed, the total original sentence.

15   Is there a place that shows the total sentence

16   on this?

17   A.   Which total sentence?

18   Q.   The 6 to 12.

19   A.   If you look below the county, below the

20   term and OTN, that's your 6 to 12.

21   Q.   How is that ---?

22   A.   Those are the two indictment numbers that

23   he was sentenced to serve consecutively for 6

24   to 12.

25   Q.   So to find out the 6 to 12 information

131

1    you'd have to look at some other document to

2    get that?

3    A.   Right.   Correct.

4    Q.   And the Parole Board doesn't keep track of

5    how much time somebody has left to serve on his

6    original sentence; is that correct?

7    A.   Run this by me again.

8    Q.   You don't track the time remaining to

9    serve on an original sentence on these forms,

10   Orders to Recommit?

11   A.   On these Recommitment Orders we establish

12   the recalculated max.   In this case, the two

13   that you furnished to me, we have a

14   recalculated max of 9/6/2014.   Once we issue

15   that in a final Board action --- these only

16   arrive with the final Board action --- we no

17   longer have any vested interest.   That

18   information is passed to the DOC and ---.

19   Q.   So at the very top of this form, the small

20   print ---?

21                    ATTORNEY KEATING:

22                    Which exhibit is this?

23                    ATTORNEY TOBIN:

24                    Exhibit G.

25                    ATTORNEY KEATING:

132

1        Okay.

2   BY ATTORNEY TOBIN:

3   Q.   It says the above-named individual who is

4   conditionally released on parole by the

5   Pennsylvania Board of Probation and Parole has

6   been found by the Board to have violated the

7   conditions of parole.   Therefore, the Board, by

8   virtue of the authority conferred on it by law,

9   orders that individual recommitted for further

10  imprisonment for the remainder of the unexpired

11  maximum term, or until otherwise released or

12  discharged according to law.

13       Does the Parole Board have anything to do

14  with keeping track of the unexpired maximum

15  term?

16  A.   No.

17              ATTORNEY ROBINSON:

18              When you say keeping track, he

19  testified they establish.

20  BY ATTORNEY TOBIN:

21  Q.   Let me ask a more specific question.   The

22  Parole Board establishes recalculated maximum

23  dates.   Is that the same thing as giving the

24  DOC the number of days left that the inmate has

25  to serve?

133

1           ATTORNEY ROBINSON:

2               Do you understand the question?

3   A.   Right.   I mean ---.

4           ATTORNEY TOBIN:

5               I can ask it a different way.

6           ATTORNEY ROBINSON:

7               The max date is reflected on the

8   Decision, ---

9   A.   Right.

10          ATTORNEY ROBINSON:

11              --- which is expressed in a date.

12  I mean, it says what it says.  It doesn't say 5

13  days or July 14th, whichever comes first. The

14  Order is the Order, which is what he testified

15  about.  And it says the date, period.

16  BY ATTORNEY TOBIN:

17  Q.   The Parole Board doesn't compare that date

18  or look at the inmate's incarceration records

19  to see how many days the inmate has already

20  served, does it?  Do you compare this to any

21  document that shows credit for time served?

22          ATTORNEY ROBINSON:

23              It's been asked and answered.  He

24  has explained how they calculated the sentence

25  and that the parole --- how much was left

134

1   unserved at that point.  And then certain

2   periods after that it went either to the new

3   sentence or the old sentence.  And he has

4   explained how they calculated it.

5                  ATTORNEY KEATING:

6                  Many times.

7                  ATTORNEY ROBINSON:

8                  Phrase it a different way.  But I

9   mean he said what they do and how they did it,

10  and what they did in this case, so I object.

11  BY ATTORNEY TOBIN:

12  Q.  At the bottom of Exhibit G there's a

13  section labeled time lost due and then to

14  delinquency and to service of another sentence.

15  Is the delinquency section --- because in Mr.

16  Chappelle's case it says zero days ---?  Why is

17  that?

18  A.  Because it's really irrelevant when we're

19  taking the total amount of the unserved

20  sentence and applying it to the recalculation.

21  In other words, it's a moot point whether he

22  went delinquent during ---.  If we're going to

23  do a CPV ---.

24  Q.  Because he can't get credit to that time?

25  A.  Well, ---.

135

ATTORNEY KEATING:

Excuse me.  Let him answer the question.

A.   Yeah.  What we're doing with the CPV calculation in Mr. Chappelle's case, as reiterated numerous times, we're taking the max date, which is 1/26/2007, subtracting the date that he was paroled, which was 4/9 or 2001. The unserved portion of his sentence when we paroled him, he had 5 years, 9 months, 17 days left of that initial 6 to 12 month sentence to serve.  Regardless of delinquency time, we're going to take that amount as a direct parole violation, allocate it appropriately. Therefore, we're not going to add additional delinquent time.

As you indicated previously, we can't hold him longer than that 6 to 12.  We can't penalize him more than adding that 5 years, 9 months, 17 days.  So by adding delinquent time it would skew our entire calculation on a CPV.

BY ATTORNEY TOBIN:

Q.   Okay.  Thank you.  And then the service of another sentence section, what is that category?  What does that mean?

136

1    A.    That would be if we're going to stop and

2    interrupt the service of the back time.   If we

3    have an individual that is held on a domestic

4    warrant in a county prison and we're

5    calculating a CP --- TPV and we're going to say

6    from one period to another period he wasn't

7    available to us.   Our warrant wasn't the sole

8    purpose for his incarceration at the county

9    prison, he was being held on a domestics

10   detainer, domestics warrant.   That would be

11   service of another sentence.   There are all

12   kind of other like applicable case scenarios

13   that we use to apply service of another

14   sentence.

15   Q.    And in Mr. Chappelle's case, would the

16   service of the federal sentence time fit into

17   that category?

18                ATTORNEY ROBINSON:

19                He just testified that that's for

20   technical violators.   Mr. Chappelle is ---

21                ATTORNEY TOBIN:

22                Oh, it's not for convicted.

23                ATTORNEY ROBINSON:

24                --- a convicted violator.   And

25   there's a different provision in the Prisons

137

1  and Parole Code.

2           ATTORNEY TOBIN:

3           Okay.

4           ATTORNEY ROBINSON:

5           It's technical versus convicted

6  parole violator.

7  BY ATTORNEY TOBIN:

8  Q.   So this isn't applicable to him?

9  A.   It's blank, as you can see.  The

10  technician did not allocate any time as service

11  of another sentence, and the delinquency time

12  wasn't added.

13          ATTORNEY TOBIN:

14          I'm just going to review my

15  questions and make sure I don't have any more

16  questions for you.  It'll take me just a few

17  minutes.  Bear with me.

18  A.   Take your time.

19          ATTORNEY KEATING:

20          Take a two-minute break?

21          ATTORNEY TOBIN:

22          Yeah, if you all want to take

23  about a five-minute break and then we'll come

24  back.

25  SHORT BREAK TAKEN

138

1          ATTORNEY TOBIN:

2               I'm showing you what we'll mark

3     as Exhibit I.

4               (Janis' Deposition Exhibit I

5               marked for identification.)

6     BY ATTORNEY TOBIN:

7     Q.   Do you recognize that document?

8     A.   Yes.

9     Q.   And what is that?

10    A.   It's the Board's official Recommitment

11    Order, the PBPP-39, issued 7/29/2009.

12    Q.   If you could look at Exhibits G and H,

13    which I gave to you earlier.  What's the

14    difference between ---?  For Exhibit G at the

15    bottom ---?

16    A.   Which one's G?

17    Q.   G is, at the bottom the modified date is

18    4/16/09.

19    A.   Okay.

20    Q.   And then H, at the bottom is modified date

21    4/17/09.

22    A.   Okay.

23    Q.   Why was Exhibit H issued one day after

24    Exhibit G?

25    A.   I don't know.  There had to have been some

139

1    type of ---.  Totally different.  There has to

2    be.  I don't know why there would have been

3    another one unless there is some type of change

4    within this.  But, yeah, I did notice that.

5    And short of asking the tech if she has a

6    memory of why this was done ---.  As I'm

7    speaking, I'm giving a cursory review to see if

8    anything is different on the one than on the

9    other.

10                    ATTORNEY KEATING:

11                    Do they say page one of two at

12   the bottom?

13   BY ATTORNEY TOBIN:

14   Q.   Is there a second page to either of these

15   that you have in your file?

16   A.   I believe there is.  Yes, there is.  If

17   you ---

18   Q.   If you find those ---.

19   A.   --- give me a second, yes.

20   WITNESS REVIEWS FILE

21   A.   In my file I only have the one that is

22   dated the 16th.

23                    ATTORNEY KEATING:

24                    So to expedite this a little bit,

25   the question was, do you know why that was

140

1  done.  And I believe your answer is?

2  A.  No.  And the second page has basically no

3  information.  It says miscellaneous notes.

4  It's blank.  Note conviction, blank, because

5  none of that information was applicable.  And

6  the Board Secretary's signature.

7  BY ATTORNEY TOBIN:

8  Q.  And then that was the second page for the

9  4/16/09?

10  A.  Yes.

11  Q.  And then for the 4/17/09, do you have a

12  second page in your file for that one?

13  A.  I don't have that one in my file.  And I

14  paged through everything to see if it's thrown

15  in there somewhere.  But, yeah, I do not have a

16  copy of that one in here.  And basically if

17  you're looking at it, it has the same

18  recalculated max on both of them.  So, really,

19  out of a cursory review, I don't see any

20  difference.  I can't answer why the second one

21  was issued or where it came from because it

22  isn't in my file.

23  Q.  Okay.  And then if you'll look at Exhibit

24  I, which is the one I most recently gave you,

25  which is at the bottom dated 7/29/09.

141

1    A.   Okay.

2    Q.   Can you explain how the ---?  If you could

3    walk me through how the recomputed max date of

4    7/14/09 was done on Exhibit I.

5              ATTORNEY KEATING:

6              I'm objecting to that.  He has

7    spent hours describing exactly how that was

8    done time and time again.  Asked and answered.

9    Is there a specific question about the

10   calculation that we have that you want him to

11   answer again?  What is it about the

12   recalculation has he not explained during his

13   deposition so far?

14   BY ATTORNEY TOBIN:

15   Q.   On Exhibit I there's a back-time dates

16   section that lists 9/26/01 to 2/20/02.  And the

17   time period is 147 days.  And then 2/20/04 to

18   4/14/09 time period, 1,880 days.  What

19   triggered that to be included as a back-time

20   date, the second one, the 1,880 days?

21   A.   Do you want me to go through it?

22             ATTORNEY ROBINSON:

23             Do you understand the question?

24   A.   Yeah.

25             ATTORNEY ROBINSON:

142

1            Okay.

2    A.   On this recalculation dated 7/29/2009 we

3    credited the inmate/parolee, Kevin Chappelle

4    Jessup, with back-time credit from 9/26/2001,

5    the date that he was originally arrested by the

6    State, up until 2/20 of 2002, when the State

7    withdraw their charges and the Feds stepped in

8    and picked up the case.  We took the 24-month

9    sentence as being served from 2/20/2002 to 2/20

10   of 2004, the last resentencing.  That's the

11   only period of time we didn't give Mr.

12   Chappelle Jessup credit towards his back time,

13   that two-year period.

14       From 2/20 of 2004 through the date that we

15   issued this Recommitment Order ---.  We're

16   saying not the date that --- the date we're

17   saying it became available to us, 4/14/2009,

18   because he was released from his federal

19   sentence on the period we gave him credit

20   towards his offense.  That's what that

21   information is.

22   BY ATTORNEY TOBIN:

23   Q.   Okay.  Thank you.  Do you have access

24   through DOCNET or any other means to an

25   inmate's moves report that the DOC generates?

143

1  A.   Yes.

2  Q.   Is it through DOCNET?

3  A.   Correct.

4  Q.   Do you know why the decision to credit the

5  two years --- to not credit the two years of

6  the federal sentence from 2/20/02 to 2/20/04

7  was made when the federal Judge says that the

8  federal sentence needed to be starting on July

9  17th of '07?

10          ATTORNEY ROBINSON:

11          I'm going to object.  He's been

12  asked several times how he calculated the

13  sentence.  He's explained that.  And the

14  sentence was calculated in the manner that we

15  believe it to be correct under the Parole Act

16  and applicable case law.  He has testified he

17  did not calculate the sentence himself.

18          ATTORNEY TOBIN:

19          I just was asking why --- if he

20  knew why, rather.

21          ATTORNEY KEATING:

22          I'm going to object because

23  that's not what the federal Judge said.  The

24  Order from the federal Judge was unclear as to

25  what that date meant, and he testified about

144

1    that.

2                    ATTORNEY TOBIN:

3                    Okay.  I'll withdraw the

4    question.  That's fine.

5    A.   And really, you don't have to.

6                    ATTORNEY ROBINSON:

7                    There's no question.

8    BY ATTORNEY TOBIN:

9    Q.   Is there any limit that's imposed by the

10   Parole Board on the DOC staff contacting you to

11   ask you questions --- or ask your staff

12   questions?

13   A.   Not that I'm aware of.

14                   ATTORNEY TOBIN:

15                   I don't have any further

16   questions for you.

17   RE-EXAMINATION

18   BY ATTORNEY KEATING:

19   Q.   Mr. Janis, I believe that there's an

20   indication that on July 29, 2009 there was a

21   modified recomputed max date, and that was at

22   2:43 p.m.  And that max date was July 14, 2009;

23   correct?

24   A.   Correct.

25   Q.   Everything you've seen today, would you

145

1   agree with me that that calculation of July 14,

2   2009 was the correct max date for Mr. Kevin

3   Jessup/Chappelle?

4   A.   Yes, it was.

5   Q.   On April 17th, 2009, Mr. Chappelle wrote

6   to the Superintendent complaining about his max

7   date.   Mr. Chappelle had not maxed out as of

8   April 17, 2009, had he?

9   A.   No.

10                  ATTORNEY TOBIN:

11                  Object as to form.   You're

12   leading him.

13                  ATTORNEY KEATING:

14                  Okay.

15   BY ATTORNEY KEATING:

16   Q.   Assuming for the sake of discussion that

17   Mr. Chappelle wrote a letter to a staff member

18   on April 22nd, 2009 about being held past his

19   max date.   According to the records and the

20   testimony you gave today, had Mr. Chappelle

21   maxed out as of April 22nd, 2009?

22   A.   Mr. Chappelle's recalculated max date at

23   that time was 7/14/2009.

24                  ATTORNEY KEATING:

25                  No further questions.

146

1        ATTORNEY TOBIN:

2        I have no further questions.

3            * * * * * * * *

4    DEPOSITION CONCLUDED AT 1:03 P.M.

5            * * * * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

147

1  COMMONWEALTH OF PENNSYLVANIA  )

2  COUNTY OF DAUPHIN              )

3                 CERTIFICATE

4      I, Kayla Bolze, a Notary Public in and

5  for the Commonwealth of Pennsylvania, do hereby

6  certify:

7      That the foregoing proceedings,

8  deposition of John Janis, was reported by me on

9  08/08/2012 and that I (John Janis) read this

10  transcript and that I attest that this

11  transcript is a true and accurate record of the

12  proceeding.

13      That the witness was first duly sworn

14  to testify to the truth, the whole truth, and

15  nothing but the truth and that the foregoing

16  deposition was taken at the time and place

17  stated herein.

18      I further certify that I am not a

19  relative, employee or attorney of any of the

20  parties, nor a relative or employee of counsel,

21  and that I am in no way interested directly or

22  indirectly in this action.

23

                                    _____
24                                   Court Reporter

   COMMONWEALTH OF PENNSYLVANIA
         NOTARIAL SEAL
25   KAYLA BOLZE, Notary Public
     Harrisburg, Dauphin County, PA
   My Commission Expires March 19, 2016



# COMMONWEALTH OF PENNSYLVANIA
## DC16E - SENTENCE STATUS SUMMARY   DEPARTMENT OF CORRECTIONS

Name: Kevin  Jessup                    Inmate #: CX8799            Closed Version 6  Dated 7/30/2009 2:36:10 PM

## 1.  REFERENCES AND IDENTIFICATION

| DOC #<br>CX8799 | Commitment Name<br>KEVIN  JESSUP | PBPP #<br>496AS | SID #<br>21714127 | FBI #<br>511135TA5 | Phila Photo #<br>750487 |
|---|---|---|---|---|---|
| DOB<br>04/03/1975 | Place of Birth<br>PHILADELPHIA   PA USA | | | Race<br>B | Sex<br>M |

## 2.  SENTENCE SUMMARY

| Sent Date | County/State/Federal | Indictments | Sent Type | Minimum | | | Maximum | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Y | M | D | Y | M | D |
| 01/25/1996 | Philadelphia | CP0033/9503 | | 5 | | | 10 | | |
| **Plea:** | Found Guilty | **OTN:** M6413794 | **Judge:** DEFINO,ALBERT | | | | | | |
| **Offense:** | **CC3701 - ROBBERY (GENERAL)** | | | | | | | | |
| 01/25/1996 | Philadelphia | CP0033/9503 | CS | 1 | | | 2 | | |
| **Plea:** | Found Guilty | **OTN:** M6413794 | **Judge:** DEFINO,ALBERT | | | | | | |
| **Offense:** | **CC6108 - CARRY FIREARM IN PUBLIC-PHILADELPHIA** | | | | | | | | |

| Reception Date | 04/15/2009 | | Reentered from DOC # | |
|---|---|---|---|---|
| Controlling Minimum Date | 01/26/2001 | | New Maximum - PV | 07/14/2009 |
| Controlling Maximum Date | 01/26/2007 | | True Minimum Expiry Date | |
| RRRI Minimum Expiry Date | | | | |

### Summary or Remarks on Sentence

| *Remarks* | Version 6 created to show modified TCV calculation per PBPP39.<br>VERSION 5 CREATED TO SHOW TCV STATUS ACCORDING TO PBPP<br>VERSION 4 CREATED TO SHOW PVP STATUS<br>Version 3 created due to board action dated 6/25/2007 to remove TCV status and reflect inmate is now serving as a PVP.  Inmate will return to the custody of the U.S. Marshals prior to serving PBPP backtime.<br>Version 2 created due to inmate being recommited as a Technical Convicted Parole Violator (TCV).   Sentence recomputed in accordance with PBPP Form 39 dated 12/02/2003. |
|---|---|

## 3.  SENTENCE STRUCTURE

| Commitment Credit | |
|---|---|
| Computation 5 | CP0033/9503 : 01/26/1995 to 01/25/1996 |

| *Remarks* | |
|---|---|



EXHIBIT
4

Name: Kevin  Jessup                    Inmate #: CX8799        Closed Version No:6  Dated 7/30/2009 2:36:10 PM

## Bail/Escape/Interruption Time Data

| None |
|------|

| Item | Computation 5 | | | |
|------|---------------|---|---|---|
| Indictments Included | CP0033/9503 CP0033/9503 | | | |
| Eff Date | 01/26/1995 | | | |
| Expiration of Minimum | 01/26/2001 | | | |
| Expiration of Maximum | 01/26/2007 | | | |
| Custody for Return - PV | 04/14/2009 | | | |
| Delinquent Time | | | | |
| Backtime Credit | 2027D | | | |
| Backtime Owed | 91D | | | |
| New Maximum - PV | 07/14/2009 | | | |
| Sentence Computation Date | 07/30/2009 | | | |
| Basis for Computation | TCV | | | |
| Total Sentence | 6Y - 12Y | | | |
| Status | Active | | | |

Name: Kevin  Jessup                         Inmate #: CX8799      Closed Version No:6  Dated 7/30/2009 2:36:10 PM

## 4.   NON-INCARCERATED OFFENSES

| Sent Date | County/State/Federal | Indictments |
|-----------|---------------------|-------------|
| 01/25/1996 | Philadelphia | CP0033/9503 |
| **Description:** | VUFA(6106),PIC,T/T,REAP,C/CONSP.-GUILTY W/O FURTHER PENALTY  POW-NOT GUILTY THEFT,RSP,S/A-MERGES | |

| *Comments* | |
|---|---|
| | |

## 5.   DETAINERS

| Active Detainers | | | | | |
|---|---|---|---|---|---|
| **Detainer#** | **Date** | **Agency** | **Agency Identification** | **OTN** | **Type** |
| | | | | | |
| *Charges* | None | | | | |

| Deleted Detainers (For those deleted since last DC16) | | | | | |
|---|---|---|---|---|---|
| **Detainer#** | **Date Deleted** | **Agency** | **Agency Identification** | **OTN** | **Type** |
| None | | | | | |
| *Remarks* | None | | | | |

## 6.   PRIOR DOC NUMBERS

| None | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

## 7.   ACTIONS: BOARD OF PARDONS

| Decision Date | File Number | Action | Comments |
|---|---|---|---|
| None | | | |

**Last Modified By: Kodack, Michelle L**

**Signed Off By: Kodack, Michelle L**                    **Institution:  Coal Township**

2007-04-23    09:51                                                      P 2

PBPP-10 Rev (05/1999)

## ORDER TO RELEASE ON PAROLE/REPAROLE

The Pennsylvania Board of Probation and Parole hereby grants parole/reparole to
the prisoner named and on the sentences described below.  It further ordered
that he/she be released on the date indicated below.  Subject to Board approval
of a satisfactory plan and to the Conditions Covering Parole/Reparole (PBPP-11)
and upon condition that he/she commits no misconducts or crimes, and that no
evidence of past crimes or mental illness, previously undiscovered, comes to
light.

------------------------------------------------------------------------

| Name of Prisoner | ParNo. | Inst.No. | Authorized Date of Release |
|---|---|---|---|
| KEVIN JESSUP | 496AS | CX8799 | * |

------------------------------------------------------------------------

Place of Confinement                          Date of Return
                                              (Reparole Cases Only)

STATE CORRECTIONAL INSTITUTION COAL TOWNSHIP

------------------------------------------------------------------------

| | County | Date of Sentence(s) | Tp Term(s)/Indictment Number(s) | OTN(s) | Offense(s)/Charge(s) |
|---|---|---|---|---|---|
| A | PHILAD | 01/25/1996 | CC CP 950300033 | M6413794 | ROBBERY |
| A | PHILAD | 01/25/1996 | CS CP 950300033 | M6413794 | VUFA |

------------------------------------------------------------------------

| | Judge(s) | Term(s) of Sentence(s) | | Expiration Dates Minimum | Maximum |
|---|---|---|---|---|---|
| A | ALBERT DEFINO | 06YR | 12YR | 01/26/2001 | 01/26/2007 |

------------------------------------------------------------------------

* PAROLED ON OR AFTER 01-26-2001 TO A COMMUNITY CORRECTIONS CENTER ONLY FOR A
MINIMUM OF 3 MONTHS. YOU SHALL ENTER INTO AND ACTIVELY PARTICIPATE IN THE
COMMUNITY CORRECTIONS PROGRAM UNTIL SUCCESSFULLY DISCHARGED BY THE PAROLE
SUPERVISION STAFF. YOU SHALL ABIDE BY ALL THE ESTABLISHED RULES AND
REGULATIONS OF THE COMMUNITY CORRECTIONS PROGRAM.  ANY VIOLATION OF THE
PROGRAM RULES OR REGULATIONS MAY CONSTITUTE A VIOLATION OF PAROLE AND RESULT
IN YOUR ARREST.   YOU MUST HAVE AN APPROVED PLAN PRIOR TO RELEASE FROM THE
CENTER.
BEFORE YOU CAN BE RELEASED, YOU SHALL PROVIDE PROOF OF PAYMENT OF AT LEAST
$30.00 OF MANDATORY COURT COSTS, IN ACCORDANCE WITH 18.P.S. {11.1101}.



EXHIBIT
B

------------------------------------------------------------------------

                       Signed this 29th day of November, 2000 at Harrisburg, PA

PENNSYLVANIA BOARD OF PROBATION AND PAROLE

*Kathleen Zwierzyna*

BOARD SECRETARY
SEAL
     SID 21714127                          Actual Date of Release  4/9/01

2007-04-23      09:52                                                                    P 3

Pennsylvania Board of Probation and Parole
PBPP-11 (Rev. 7/91)

## CONDITIONS GOVERNING PAROLE/REPAROLE

To:   JESSUP, Kevin                                          Parole No.      496-AS

1.   Report in person or in writing within 48 hours to the district office or sub-office listed below, and do not leave that district without prior written permission of the parole supervision staff.

   PHILADELPHIA NORTHEAST DIVISION
   COMMUNITY CORRECTIONS CENTER UNIT #2
   990 SPRING GARDEN STREET
   PHILADELPHIA, PA  19123
   PHONE:  215-560-6750

2.   Your approved residence is listed below and may not be changed without the written permission of the parole supervision staff.

   VOLUNTEERS OF AMERICA
   2601 NORTH BROAD STREET
   PHILADELPHIA, PA  19132
   PHONE:  215-226-6400

3.   Maintain regular contact with the parole supervision staff by:
   a.   reporting regularly as instructed and following any written instructions of the Board or the parole supervision staff.
   b.   notifying the parole supervision staff within 72 hours of:  (1) your arrest; or (2) your receipt of a summons or citation for an offense punishable by imprisonment upon conviction; and
   c.   notify the parole supervision staff within 72 hours of any change in status, including, but not limited to, employment, on-the-job training, and education.

4.   Comply with all municipal, county, state and Federal criminal laws, as well as the provisions of the Vehicle Code (75 Pa. C.S. § 101 et seq.), and the Liquor Code (47 P.S. § 1-101 et seq.).

5.   You shall:
   a.   abstain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device, and Cosmetic Act (35 P.S. § 780-101 et seq.) without a valid prescription;
   b.   refrain from owning or possessing any firearms or other weapons; and
   c.   refrain from any assaultive behavior.

6.   You shall pay fines, costs, and restitution imposed on you by the sentencing court.  You shall establish with appropriate county authorities within thirty (30) days of your release from prison a payment schedule for the fines, costs and restitution owed for those cases for which you are now on state parole.  Thereafter, you shall:
   a.   pay these obligations according to the established payment schedule or as ordered by the court;
   b.   provide proof of such payment to parole supervision staff; and
   c.   keep the parole supervision staff and the court informed of any changes in your financial ability to pay fines, costs and restitution.

7.   You shall comply with the special conditions listed on page 2 imposed by the Board and with special conditions imposed by the parole supervision staff.

Additionally, should problems arise, or questions occur concerning the conditions of your parole/reparole, consult with the parole supervision staff, and they will help you in the interpretation of the Conditions of Parole/Reparole.

If you are arrested on new criminal charges, the Board has the authority to lodge a detainer against you which will prevent your release from custody, pending disposition of those charges, even though you may have posted bail or been released on your own recognizance from those charges.

If you violate a condition of your parole/reparole and, after the appropriate hearing(s), the Board decides that you are in violation of a condition of your parole/reparole you may be recommitted to prison for such time as may be specified by the Board.

If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole.

If you think that any of your rights have been violated as a result of your parole supervision, you may submit a timely complaint in writing, first to the district director of the district office through which you are being supervised.  If your complaint is not resolved to your satisfaction, you may then submit your complaint in writing to the Pennsylvania Board of Probation and Parole, Director of Supervision, P. O. Box 1661, Harrisburg, Pennsylvania 17105-1661

In consideration of being granted the privilege of parole/reparole by the Pennsylvania Board of Probation and Parole, I hereby agree that:

   If I am ever charged with a parole violation arising out of my conduct while in a jurisdiction other than the Commonwealth of Pennsylvania, the revocation of my parole for that violation may be based solely on documentary evidence and I hereby waive any right to confront or cross-examine any person who prepared any such documentary evidence or who supplied information used in its preparation;

   I expressly waive extradition to the Commonwealth of Pennsylvania from any jurisdiction in or outside of the United States, where I may be found, and I shall not contest any effort by any jurisdiction to return me to the United States or to the Commonwealth of Pennsylvania; and

   I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole.  Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

336-A

COMMONWEALTH OF PENNSYLVANIA
BOARD OF PROBATION AND PAROLE

Special Conditions – Institutional

Parole No.    **496-AS**

TO:    **JESSUP, Kevin** _____

In addition to the conditions of parole already imposed, you are
subject to the following Special Conditions:

You are to report **directly** to the center from the institution: **Volunteers of America, 2601
North Broad Street, Philadelphia, PA 19132; Phone: (215) 226-6400.**

During this parole placement the resident will be subject to the following conditions:

**1. Must abide by all Department of Corrections rules and regulations, as well as conditions
of parole and special conditions imposed by the Pennsylvania Board of Probation and
Parole.**

If you believe the above Special Conditions are inappropriate,
you may object in writing to the Institutional Parole
Supervisor/District Office Supervisor, who imposed the Special
Conditions, within 10 days of imposition.

The Institutional Parole Supervisor/District Office Supervisor or
designee will forward all complaints to the Board Secretary for
submission to the Board.

If you violate any of the above Special Conditions, you will be
subject to arrest and revocation of parole as if you had violated any
of the regular conditions.

ACKNOWLEDGEMENT

I hereby acknowledge that I have read or have had read to me, the
foregoing Special Conditions; I fully understand them and I fully
understand the penalties involved should I in any manner violate them.

X _____
Parolee

Witness _____          __04/09/01__
                                           Date
Witness _____

_____, PA II
Parole Agent

(Note:  If signed by mark, there must
        be two witnesses to the execu-
        tion of this instrument.)

2007-04-23    09:52                                              P 5/17
PBPP-11 (rev 03/88)

To:  KEVIN JESSUP                 Parole No. 496AS        InstNo: CX8799

7.  SPECIAL CONDITIONS:

YOU MUST SUBMIT TO URINALYSIS TESTING, MANDATORY.
YOU SHALL NOT CONSUME OR POSSESS ALCOHOL UNDER ANY CONDITION OR FOR ANY REASON.
YOU SHALL NOT ENTER ESTABLISHMENTS THAT SELL OR DISPENSE ALCOHOL (EXCEPT AS
APPROVED BY THE SUPERVISION STAFF).
YOU SHALL SUPPORT YOUR DEPENDENTS, IF ANY.
YOU SHALL NOT CONTACT OR ASSOCIATE WITH THE CO-DEFENDANT(S) FOR ANY
REASON--MANDATORY.
YOU SHALL MAINTAIN EMPLOYMENT/VOCATIONAL TRAINING/EDUCATIONAL TRAINING AS
APPROVED BY PAROLE SUPERVISION STAFF.
YOU SHALL ENGAGE IN AN ACTIVE JOB SEARCH DURING ANY PERIOD OF UNEMPLOYMENT AND
PROVIDE VERIFICATION AS DIRECTED BY THE PAROLE SUPERVISION STAFF.
YOU SHALL CONSULT WITH THE COUNTY COLLECTION AGENT WITHIN 72 HOURS OF RELEASE
AND PROVIDE PROOF OF A PLAN FOR PAYMENT OF RESTITUTION AND/OR ANY
COURT-ORDERED FINANCIAL OBLIGATIONS.  YOU SHALL MAKE CONTINUING PAYMENTS ON
RESTITUTION AND/OR ANY OTHER COURT-ORDERED FINANCIAL OBLIGATIONS.
YOU SHALL NOT HAVE CONTACT WITH VICTIM(S), OR VICTIM'S FAMILIES, INCLUDING
CORRESPONDENCE, TELEPHONE CONTACT, OR COMMUNICATION THROUGH THIRD
PARTIES--MANDATORY.
YOU SHALL BE PLACED ON CURFEW RESTRICTIONS FOR 90 DAYS AFTER CCC AND DURING
PERIODS OF UNEMPLOYMENT.
REMOVAL OR TERMINATION FROM THE COMMUNITY CORRECTION CENTER FOR ANY REASON
OTHER THAN SUCCESSFUL COMPLETION IS A VIOLATION OF YOUR PAROLE.
YOU SHALL PARTICIPATE IN ENHANCED SUPERVISION FOR A MINIMUM OF 6 MONTHS AFTER
CCC--MANDATORY.
POSSESSION OF FIREARMS, AMMUNITION OR WEAPONS OF ANY KIND IS A DIRECT
VIOLATION OF PAROLE AND WILL RESULT IN IMMEDIATE ARREST--MANDATORY.
YOU SHALL PAY A MONTHLY SUPERVISION FEE OF $25.00 TO THE PAROLE BOARD WHEN
UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).
WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE DISTRICT
OFFICE OR SUB OFFICE WITHIN 24 HOURS (MONDAY THROUGH FRIDAY) BETWEEN THE HOURS
OF 8:30 A.M. - 5:00 P.M.

X _____          _____
   Signature of Parolee               Witness

        4/9/01
_____          _____
        Date                          Witness

                                  Note:  If signed by mark, there must be
                                  two witnesses to execution of the
                                  instrument.

PBPP-142

| | | | |
|---|---|---|---|
| Central Office Control No.: | **CO- 1085 -2001** | Offender's SSN: | 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 |
| District Office: | Philadelphia | Offender's DOB: | 4-3-1975 |
| Parole Agent: | Joseph Ryan | Offender's SID: | 21714127 |
| Office Telephone No.: | 215-560-6750 | Bill & Term: | CC CP 950300033 |
| | | Sentencing Judge: | Albert Defino |
| | | Original Charge: | Robbery |
| | | Max. Date: | 1-26-2007 |



COMMONWEALTH OF PENNSYLVANIA
BOARD OF PROBATION AND PAROLE

# ORDER TO DETAIN FOR FORTY-EIGHT HOURS

Under the Act of April 23, 1909, P.L. 141

Date:   9-26-2001

To the Superintendent, Keeper or Warden of any Borough or Township or any City or County Prison in the Commonwealth of Pennsylvania:

By virtue of the authority delegated to me by the Pennsylvania Board of Probation and Parole, it is requested that you detain for 48 hours for violation of parole the person of,  Kevin Jessup AKA Damon Donyel Chappelle

Parole No.     496AS     , until the prisoner can be disposed of by law.

PENNSYLVANIA BOARD OF PROBATION AND PAROLE
BY:

Robert W. Reiber, Director, Bureau of Central Services

| | |
|---|---|
| Phila. Photo No.: | 750487 |
| Location of Body: | 1st District 24th & Wolfe |
| Central Booking No.: | |
| Telephone No.: | 215-686-3013 |
| FAX No.: | 215-334-6661 |
| Institution No.: | CX8799 |
| SCI Released From: | Coal Township |



*496-AS*

NAME: ~~Kevin~~ Kevin Jessup
    A.K.A.
    Damon Chapelle

INSTITUTON: S.C.I. Coal Township
    Parole No.: **496AS**
    Institution No.:   **CX8799**

*REC'D PBPP*
*07 JUL 31  PM 12: 02*
*OFFICE OF CHIEF COUNSEL*

**ATTN:** Cynthia L. Daub;

    I am writing you in regards to the parole decision rendered
in my case recorded on June 25th, 2007. I wish to appeal this
decision for the administrative relief. The Board refered to the
decision of 3/14/2002 and said to recommit to a state correctional
institution as a technical parole violator when available to
serve (36) months for a total of (36) months backtime.

    If you can refer to the board decision as recorded on
December 2nd, 2003, the Board rendered the same action of 5/6/200
to recommit to the state correctional institution as a technical
and convicted parole violator to serve a total of (18) months
backtime.

    As you can see, this action took place twice for the same
offense. I already served this sentence and I've been in the state
custody since 10/22/2001.

    However, I am no longer in state custody and have yet to be
classified to a federal institution. Therefore, I am currently
in transit as of now. I am being housed in **LACKAWANNA COUNTY
PRISON.** Also, I wish to have private legal representation on this
matter. The attorney I'm obtaining is:

**BURTON A. ROSE**
**1731 Spring Garden Street**
**Philadelphia, PA 19130-3893**
**(215) 564-5550**
**(215) 567-6809 FAX**

*MMS*
*8/24/07*

                              Cordially,

                            *Damon Chappelle*
                            Damon Chappelle
                                *AKA*
                            *Kevin Jessup CX 8799*



EXHIBIT



**COMMONWEALTH OF PENNSYLVANIA**
**BOARD OF PROBATION AND PAROLE**

*Office of the Board Secretary*
*1101 South Front Street, Suite 5300*
*Harrisburg, PA  17104-2517*

DAMON CHAPPELLE, #56079-066
USP CANAAN
U.S. PENITENTIARY
P.O. BOX 300
WAYMART, PA  18472

     RE:    PA DOC Inmate No. CX-8799 / Parole No. 496-AS

Dear Mr. Chappelle (a/k/a Kevin Jessup):

     This is a response to your **administrative appeal** received July 31, 2007 (postmarked 07/27/2007), which objects to the Board decision mailed June 29, 2007.  Specifically, you allege that the Board has recommitted for the same offense twice.

     The record reflects that you were originally recommitted as a convicted parole violator by decision mailed May 12, 2003.  That decision was subsequently rescinded on March 2, 2007 based on the court's November 21, 2006 decision to vacate your original conviction and sentence.  Thus, the Board was authorized to now recommit you again as a convicted parole violator based on your subsequent conviction for the offenses indicated.

     Accordingly, the Board decision mailed June 29, 2007 is AFFIRMED.

               By the Board,

               Cynthia L. Daub
               Board Secretary

DATE MAILED:  **OCT 0 2 2007**

/cla

# BURTON A. ROSE
## ATTORNEY AT LAW

1731 SPRING GARDEN STREET
PHILADELPHIA, PA 19130-3893
(215) 564-5550  FAX (215) 567-6809
EMAIL:barose@baroselaw.com

December 3, 2008

Catherine C. McVey, Chairman
Pennsylvania Board of Probation and Parole
1101 S. Front Street, Suite 5100
Harrisburg, PA 17104-2517

> RE:   Damon Chappelle, a.k.a. Kevin Jessup
>       Parole No. 496-AS-DOC- CX-8799

Dear Ms. McVey:

Enclosed herewith please find a true and correct copy of an Order dated November 24, 2008 from United States District Judge Timothy J. Savage in Criminal Action No. 02-32-01 which has modified the sentence of the District Court of July 18, 2007 to make the above named defendant's term of imprisonment 24 months effective as of July 18, 2007.

Kindly advise if anything further is required. Thank you for your attention to these matters.

Very truly yours,

BURTON A. ROSE
Attorney for Damon Chappelle

BAR/cab
Enclosure
cc: Honorable Timothy J. Savage
    Michael L. Green, Board Member
    Mark S. Miller, Esquire, AUSA
    Damon Chappelle

CHAIRMAN'S OFFICE
08 DEC 29  AM 7: 52
PA. BOARD OF PROBATION
& PAROLE

REC'D PBPP
09 JAN -8  AM 8: 39
OFFICE OF CHIEF COUNSEL

DAMON CHAPPELLE
(AKA)
KEVIN JESSUP  CX 8799
PAROLE No# 496-45

MR. GREEN:

ON NOV. 24, 2008 IN THE U.S. DISTRICT COURT, I HAD MY FEDERAL SENTENCE MODIFIED, REDUCED AND RESTRUCTURED. I WAS RESENTENCED ON THE SAME JUNE 4, 2002 FEDERAL CONVICTION, HOWEVER I WAS RESENTENCED TO ONLY RECIEVE CREDIT ON THE FEDERAL CONVICTION THE DAY I CAME INTO FEDERAL CUSTODY JULY 18, 2007. I HAVE BEEN IN D.O.C. STATE CUSTODY FROM SEPT 26, 2001 THRU JULY 18, 2007 A TOTAL OF 5 YEARS 10 MONTHS I'VE SERVED ON PAROLE VIOLATIONS. I WAS INITIALLY ARRESTED FOR THE ABOVE NUMBERED OFFENSE ON JAN. 26, 1995 AND WAS PAROLED ON APR. 9, 2001 A TOTAL OF 6 YEARS 2 MONTHS. THEREFORE I SHOULD HAVE EXPIRED THE MAXIUM SENTENCE OF 12 YEARS AND THERE SHOULD NOT BE A STATE DETAINER LODGED. ENCLOSED ARE COURT DOCUMENTS VERIFYING THE CONSECUTIVE SENTENCE, ALSO ENCLOSED IS A LETTER FROM MY FEDERAL DISTRICT ATTORNEY EXPLAINING MY SITUATION.

K. JESSUP
(AKA)
D. CHAPPELLE 56079-066
C.I. Ray Book
P.O. BOX 9008
Ray Brook, New York

THANK YOU FOR YOUR CONSIDERATION IN THIS MATTER.

DAMON CHAPPELLE
(AKA)
KEVIN JESSUP CX-8



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| DAMON CHAPPELLE | : |
| a/k/a Kevin Jessup | : |

CRIMINAL NO.  02-32-01

CIVIL ACTION NO. 04-3906

**FILED**

NOV 2 5 2008

MICHAEL L. ..... , Clerl
By_____Dep. Cler

### ORDER

**AND NOW**, this 24th day of November, 2008, upon consideration of the Motion

Requesting the Modification of Term of Imprisonment Pursuant to 18 U.S.C. 3582(c)(2)

and §3553(a) (Document No. 82) and the Motion for Clarification of Sentence (Document

No. 77), the government's responses and after a hearing, it is **ORDERED** that the motions

are **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's term of imprisonment is reduced

to 24 months, effective as of July 18, 2007, and all other terms and conditions of the

Judgment and Commitment Order shall remain the same.

_____
TIMOTHY U. SAVAGE, J.

xc: MAILED
D. CHAPPELLE

cc: Mark Miller, AUSA
Burton Rose, Esq.
(2) US Marshal
Probation



**pennsylvania**
BOARD OF PROBATION AND PAROLE

February 23, 2009

DAMON CHAPPELLE, 56079-066
A.K.A. KEVIN JESSUP
FCI RAY BROOK
P.O. BOX 9008
RAY BROOK, NEW YORK 12977

    RE:    Pa. DOC No. CX-8799/Parole No. 496-AS

Dear Mr. Chappelle:

    This response acknowledges that the Pennsylvania Board of Probation and Parole received correspondence from you on December 29, 2008. You object to the Board decision recorded June 25, 2007 (mailed 06/29/07) concerning your recommitment to a state correctional institution to serve your back time; and the detainer the Board has lodged against you related to the aforementioned recommitment.

    Board regulations state that second or subsequent requests for administrative relief will not be received, and they will not be accepted for purposes of administrative review. *See* 37 Pa. Code § 73.1. The Board previously received a petition for review/administrative appeal from you on July 31, 2007 (postmarked 07/27/07) that was responded to by the Board on October 2, 2007. This correspondence constitutes a second and subsequent appeal of the June 25, 2007 (mailed 06/29/07) decision, and is not accepted.

    Finally, please be advised that the Board has received a copy of the United States District Court for the Eastern District of Pennsylvania order dated November 25, 2008 concerning the effective date of your imprisonment on the federal charges at criminal action number 02-31-01. The Board will take no further action on your correspondence.

                                        Respectfully,

                                        John J. Talaber
                                        Assistant Counsel

Pennsylvania Board of Probation and Parole | Office of General Counsel | Office of Chief Counsel
1101 South Front Street – Suite 5100 | Harrisburg, PA 17104-2517
PHONE: 717.787.8126 | FAX: 717.705.1774 | www.pbpp.state.pa.us

# BURTON A. ROSE
## ATTORNEY AT LAW

REC'D :

April 22, 2009

09 APR 29 PM 4: 12

OFFICE OF CHIE. COUNSEL

1731 SPRING GARDEN STREET
PHILADELPHIA, PA 19130-3893
(215) 564-5550 FAX (215) 567-6809
EMAIL:barose@baroselaw.com

Superintendent David Varano
SCI Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020

RE:   Damon Chappelle
      CX-8799

Dear Superintendent Varano:

Please be advised that I am the attorney for the above named inmate.

Enclosed herewith you will find a true and correct copy of an Order of the United States District Court for the Eastern District of Pennsylvania, Judge Timothy J. Savage, dated November 24, 2008, which has modified the sentence of this inmate of July 18, 2007 for Criminal Action No. 02-32-01. The modification makes Mr. Chappelle's term of imprisonment 24 months effective July 18, 2007.

Mr. Chappelle informs me that he had been advised that his state parole eligibility date is now June 12, 2012. I respectfully believe that this date will be a legal error since, as a result of the revised federal sentence, Mr. Chappelle would appear to have already served his maximum state sentence as of January 26, 2007.

Therefore I would greatly appreciate it if the records of Mr. Chappelle's previous state confinement could be reviewed with a determination that he is eligible for release from custody at this time.

Thank you for your attention to this matter.

Very truly yours,

BURTON A. ROSE

BAR/cab
Enclosure
cc: Catherine C. McVey, Chair, PA Board of Probation and Parole (w/encl)
    Damon Chappelle (w/encl)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 02-32-01 |
| | : | |
| v. | : | CIVIL ACTION NO. 04-3906 |
| | : | |
| DAMON CHAPPELLE | : | |
| a/k/a Kevin Jessup | : | |

### ORDER

**AND NOW,** this 24th day of November, 2008, upon consideration of the Motion

Requesting the Modification of Term of Imprisonment Pursuant to 18 U.S.C. 3582(c)(2)

and §3553(a) (Document No. 82) and the Motion for Clarification of Sentence (Document

No. 77), the government's responses and after a hearing, it is **ORDERED** that the motions

are **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's term of imprisonment is reduced

to 24 months, effective as of July 18, 2007, and all other terms and conditions of the

Judgment and Commitment Order shall remain the same.

_____
TIMOTHY J. SAVAGE, J.

A TRUE COPY/CERTIFIED TO FROM THE RECORD
DATED : November 25, 2008
ATTEST : Harry O. Grace
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP

PAROLE NO: 496AS

INSTITUTION: SCI - COAL TOWNSHIP

INSTITUTION NO: CX8799

AS RECORDED ON JULY 29, 2009 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

MODIFY BOARD ACTION OF 4/16/2009 BY DELETING THE REVIEW PORTION AND BY CHANGING THE PAROLE VIOLATION MAX DATE TO READ:

-- PAROLE VIOLATION MAX DATE: 7/14/2009.

REMAINDER OF THE BOARD ACTION REMAINS THE SAME.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.          DATE MAILED:

YKB 07/29/2009

PAROLE VIOLATION MAX DATE: 07/14/2009

FILE COPY

Cynthia L. Daub

Cynthia L. Daub
Board Secretary
Notice of Board Decision
PBPP 15(08/02) 1 of 1

PBPP-39
Revised (02-04)

**MODIFIED**

# ORDER TO RECOMMIT
# COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE

**Name:** KEVIN JESSUP     **Inst. No:** CX8799     **Parole No:** 496AS

**District:** CO - Central Office     **SID:** 21714127     **Date Paroled:** 04/09/2001

**Inst Parole From:** SCICT - SCI - Coal Township

**Recommit To:** SCICT - SCI - Coal Township     **Status:** ● TPV ● CPV

The above-named individual who was conditionally released on parole by the Pennsylvania Board of Probation and Parole has been found by the Board to have violated the conditions of parole. Therefore, the Board, by virtue of the authority conferred on it by law, orders said individual recommitted for further imprisonment for the remainder of the unexpired maximum term, or until otherwise released or discharged according to law.

## County, Bill & Term and OTN

| County Name | OTN | Indictment Number | Minimum Date |
|---|---|---|---|
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |

## Parole Violation Date Calculation

| | |
|---|---|
| **Original Maximum Date:** | 01/26/2007 |
| **- Parole/Reparole/Delinquency/Board Warrant Date:** | 04/09/2001 |
| **+Prior Parole Liberty Forfeited:** | 0D |
| **- Confinement Time:** | 0D |
| **- Backtime Credit:** | 2027D |
| **= Backtime Owed:** | 91D |
| **+ Custody for Return:** | 04/14/2009 |
| **= Recomputed Maximum Date:** | 07/14/2009 |
| **+ Escape Time:** | 0D |
| **= New Maximum Date:** | 07/14/2009 |

**Backtime Dates:**

| From | To | Time Period |
|---|---|---|
| 09/26/2001 | 02/20/2002 | 147D |
| 02/20/2004 | 04/14/2009 | 1880D |

**Time Lost Due to:**

| | |
|---|---|
| **Delinquency:** | 0D |
| **Service of Another Sentence:** | 0D |

## Conviction(s) Resulting in Recommitment

| # | Sentence Date | Sentence County | Indictment | Period | Type | Place of Confinement |
|---|---|---|---|---|---|---|
| 2 | 11/24/2008 | FEDERA - FEDERAL COUNTY | 02CR00032-01 | 24 MONTHS | | FED - FEDERAL |

**Parole/Release/Max Date:** 04/14/2009     **Confined:** Y

**Comments:** ORIGINALLY SENTENCED ON 9/23/2002 TO 162 MONTHS. CONVICTION & SENTENCE VACATED ON 11/21/2006 AND RESENTENCED ON 11/21/2006 TO 95 MONTHS. RE-SENTENCED AGAIN ON 11/24/2008 TO 24 MONTHS

## Miscellaneous Notes

## Note Conviction

GIVEN under the hand of the Pennsylvania Board of Probation and Parole this  07/29/2009

By The Board

*Cynthia L. Daub*

Board Secretary

NOTICE OF BOARD DECISION
PBPP-15(6/96)

## COMMONWEALTH OF PENNSYLVANIA
### PENNA. BOARD OF PROBATION AND PAROLE

### DATE: 11/29/2000

CLIENT NAME: **KEVIN JESSUP**             PAROLE NO: **496AS**
INSTITUTION: **SCI - COAL TOWNSHIP**      INSTITUTION NO: **CX8799**

AS RECORDED ON **11/29/2000** THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW AND REVIEW OF YOUR FILE, THE PENNSYLVANIA BOARD OF
PROBATION AND PAROLE HAS DETERMINED THAT THE FAIR ADMINISTRATION OF JUSTICE
MAY BE ACHIEVED THROUGH YOUR RELEASE ON PAROLE, AND SUBJECT TO YOUR COMPLIANCE
WITH ALL OF THE TERMS AND CONDITIONS OF PAROLE SUPERVISION.   YOU ARE THEREFORE:

PAROLED ON OR AFTER 01-26-2001 TO A COMMUNITY CORRECTIONS CENTER ONLY FOR A
MINIMUM OF 3 MONTHS. YOU SHALL ENTER INTO AND ACTIVELY PARTICIPATE IN THE
COMMUNITY CORRECTIONS PROGRAM UNTIL SUCCESSFULLY DISCHARGED BY THE PAROLE
SUPERVISION STAFF. YOU SHALL ABIDE BY ALL THE ESTABLISHED RULES AND
REGULATIONS OF THE COMMUNITY CORRECTIONS PROGRAM.   ANY VIOLATION OF THE
PROGRAM RULES OR REGULATIONS MAY CONSTITUTE A VIOLATION OF PAROLE AND RESULT
IN YOUR ARREST.   YOU MUST HAVE AN APPROVED PLAN PRIOR TO RELEASE FROM THE
CENTER.
BEFORE YOU CAN BE RELEASED, YOU SHALL PROVIDE PROOF OF PAYMENT OF AT LEAST
$30.00 OF MANDATORY COURT COSTS (IN ACCORDANCE WITH 18 P.S. 11.1101}.

YOU MUST SUBMIT TO URINALYSIS TESTING. MANDATORY.
YOU SHALL NOT CONSUME OR POSSESS ALCOHOL UNDER ANY CONDITION OR FOR ANY REASON.
YOU SHALL NOT ENTER ESTABLISHMENTS THAT SELL OR DISPENSE ALCOHOL (EXCEPT AS
APPROVED BY THE SUPERVISION STAFF).

(CONTINUE ON PAGE 2)

CC: DISTRICT ATTORNEY

*Region I*



INSTITUTION

KATHLEEN ZWIERZYNA
BOARD SECRETARY

NOTICE OF BOARD DECISION
PBPP-15(6/96)

# COMMONWEALTH OF PENNSYLVANIA
## PENNA. BOARD OF PROBATION AND PAROLE

### DATE: 11/29/2000

CLIENT NAME: **KEVIN JESSUP**

INSTITUTION: **SCI - COAL TOWNSHIP**

PAROLE NO: **496AS**

INSTITUTION NO: **CX8799**

AS RECORDED ON 11/29/2000 THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

(CONTINUED FROM PAGE 1)
YOU SHALL SUPPORT YOUR DEPENDENTS, IF ANY.
YOU SHALL NOT CONTACT OR ASSOCIATE WITH THE CO-DEFENDANT(S) FOR ANY
REASON--MANDATORY.
YOU SHALL MAINTAIN EMPLOYMENT/VOCATIONAL TRAINING/EDUCATIONAL TRAINING AS
APPROVED BY PAROLE SUPERVISION STAFF.
YOU SHALL ENGAGE IN AN ACTIVE JOB SEARCH DURING ANY PERIOD OF UNEMPLOYMENT AND
PROVIDE VERIFICATION AS DIRECTED BY THE PAROLE SUPERVISION STAFF.
YOU SHALL CONSULT WITH THE COUNTY COLLECTION AGENT WITHIN 72 HOURS OF RELEASE
AND PROVIDE PROOF OR A PLAN FOR PAYMENT OF RESTITUTION AND/OR ANY
COURT-ORDERED FINANCIAL OBLIGATIONS.  YOU SHALL MAKE CONTINUING PAYMENTS ON
RESTITUTION AND/OR ANY OTHER COURT-ORDERED FINANCIAL OBLIGATIONS.
YOU SHALL NOT HAVE CONTACT WITH VICTIM(S), OR VICTIM'S FAMILIES, INCLUDING
CORRESPONDENCE, TELEPHONE CONTACT, OR COMMUNICATION THROUGH THIRD
PARTIES--MANDATORY.
YOU SHALL BE PLACED ON CURFEW RESTRICTIONS FOR 90 DAYS AFTER CCC AND DURING
PERIODS OF UNEMPLOYMENT.
REMOVAL OR TERMINATION FROM THE COMMUNITY CORRECTION CENTER FOR ANY REASON
OTHER THAN SUCCESSFUL COMPLETION IS A VIOLATION OF YOUR PAROLE.
YOU SHALL PARTICIPATE IN ENHANCED SUPERVISION FOR A MINIMUM OF 6 MONTHS AFTER

(CONTINUE ON PAGE 3)

CC: DISTRICT ATTORNEY

*Kathleen Zwierzyna*

KATHLEEN ZWIERZYNA
BOARD SECRETARY

INSTITUTION

NOTICE OF BOARD DECISION
PBPP-15(6/96)

## COMMONWEALTH OF PENNSYLVANIA
## PENNA. BOARD OF PROBATION AND PAROLE

### DATE: 11/29/2000

CLIENT NAME: **KEVIN JESSUP**                    PAROLE NO: **496AS**
INSTITUTION: **SCI - COAL TOWNSHIP**             INSTITUTION NO: **CX8799**

AS RECORDED ON 11/29/2000 THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

(CONTINUED FROM PAGE 2)
CCC--MANDATORY.
POSSESSION OF FIREARMS, AMMUNITION OR WEAPONS OF ANY KIND IS A DIRECT
VIOLATION OF PAROLE AND WILL RESULT IN IMMEDIATE ARREST--MANDATORY.

YOU SHALL PAY A MONTHLY SUPERVISION FEE OF $25.00 TO THE PAROLE BOARD WHEN
UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE DISTRICT
OFFICE OR SUB OFFICE WITHIN 24 HOURS (MONDAY THROUGH FRIDAY) BETWEEN THE HOURS
OF 8:30 A.M. - 5:00 P.M.

MAX. 01-26-2007.
*SLR 11-29-2000*

CC: DISTRICT ATTORNEY

INSTITUTION

*Kathleen Zwierzyna*

KATHLEEN ZWIERZYNA
BOARD SECRETARY

NOTICE OF BOARD DECISION
PBPP-15(6/96)

COMMONWEALTH OF PENNSYLVANIA
PENNA. BOARD OF PROBATION AND PAROLE

TT/Coa

DATE: 03/14/2002

02 MAR 20 PM 12: 51

CLIENT NAME:  KEVIN JESSUP
INSTITUTION:  SCI - GRATERFORD

PAROLE NO:  496AS
INSTITUTION NO:  CX8799

AS RECORDED ON 03/14/2002 THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 10/24/2001 TO DETAIN PENDING DISPOSITION OF CRIMINAL
CHARGES; AND NOW -

RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A TECHNICAL PAROLE VIOLATOR TO
SERVE 18 MONTHS BACKTIME, WHEN AVAILABLE.

- 18 MONTHS FOR MULTIPLE TECHNICAL PAROLE VIOLATIONS.
- CONDITION #2, CHANGE OF RESIDENCE WITHOUT PERMISSION.
- CONDITION #7, (2 COUNTS).
- COUNT 1, FAILURE TO SUCCESSFULLY COMPLETE COMMUNITY PAROLE CENTER PROGRAM
AT VOLUNTEERS OF AMERICA.
- COUNT 2, POSSESSION OF CELL PHONE.
EVIDENCE RELIED ON: YOUR ADMISSION, DOCUMENTED PBPP FORMS.
REASONS:  EARLY FAILURE ON PAROLE.  DECLARED DELINQUENT BY THE BOARD.
VIOLATIONS ESTABLISHED.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM
REQUIREMENTS AND HAVE NO MISCONDUCTS.
YOU MUST PARTICIPATE IN DRUG AND ALCOHOL COUNSELING.

(CONTINUE ON PAGE 2)

CC: PUBLIC DEFENDER

ADVANCE COPY FOR D.O.C.
NOT FOR DISTRIBUTION TO INMATE

Rec Sup
INSTITUTION
SCI-G

Kathleen Zwierzyna
KATHLEEN ZWIERZYNA
BOARD SECRETARY

NOTICE OF BOARD DECISION
PBPP-15(6/96)

## COMMONWEALTH OF PENNSYLVANIA
### PENNA. BOARD OF PROBATION AND PAROLE

### DATE: 03/14/2002

CLIENT NAME:  **KEVIN JESSUP**                    PAROLE NO:  **496AS**
INSTITUTION:  **SCI - GRATERFORD**            INSTITUTION NO:  **CX8799**

AS RECORDED ON **03/14/2002** THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

(CONTINUED FROM PAGE 1)
   IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR
ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER.
THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR
THE ALLEGATIONS.  SEE 37 PA CODE SEC. 73.  YOU HAVE THE RIGHT TO AN
ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH
COURT.            DATE MAILED: MAR 19 2002

(H.R. 1/9/2002  -  MR 3/14/2002)



CC: PUBLIC DEFENDER

                INSTITUTION                          *Kathleen Zwierzyna*

                                                     KATHLEEN ZWIERZYNA
                                                     BOARD SECRETARY



## COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP          PAROLE NO:   496AS
INSTITUTION:   SCI - COAL TOWNSHIP        INSTITUTION NO:   CX8799

AS RECORDED ON MAY 06, 2003 THE BOARD OF PROBATION AND PAROLE RENDERED
THE FOLLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 3/14/2002 TO RECOMMIT TO A STATE CORRECTIONAL
INSTITUTION AS A TECHNICAL PAROLE VIOLATOR TO SERVE 18 MONTHS BACKTIME WHEN
AVAILABLE AND NOW;

RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A CONVICTED PAROLE VIOLATOR TO
SERVE 18 MONTHS CONCURRENTLY, FOR A TOTAL OF 18 MONTHS BACKTIME, WHEN
AVAILABLE.

- 18 MONTHS FOR THE OFFENSES OF POSSESSION WITH INTENT TO DISTRIBUTE
COCAINE BASE-CRACK, POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE-CRACK
WITHIN 1,000 FEET OF SCHOOL, FELON IN POSSESSION OF A FIREARM AND POSSESSION
OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME.
EVIDENCE RELIED ON: CERTIFIED COPY OF COURT RECORD PROVING CONVICTIONS.
REASON: CONVICTIONS IN A COURT OF RECORD ESTABLISHED.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM
REQUIREMENTS AND HAVE NO MISCONDUCTS.
YOU MUST PARTICIPATE IN DRUG AND ALCOHOL COUNSELING.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR
ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER.
THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR

(CONTINUE ON PAGE 2)

CC: PUBLIC DEFENDER

INSTITUTION
SCI CT

**ADVANCE COPY FOR D.O.C.**
NOT FOR DISTRIBUTION TO INMATE

PAROLE NO:  496AS

(CONTINUED FROM PAGE 1)
THE ALLEGATIONS.  SEE 37 PA CODE SEC. 73.  YOU HAVE THE RIGHT TO AN
ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH
COURT.          DATE MAILED:

{H.R. 4/28/2003  - MR 5/6/2003}         MAY 1 2 2003

CC: PUBLIC DEFENDER

INSTITUTION

Kathleen Zwierzyna
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP                                PAROLE NO:  496AS
INSTITUTION:  SCI - COAL TOWNSHIP                 INSTITUTION NO:  CX8799

AS RECORDED ON DECEMBER 02, 2003 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 05/06/2003 TO RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A TECHNICAL PAROLE VIOLATOR AND AS A CONVICTED PAROLE VIOLATOR TO SERVE A TOTAL OF 18 MONTHS BACKTIME.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM REQUIREMENTS AND HAVE NO MISCONDUCTS.
YOU MUST PARTICIPATE IN DRUG AND ALCOHOL COUNSELING.

LIST FOR REPAROLE-REVIEW ON THE NEXT AVAILABLE DOCKET.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS.  SEE 37 PA CODE SEC. 73.  YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.          DATE MAILED:
[JEM 12/02/2003]                          DEC 0 8 2003

PAROLE VIOLATION MAX DATE:  02/16/2008

CC: PUBLIC DEFENDER
CC: PUBLIC DEFENDER

ADVANCE COPY FOR D.O.C.
NOT FOR DISTRIBUTION TO INMATE

Rec Sup-Sci-ct
INSTITUTION

*CC Myer*

Charles Myers
Acting Board Secretary

Notice of Board Decision
PBPP 15(08/02) 1 of 1



# COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP                                          PAROLE NO:   496AS
INSTITUTION:   SCI - COAL TOWNSHIP                          INSTITUTION NO:   CX8799

AS RECORDED ON MARCH 05, 2004 THE BOARD OF PROBATION AND PAROLE RENDERED
THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING
CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS
AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE
EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST
INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE
INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED.
THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE
BOARD'S DECISION INCLUDE THE FOLLOWING:

THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.

YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR CCC FAILURE.

YOU WILL BE REVIEWED IN OR AFTER SEPTEMBER, 2004, OR EARLIER, IF RECOMMENDED
BY THE DEPARTMENT OF CORRECTIONS.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE
DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT
OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

(CONTINUE ON PAGE 2)
PAROLE VIOLATION MAX DATE:   02/16/2008

RECORDS OFFICE   04 MAR 10 PM 4:06   RECEIVED SCI COAL TOWNSHIP

INSTITUTION

PAROLE NO:  496AS

(CONTINUED FROM PAGE 1)

SLS  03/05/2004

PAROLE VIOLATION MAX DATE:   02/16/2008

INSTITUTION

*CC Myers*

Charles Myers
Acting Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP                                    PAROLE NO:   496AS
INSTITUTION:   SCI - COAL TOWNSHIP                    INSTITUTION NO:   CX8799

AS RECORDED ON SEPTEMBER 17, 2004 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

YOUR VERSION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.

YOUR PRIOR HISTORY OF SUPERVISION FAILURE(S).

YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOUR NEGATIVE INTEREST IN PAROLE.

YOU WILL BE REVIEWED IN OR AFTER SEPTEMBER, 2005.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE MAINTAINED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

(CONTINUE ON PAGE 2)
PAROLE VIOLATION MAX DATE:   02/16/2008

RECORDS OFFICE
04 SEP 24   PM 3: 58
SCI COAL TOWNSHIP
RECEIVED

INSTITUTION

PAROLE NO:  496AS

(CONTINUED FROM PAGE 1)

WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD AND COMPLETED THE
DEPARTMENT OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

SLS  09/17/2004

PAROLE VIOLATION MAX DATE:    02/16/2008

INSTITUTION

*Lawrence F. Murray*

Lawrence F. Murray
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP            PAROLE NO:   496AS
INSTITUTION:   SCI - COAL TOWNSHIP     INSTITUTION NO:   CX8799

AS RECORDED ON SEPTEMBER 23, 2005 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED.  THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.

YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR CCC FAILURE.

YOU WILL BE REVIEWED IN OR AFTER SEPTEMBER, 2006.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

SLS  09/23/2005

PAROLE VIOLATION MAX DATE:  02/16/2008

INSTITUTION            RECORDS OFFICE

05 OCT 24  PM 4: 18

SCI COAL TOWNSHIP
RECORDS

*Lawrence F. Murray*
Lawrence F. Murray
Board Secretary
Notice of Board Decision
PBPP 15(08/02) 1 of 1



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP
INSTITUTION:   SCI - COAL TOWNSHIP

PAROLE NO:   496AS
INSTITUTION NO:   CX8799

AS RECORDED ON NOVEMBER 09, 2006 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS JUSTIFY YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL NOT BE INJURED. THEREFORE, YOU ARE GRANTED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

THE EXISTENCE OF DETAINERS FILED AGAINST YOU.

REPAROLE TO FEDERAL DETAINER SENTENCE. APPROVED HOME TO BE AVAILABLE.

YOU SHALL ABIDE BY THE RULES AND REGULATIONS OF THE INSTITUTION--MANDATORY.

YOU SHALL PAY A MONTHLY SUPERVISION FEE AS DETERMINED BY PAROLE SUPERVISION STAFF TO THE PAROLE BOARD WHILE UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE DISTRICT OFFICE OR SUB OFFICE THE NEXT BUSINESS DAY (MONDAY THROUGH FRIDAY) BETWEEN THE WORKING HOURS OF 8:30 A.M. - 5:00 P.M. THE DECISION ANNOUNCED BY THIS BOARD ACTION (PBPP-15) WILL NOT TAKE AFFECT UNTIL YOU HAVE SIGNED THE CONDITIONS (PBPP-11), AND THE RELEASE ORDERS (PBPP-10) HAVE BEEN ISSUED.  YOU REMAIN

(CONTINUE ON PAGE 2)

PAROLE VIOLATION MAX DATE:   02/16/2008

CC: DISTRICT ATTORNEY

INSTITUTION



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
### 1101 S. Front Street
### Harrisburg, Pa. 17104 - 2519

## NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP
INSTITUTION:   SCI - COAL TOWNSHIP

PAROLE NO:   496AS
INSTITUTION NO:   CX8799

AS RECORDED ON NOVEMBER 09, 2006 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS JUSTIFY YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL NOT BE INJURED. THEREFORE, YOU ARE GRANTED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

THE EXISTENCE OF DETAINERS FILED AGAINST YOU.

REPAROLE TO FEDERAL DETAINER SENTENCE. APPROVED HOME TO BE AVAILABLE.

YOU SHALL ABIDE BY THE RULES AND REGULATIONS OF THE INSTITUTION--MANDATORY.

YOU SHALL PAY A MONTHLY SUPERVISION FEE AS DETERMINED BY PAROLE SUPERVISION STAFF TO THE PAROLE BOARD WHILE UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE DISTRICT OFFICE OR SUB OFFICE THE NEXT BUSINESS DAY (MONDAY THROUGH FRIDAY) BETWEEN THE WORKING HOURS OF 8:30 A.M. - 5:00 P.M. THE DECISION ANNOUNCED BY THIS BOARD ACTION (PBPP-15) WILL NOT TAKE AFFECT UNTIL YOU HAVE SIGNED THE CONDITIONS (PBPP-11), AND THE RELEASE ORDERS (PBPP-10) HAVE BEEN ISSUED.  YOU REMAIN

(CONTINUE ON PAGE 2)

PAROLE VIOLATION MAX DATE:   02/16/2008

CC: DISTRICT ATTORNEY

INSTITUTION

PAROLE NO:  496AS

(CONTINUED FROM PAGE 1)
UNDER THE JURISDICTION AND CONTROL OF THE DEPARTMENT OF CORRECTIONS UNTIL YOU
HAVE SIGNED THE PBPP-11, AND THE PBPP-10 HAS BEEN ISSUED.  THIS PBPP-15 DOES
NOT AUTHORIZE YOU TO CHANGE YOUR RESIDENCE FROM ANY COMMUNITY CORRECTIONS
CENTER OR GROUP HOME IN WHICH YOU MAY BE RESIDING WHEN YOU RECEIVE IT.

KLS  11/09/2006

PAROLE VIOLATION MAX DATE:   02/16/2008
 CC: DISTRICT ATTORNEY

INSTITUTION

*Cynthia L. Daub*

Cynthia L. Daub
Board Secretary
Notice of Board Decision
PBPP 15(08/02) 2 of 2



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP
INSTITUTION:   SCI - COAL TOWNSHIP

PAROLE NO:   496AS
INSTITUTION NO:   CX8799

AS RECORDED ON MARCH 02, 2007 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

RESCIND BOARD ACTION OF 5-6-2003, 12-2-2003, 3-5-2004, 9-17-2004, 9-23-2005 AND 11-9-2006; AND NOW:

REAFFIRM BOARD ACTION OF 3-14-2002 TO RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A TECHNICAL PAROLE VIOLATOR TO SERVE 18 MONTHS BACKTIME, WHEN AVAILABLE.

(U.S. DISTRICT COURT DOCKET #02-32-1)
WTH  03/02/2007

INSTITUTION

Cynthia L. Daub
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 1 of 1



# COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP        PAROLE NO:  496AS
INSTITUTION:   SCI - COAL TOWNSHIP      INSTITUTION NO:   CX8799

AS RECORDED ON MARCH 02, 2007 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

RESCIND BOARD ACTION OF 5-6-2003, 12-2-2003, 3-5-2004, 9-17-2004, 9-23-2005 AND 11-9-2006; AND NOW:

REAFFIRM BOARD ACTION OF 3-14-2002 TO RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A TECHNICAL PAROLE VIOLATOR TO SERVE 18 MONTHS BACKTIME, WHEN AVAILABLE.

(U.S. DISTRICT COURT DOCKET #02-32-1)
WTH  03/02/2007

INSTITUTION

Cynthia L. Daub
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 1 of 1



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP                                      PAROLE NO:  496AS
INSTITUTION:   SCI - COAL TOWNSHIP                      INSTITUTION NO:   CX8799

AS RECORDED ON JUNE 25, 2007 THE BOARD OF PROBATION AND PAROLE RENDERED
THE FOLLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 03/14/2002 TO RECOMMIT TO A STATE CORRECTIONAL
INSTITUTION AS A TECHNICAL PAROLE VIOLATOR TO SERVE 18 MONTHS BACKTIME, WHEN
AVAILABLE, AND NOW;

RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A CONVICTED PAROLE VIOLATOR
WHEN AVAILABLE TO SERVE 36 MONTHS CONCURRENTLY FOR A TOTAL OF 36 MONTHS
BACKTIME.
-- 36 MONTHS FOR THE OFFENSES OF POSSESSION WITH INTENT TO DISTRIBUTE CRACK
COCAINE; POSSESSION WITH INTENT TO DISTRIBUTE CRACK COCAINE WITHIN 1000 FEET
OF A SCHOOL AND FELON IN POSSESSION OF A FIREARM AND AMMUNITION.
EVIDENCE RELIED ON: CERTIFIED COPY OF COURT RECORD PROVING CONVICTION.
REASON: CONVICTION IN A COURT OF RECORD ESTABLISHED.  FIREARM USED IN ORIGINAL
OFFENSE AND AGAIN IN PRESENT CASE.  PRIOR FIREARMS CASES IN 1993.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM
REQUIREMENTS AND HAVE NO MISCONDUCTS.
YOU MUST PARTICIPATE IN DRUG AND ALCOHOL COUNSELING.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR
ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER.
THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR
THE ALLEGATIONS.  SEE 37 PA CODE SEC. 73.  YOU HAVE THE RIGHT TO AN
ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH

(CONTINUE ON PAGE 2)

Rec. Supr.  SCI-CT
INSTITUTION

ADVANCE COPY FOR D.O.C.
NOT FOR DISTRIBUTION TO INMATE

PAROLE NO: 496AS

(CONTINUED FROM PAGE 1)
   COURT.           DATE MAILED:
(H.R. 05/25/07)
CAF 06/25/2007                    JUN 2 9 2007

INSTITUTION

*Cynthia L. Daub*

Cynthia L. Daub
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

## NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP                                    PAROLE NO: 496AS

INSTITUTION: SCI - COAL TOWNSHIP                      INSTITUTION NO: CX8799

AS RECORDED ON APRIL 16, 2009 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 6/25/2007 TO RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A TECHNICAL AND CONVICTED PAROLE VIOLATOR TO SERVE 36 MONTHS BACKTIME.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM REQUIREMENTS AND HAVE NO MISCONDUCTS.
YOU MUST PARTICIPATE IN DRUG AND ALCOHOL COUNSELING.

REVIEW IN OR AFTER NOVEMBER 2011.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.          DATE MAILED:

YKB 04/16/2009                          APR 2 3 2009

PAROLE VIOLATION MAX DATE: 09/06/2014

ADVANCE COPY FOR D.O.C.
NOT FOR DISTRIBUTION TO INMATE

_Cynthia L. Daub_

INSTITUTION

Cynthia L. Daub

Board Secretary

Notice of Board Decision
PBPP 15(08/02) 1 of 1



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

## NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP

PAROLE NO: 496AS

INSTITUTION: SCI - COAL TOWNSHIP

INSTITUTION NO: CX8799

AS RECORDED ON APRIL 16, 2009 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 6/25/2007 TO RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A TECHNICAL AND CONVICTED PAROLE VIOLATOR TO SERVE 36 MONTHS BACKTIME.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM REQUIREMENTS AND HAVE NO MISCONDUCTS.
YOU MUST PARTICIPATE IN DRUG AND ALCOHOL COUNSELING.

REVIEW IN OR AFTER NOVEMBER 2011.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.          DATE MAILED:

YKB 04/16/2009

SCI - COAL TOWNSHIP
PA. BOARD OF PROBATION & PAROLE
09 APR 23 AM 8:58

PAROLE VIOLATION MAX DATE: 09/06/2014

INSTITUTIONAL PAROLE OFFICE

*Cynthia L. Daub*

Cynthia L. Daub

**Board Secretary**

Notice of Board Decision
PBPP 15(08/02) 1 of 1



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

NOTICE OF BOARD DECISION

NAME: KEVIN JESSUP                                    PAROLE NO: 496AS

INSTITUTION: SCI - COAL TOWNSHIP                      INSTITUTION NO: CX8799

AS RECORDED ON JULY 29, 2009 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

MODIFY BOARD ACTION OF 4/16/2009 BY DELETING THE REVIEW PORTION AND BY CHANGING THE PAROLE VIOLATION MAX DATE TO READ:

-- PAROLE VIOLATION MAX DATE: 7/14/2009.

REMAINDER OF THE BOARD ACTION REMAINS THE SAME.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER.  THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS.  SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.          DATE MAILED:

YKB 07/29/2009

JUL 29 2009

PAROLE VIOLATION MAX DATE: 07/14/2009



*Rec dep. Scs· CT*
INSTITUTION

*Cynthia L. Daub*

Cynthia L.Daub

Board Secretary

Notice of Board Decision

PBPP 15(08/02) 1 of 1

PBPP-39 (Rev. 4/97)



**COMMONWEALTH OF ᴵ ...SYLVANIA
BOARD OF PROBATION AND PAROLE**

Name:  KEVIN JESSUP

District: #1

Parole No.: 496-AS

Parole Date: 04-09-01

Inst. Paroled From:  SCI-COAL TOWNSHIP

Inst. No.: CX8799

S.I.D. No.: 21714127

County, Bill & Term & OTN:  PHILADELPHIA CO -- CP 950300033, 0033

The above-named individual who was conditionally released on parole by the Pennsylvania Board of Probation and Parole has been found by the Board to have violated the conditions of parole.  Therefore, the Board, by virtue of the authority conferred on it by law, orders said individual recommitted for further imprisonment for the remainder of the unexpired maximum term, or until otherwise released or discharged according to law.

Status:  X -TPV   X -CPV

Recommit to:  SCI-COAL TOWNSHIP

Conviction(s) resulting in recommitment:
09-23-02 -- U.S. DISTRICT CT -- EASTERN -- 02 CR 00032-01 -- CTS 1, 2, 3 -- 102 MOS CC -- CT4 -- 60 MOS CS - FCI

Maximum:                    01-26-07

- Par/Rep/Deliq/
  Bd. Warrant Date:         04-09-01

+Parole Time Added:

- Confinement Time:

- Backtime Credit:          0Y 4M 24D

Backtime Dates - From: 09-26-01 To: 02-20-02

  Backtime Owed:            5Y 4M 23D

+Custody for Return:        09-23-02

Time Lost Due To:
  Delinquency:
  Service of Another Sentence:

  Recomputed Max.:          02-16-08

Also Recommit On:

Original Minimum Date: 01-26-01

GIVEN under the hand of the Pennsylvania Board of Probation and Parole this

2ND day of DECEMBER, 2003



CAM/sad

BY THE BOARD

*CC Meyer*

ACTING BOARD SECRETARY

PBPP-3
Revised (02-04)

# ORDER TO RECOMMIT
# COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE

**Name:** KEVIN JESSUP     **Inst. No:** CX8799     **Parole No:** 496AS

**District:** CO - Central Office     **SID:** 21714127     **Date Paroled:** 04/09/2001

**Inst Parole From:** SCICT - SCI - Coal Township

**Recommit To:** SCICT - SCI - Coal Township     **Status:** ◉ TPV ◉ CPV

The above-named individual who was conditionally released on parole by the Pennsylvania Board of Probation and Parole has been found by the Board to have violated the conditions of parole. Therefore, the Board, by virtue of the authority conferred on it by law, orders said individual recommitted for further imprisonment for the remainder of the unexpired maximum term, or until otherwise released or discharged according to law.

## County, Bill & Term and OTN

| County Name | OTN | Indictment Number | Minimum Date |
|---|---|---|---|
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |

## Parole Violation Date Calculation

| | |
|---|---|
| **Original Maximum Date:** | 01/26/2007 |
| **- Parole/Reparole/Delinquency/Board Warrant Date:** | 04/09/2001 |
| **+Constructive Parole Time Added:** | 0D |
| **- Confinement Time:** | 0D |
| **- Backtime Credit:** | 147D |
| **= Backtime Owed:** | 1971D |
| **+ Custody for Return:** | 04/14/2009 |
| **= Recomputed Maximum Date:** | 09/06/2014 |
| **+ Escape Time:** | 0D |
| **= New Maximum Date:** | 09/06/2014 |

**Backtime Dates:**

| From | To | Time Period |
|---|---|---|
| 09/26/2001 | 02/20/2002 | 147D |

**Time Lost Due to:**

| | |
|---|---|
| **Delinquency:** | 0D |
| **Service of Another Sentence:** | 0D |

## Conviction(s) Resulting in Recommitment

| # | Sentence Date | Sentence County | Indictment | Period | Type | Place of Confinement |
|---|---|---|---|---|---|---|
| 2 | 11/24/2008 | FEDERA - FEDERAL COUNTY | 02CR00032-01 | 24 MONTHS | | FED - FEDERAL |

**Parole/Release/Max Date:** 04/14/2009     **Confined:** Y

**Comments:** ORIGINALLY SENTENCED ON 9/23/2002 TO 162 MONTHS. CONVICTION & SENTENCE VACATED ON 11/21/2006 AND RESENTENCED ON 11/21/2006 TO 95 MONTHS. RE-SENTENCED AGAIN ON 11/24/2008 TO 24 MONTHS

DEF000945



EXHIBIT
C



PBPP-39
Revised (02-04)

# ORDER TO RECOMMIT
# COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE

**Name:** KEVIN JESSUP     **Inst. No:** CX8799     **Parole No:** 496AS

**District:** CO - Central Office     **SID:** 21714127     **Date Paroled:** 04/09/2001

**Inst Parole From:** SCICT - SCI - Coal Township

**Recommit To:** SCICT - SCI - Coal Township     **Status:** ⦿ TPV   ⦿ CPV

The above-named individual who was conditionally released on parole by the Pennsylvania Board of Probation and Parole has been found by the Board to have violated the conditions of parole. Therefore, the Board, by virtue of the authority conferred on it by law, orders said individual recommitted for further imprisonment for the remainder of the unexpired maximum term, or until otherwise released or discharged according to law.

## County, Bill & Term and OTN

| County Name | OTN Number | Indictment Number | Minimum Date |
|---|---|---|---|
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |

## Parole Violation Date Calculation

| | |
|---|---|
| **Original Maximum Date:** | 01/26/2007 |
| **- Parole/Reparole/Delinquency/Board Warrant Date:** | 04/09/2001 |
| **+Constructive Parole Time Added:** | 0D |
| **- Confinement Time:** | 0D |
| **- Backtime Credit:** | 147D |
| **= Backtime Owed:** | 1971D |
| **+ Custody for Return:** | 04/14/2009 |
| **= Recomputed Maximum Date:** | 09/06/2014 |
| **+ Escape Time:** | 0D |
| **= New Maximum Date:** | 09/06/2014 |

**Backtime Dates:**

| From | To | Time Credited |
|---|---|---|
| 09/26/2001 | 02/20/2002 | 147D |

**Time Lost Due to:**

| | |
|---|---|
| **Delinquency:** | 0D |
| **Service of Another Sentence:** | 0D |

## Conviction(s) Resulting in Recommitment

| | Sentence Date | Sentence County | Indictment | Period | Type | Place of Confinement |
|---|---|---|---|---|---|---|
| 2 | 11/24/2008 | FEDERA - FEDERAL COUNTY | 02CR00032-01 | 24 MONTHS | | FED - FEDERAL |

**Parole/Release/Max Date:** 04/14/2009     **Confined:** Y

**Comments:** ORIGINALLY SENTENCED ON 9/23/2002 TO 162 MONTHS. CONVICTION & SENTENCE VACATED ON 11/21/2006 AND RESENTENCED ON 11/21/2006 TO 95 MONTHS. RE-SENTENCED AGAIN ON 11/24/2008 TO 24 MONTHS


EXHIBIT
4

PBPP-39
Revised (02-04)



**MODIFIED**

## ORDER TO RECOMMIT
## COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE

**Name:** KEVIN JESSUP     **Inst. No:** CX8799     **Parole No:** 496AS

**District:** CO - Central Office     **SID:** 21714127     **Date Paroled:** 04/09/2001

**Inst Parole From:** SCICT - SCI - Coal Township

**Recommit To:** SCICT - SCI - Coal Township     **Status:** ◉ TPV ◉ CPV

The above-named individual who was conditionally released on parole by the Pennsylvania Board of Probation and Parole has been found by the Board to have violated the conditions of parole. Therefore, the Board, by virtue of the authority conferred on it by law, orders said individual recommitted for further imprisonment for the remainder of the unexpired maximum term, or until otherwise released or discharged according to law.

### County, Bill & Term and OTN

| County Name | OTN | Indictment Number | Minimum Date |
|---|---|---|---|
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |
| PHILAD | M6413794 | CP 950300033 | 01/26/2001 |

### Parole Violation Date Calculation

| | |
|---|---|
| **Original Maximum Date:** | 01/26/2007 |
| **- Parole/Reparole/Delinquency/Board Warrant Date:** | 04/09/2001 |
| **+Prior Parole Liberty Forfeited:** | 0D |
| **- Confinement Time:** | 0D |
| **- Backtime Credit:** | 2027D |
| **= Backtime Owed:** | 91D |
| **+ Custody for Return:** | 04/14/2009 |
| **= Recomputed Maximum Date:** | 07/14/2009 |
| **+ Escape Time:** | 0D |
| **= New Maximum Date:** | 07/14/2009 |

**Backtime Dates:**

| From | To | Time Period |
|---|---|---|
| 09/26/2001 | 02/20/2002 | 147D |
| 02/20/2004 | 04/14/2009 | 1880D |

**Time Lost Due to:**

| | |
|---|---|
| **Delinquency:** | 0D |
| **Service of Another Sentence:** | 0D |

### Conviction(s) Resulting in Recommitment

| # | Sentence Date | Sentence County | Indictment | Period | Type | Place of Confinement |
|---|---|---|---|---|---|---|
| 2 | 11/24/2008 | FEDERA - FEDERAL COUNTY | 02CR00032-01 | 24 MONTHS | | FED - FEDERAL |

**Parole/Release/Max Date:** 04/14/2009     **Confined:** Y

**Comments:** ORIGINALLY SENTENCED ON 9/23/2002 TO 162 MONTHS. CONVICTION & SENTENCE VACATED ON 11/21/2006 AND RESENTENCED ON 11/21/2006 TO 95 MONTHS. RE-SENTENCED AGAIN ON 11/24/2008 TO 24 MONTHS



EXHIBIT