# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON CHAPPELLE** | : | |
| **Plaintiff,** | : | **Civil Action - Law** |
| | : | **No. 11-0304** |
| **v.** | : | |
| | : | **(Judge Conner)** |
| **DAVID VARANO, JOHN DUNN,** | : | |
| **DEBORAH HERBST, MICHELLE** | : | **Electronically Filed** |
| **KODACK and RENEE FOULDS** | : | |
| **Defendants,** | : | |

## DEFENDANTS' ANSWERS TO PLAINTIFF'S COUNTER STATEMENT OF FACTS

131.    Admitted in part.  Denied in part. It is admitted the plaintiff was sentenced to six to twelve years in1996 by Judge Defino. It is denied that his maximum release was January 26, 2007. His maximum release of January 26, 1997 would only be in the event that he was not granted parole and did all of his time served without parole recalculation.

132.    Admitted in part. Denied in part. It is admitted that the plaintiff was incarcerated from January 26, 1995 to January 29, 1996. It is denied that this time was credited to his state sentence. To the extent to which any of his incarceration

time was credited to his state sentence depends on which administrative agency

you rely on, and therefore, this allegation is denied.

133.     Admitted in part. Denied in part. It is admitted that the moves report is

a DOC document that reflects the physical location of an inmate. The remainder of

this sentence is denied, as the moves report does not specifically state the sentence

status, parole status or other information. Furthermore, the citation to the record by

plaintiff does not support this allegation.

134.     Admitted in part. Denied in part. It is admitted that Kodack testified

that they use the moves report "pretty much for everything we do". However, in

context, it is clear that this just makes reference to when certain things are

scheduled by the inmate and where they are.

135.     Admitted in part. Denied in part. It is admitted that Kodack testified in

this respect. It is denied that they can only use it if they know how to access it

because Kodack further testified that it only came online around 2001, and it was

not available prior to that time.

136.     Admitted. By way of further answer, just because an individual is in

DOC custody does not mean they are under DOC's jurisdiction.

137.     Denied. Plaintiff was not arrested while on parole. Plaintiff had

absconded from parole prior to his arrest in September 2001.

138.     Denied. It is denied that the time that plaintiff spent in custody was applied to his original state sentence. It is true that in Kodack's opinion this may have been so; however, it is only Kodack's opinion that this should be applied to his original state sentence. By way of further response, Kodack does not know how to calculate back time or apply state or federal sentence time of a convicted parole violator and therefore, while Kodack's opinion relative to where plaintiff's time should be allotted, she testified that calculating back time is complicated and that calculating back time is left to the training of the parole board. (Kodack Deposition p. 96)

139.     Admitted in part. Denied in part. It is admitted that plaintiff was in DOC custody. It is denied that plaintiff was receiving credit on his state sentence at that time. Relative to the opinion of Kodack, it has been repeatedly testified by all witnesses that only Probation and Parole Board can determine where credit is given where credit is given for time served on state sentence for a convicted parole violator.

140.     Admitted in part.  Denied in part. It is admitted that DOC status sheet reflected plaintiff only had two state convictions. It is denied that his total maximum state sentence was twelve years.

141.     Denied. Plaintiff finished serving his twelve in state custody on July 14, 2009 not on July 18, 2007 as testified by Janis of the Board of Probation and Parole.

142.     Admitted in part. Denied in part. It is admitted that DOC did not receive a specific calculation from the Parole Board saying that plaintiff's federal sentence was to be served while in DOC custody. By way of further response, there is no requirement for the parole board to state this to the Department of Corrections. It is denied that none of plaintiff's time in DOC custody counted towards plaintiff's federal sentence. To the contrary, some of plaintiff's sentence done in the custody of Department of Corrections should have been credited to his federal sentence.

143.     Admitted in part.  Denied in part. It is admitted that the DOC does not keep track of federal sentences. It is denied that they only keep track of state sentences. The DOC does not keep track of state sentences, which recalculate back time owed for the purposes of the parole violator, only the Parole Board can do that. By way of further response, although the 162 month federal sentence did not directly impact plaintiff's state sentence, his subsequent conviction as a parole violator did impact where his time served was credited, either his state or federal sentence.

144.    Denied. This may have been Kodack's opinion, concerning plaintiff's total original state sentence, but as a convicted parole violator, plaintiff's federal sentence had an impact on the Parole Board's recalculating the max time left on his state sentence.

145.    Denied. It is denied that plaintiff finished his federal sentence on April 15, 2009. On April 15, 2009, plaintiff was returned to Coal Township; however, he still had time remaining to serve on his federal sentence.

146.    Admitted.

147.    Admitted.

148.    Admitted.

149.    Admitted.

150.    Admitted.

151.    Admitted. By way of further response, the final correct recalculation done by the Board of Probation and Parole was that plaintiff's maximum sentence was July 14, 2009.

152.    Admitted.

153.    Admitted. By way of further answer, whether or not plaintiff believes

that he was released solely due to a mandamus petition, it is sheer conjecture and there is no basis or evidence to support his belief.

154.     Admitted in part. Denied in part. It is admitted that DOC is responsible for making sure inmates have accurate records showing they should be serving their sentence at the institution and should be imprisoned there. It is denied that this applies to all inmates. It is not applied for inmates who are being returned as a parole violator.

155.     Admitted. It is admitted that Varano testified in this respect. By way of further response, even in if an inmate is in DOC custody, if he is a parole violator, he is not under the jurisdiction of the DOC.

156.     Admitted. By way of further response, when plaintiff was returned, he was under the jurisdiction of the Parole Board, and he was to be kept until such time the Parole Board could recalculate his back time owed.

157.     Admitted. By way of further response, if the institutional parole staff needs information concerning the back time where a parole violator's back time should be given credit for, it can only be done by the main records office at Probation and Parole. It cannot be done by the institutional parole officer or by anyone at the DOC.

158.     Admitted. By way of further response, the institutional parole officer staff cannot recalculate an inmate's back time. They must be done at the main office. Furthermore, neither the institutional parole officer nor anyone at the DOC can recalculate an inmate's remaining sentence time owed for a convicted parole officer.

159.     Admitted.

160.     Admitted. It is admitted that Janis testified in this respect. Furthermore, it is stated that Janis testified that plaintiff's maximum state sentence date was July 14, 2009.

161.     Admitted. It is admitted that Janis testified that a back time calculation cannot cause an inmate to serve more time than the inmate's original sentence called for. By way of further answer, the plaintiff did not serve more time than his original sentence called for as July 14, 2009. Based on the recalculation by the Probation and Parole, on July 29, 2009, plaintiff had been kept under the Probation and Parole's jurisdiction for 15 days past his maximum sentence and was released by DOC the following day.


"Facts pertaining to what Varano knew"

Defendants object to this portion of plaintiff's counterstatement of facts, titled "Facts pertaining to what Varano knew". Some of the testimony by Varano was opinion and some of the testimony by Varano was speculation. Therefore, it is misleading to say that all of the testimony by Varano was facts about what he knew.

162.     Admitted.

163.     Denied. Varano was not sure whether when plaintiff sent his first request slip that plaintiff was in a DOC cell or not and whether he had a counselor to assist him.

164.     Admitted.

165.     Admitted. By way of further response, at the time plaintiff filed his grievance, plaintiff was not past his max time, which was finally calculated to be July 14, 2009.

166.   Admitted. It is admitted that Varano understood what plaintiff's grievance was about.  Varano also testified that plaintiff was not under DOC's

jurisdiction when he was returned as a parole violator. He was being held in the

DOC under the Parole Board's jurisdiction and therefore, DOC could not release

plaintiff until authorized by the Parole Board.

167.     Admitted.

168.     Denied. Varano specifically testified that as a general rule he did not

meet with inmates who sent request slips. (Varano Deposition, p.51, lines 15-19).

169.     Denied. Varano specifically testified that he seldom if ever met face to

face with inmates, even if an inmate asserted that a staff member was negligent.

(Varano Deposition, p. 19, lines 1-23)

170.     Denied. Varano did not testify that if he were unable to meet with an

inmate, he would refer to a unit manager. Varano testified that he seldom met with

inmates at all and that many times; he referred it to a unit manager.

171.     Denied. Varano testified that "in some cases" he would get involved.

172.     Admitted in part. Denied in part. It is admitted that the superintendent

can request a meeting with a records supervisor and the inmate. It is denied that

this testimony by Kodack says that they would meet to discuss sentence structure

or credit issued.

173.     Admitted.

174.     Admitted.

175.     Admitted.

176.     Admitted. By way of further response, at all times, when plaintiff submitted grievances claiming that he was being held past his max, it occurred prior to his maximum state sentence date of July 14, 2009.

177.     Admitted in part. Denied in part. It is admitted that Varano spoke to plaintiff in main line after plaintiff was back at SCI-Coal Township. It is denied at that time that the plaintiff told Varano that he had been improperly returned to SCI-Coal Township. Varano did not testify to this.

178.     Admitted. By way of further response, plaintiff's maximum sentence date was finally calculated by the Board of Parole to be July 14, 2009 and therefore, at the time the request slip was sent in April 2009, he was not being held past his max. It is admitted that plaintiff testified to this respect.

179.     Admitted. It is admitted that plaintiff testified in this respect. By way of further response, at this time, plaintiff had not been held past his maximum sentence date of July 14, 2009.

180.     Admitted. By way of further response, at the time that the request slip was sent on April 20, 2009, plaintiff had not met his max date of July 14, 2009.

181.     Admitted in part. Denied in part. It is admitted that Varano testified that he did not recall whether he called to tell Kodack about the request. It is denied that in a lot of cases he does.

182.     Admitted. By way of further response, at the time the request was made, plaintiff had not been held past his maximum sentence date of July 14, 2009.

183.     Admitted. By way of further response, at the time Varano that completed the response section, plaintiff had not been held past his max date.

184.     Admitted.

185.     Admitted.

186.     Admitted. By way of further response, the request slip that was sent by plaintiff on April 22, 2009 was sent prior to plaintiff's maximum state sentence date of July 14, 2009, and therefore, his grievance had no merit.

187.     Admitted. This is what plaintiff stated in his grievance. By way of further response, none of the Department of Corrections staff could have helped him because this was a matter solely in the provence of the Board of Probation and Parole.

188.     Admitted. By way of further response, at the time that this occurred, plaintiff had not been held past his max date of July 14, 2009.

189.     Admitted. By way of further response, Varano and the Department of

Corrections all told plaintiff that only the Board of Probation and Parole could

correct any errors which may have occurred.

190.     Admitted in part. Denied in part. It is admitted that plaintiff's attorney

sent Varano a letter on April 22, 2009 asking plaintiff to be immediately released

from prison. It is denied that on April 22, 2009 plaintiff was being held past his

maximum state sentence, which was finally calculated to be July 14, 2009. As

such, plaintiff's attorney that plaintiff was being held illegally at that time was in

error.

191.     Admitted in part. Denied in part. It is admitted that plaintiff's attorney

wrote to the superintendent asking that the superintendent review plaintiff's

records. It is denied that a resentencing order from Judge Savage was attached to

the letter. The order attached to the letter was not a "resentencing" order; it was a

modification of the plaintiff's sentence. Plaintiff's original federal sentence was

not reduced to a total sentence of two years as plaintiff claims. The federal court

modified his sentence so the remainder of his sentence would be two years to be

served concurrent with his state sentence.

192.     Admitted.

193.     Admitted.

194.     Admitted. By way of further response, although plaintiff filed a grievance making these allegations, the allegations were not correct. Plaintiff's final maximum state sentence date as calculated by the Parole Board of July 14, 2009, therefore, plaintiff was not being held past his max on May 5, 2009.

195.     Admitted.

196.     Admitted. By way of further response, the DOC is only responsible for calculating an initial sentence by the sentencing court and not for the recalculation for an inmate who is a parole violator. Every single individual deposed during this litigation all confirm that only the Parole Board can recalculate this date, and only the Parole Board can release a parole violator from custody based on this.

197.     Admitted.

198.     Admitted.

199.     Admitted. By way of further response, at the time that this occurred, the plaintiff was not over detained.

200.     Admitted.


"Facts pertaining to what Kodack knew"

Defendants object to the characterization in plaintiff's counter statement of facts stating "facts pertaining to what Kodack knew". Much of the testimony given by Kodack was her opinion and not fact.

201.     Admitted.

202.     Admitted. By way of further response, plaintiff cannot review all sentences when it comes to determining when back time should be served and credited to a convicted parole violator.

203.     Admitted. By way of further response, Kodack is not trained in calculating back time of convicted parole violators, only the Parole Board can do that.

204.     Admitted.

205.     Admitted. By way of further response, although an inmate may be "committed" to SCI-Coal Township, they are under the DOC's jurisdiction.

206.     Admitted. By way of further response, the extent to which an inmate who is a parole violator has a max date cannot be determined until the Parole Board notifies the DOC of the new max date of the parole violator.

207.     Admitted. By way of further response, Kodack did not have the ability

to calculate the parole violators who were inmates.

208.    Admitted. By way of further response, at the time plaintiff filed the

grievance, he was not being held past his max date of July 14, 2009.

209.    Admitted. By way of further response, plaintiff has never provided

anything that the DOC should have done that they did not do relative to his claim

of over detention. By way of further response, from April 2009 when plaintiff was

returned to SCI-Coal Township to July 14, 2009, plaintiff was still legitimately

serving his state sentence.

210.    Admitted. By way of further response, any mistake the Parole Board

made was not determined until the Parole Board made it known on July 29, 2009,

the plaintiff's recalculated max date by them was July 14, 2009.

211.    Admitted. By way of further response, the accuracy of information

obtained in those files is based on information received by the Board of Parole.

212.    Admitted.

213.    Denied. Kodack's duties require her to review computation data of

sentence status concerning accuracy of sentence calculation for credit for time

spent in custody only goes for the original sentencing court. Everyone has testified

that when it comes to where back time should be credited on a convicted parole

violator, only the Board of Parole can do so.

214.     Admitted. By way of further response, the accuracy of such

information is dependent upon information given by the Parole Board.

215.     Admitted. By way of further response, once a parole violator is

returned to prison, he is held in pending status until such time the Parole Board can

tell the Department of Corrections as to when the new maximum sentence date is

for a convicted parole violator. None of the information received by Kodack by the

Parole Board showed that plaintiff was being held past his max date until

information was received on July 29, 2009 stating that the final calculation of the

plaintiff's max state sentence was July 14, 2009. Plaintiff was released the next

day.

216.     Admitted in part. Denied in part. It is admitted that Kodack's main

function is to sign off on records specialist work. It is not at all calculations and

releases are signed off on by Kodack. Only sentence calculations done by

Department of Corrections individuals are signed off by Kodack, not sentence

calculations by the Parole Board on parole violators.

217.     Admitted.

218.     Admitted. By way of further response, at the time the plaintiff grieved

and complained about being held past his maximum date, he was not being held

past his July 14, 2009 maximum date.

219.     Admitted. By way of further response, this is only on original

sentence by the sentencing court. Kodack does not calculate parole violator

inmates.

220.     Admitted.

221.     Admitted.

222.     Admitted in part. Denied in part. It is admitted that if an inmate claims

he is held past his max, Kodack usually would first look at the computer and see

what data was there. It is denied that this was the case in all inmates. This is only

relative to original sentences of inmates and not parole violators.

223.     Denied. Kodack did not testify that she would meet with an inmate

submitting a request for credit, if she needed more information. Kodack testified

that she could meet with such inmates. By way of further response, it was not

necessary to meet with plaintiff because all the information he had was already in

the grievance that he filed.

224.     Admitted. By way of further response, it was very common for

inmates to complain that the Parole Board miscalculated their maximum date and therefore, inmates in this situation were told that any problems pertaining thereto, would have to be addressed to the Parole Board.

225.     Admitted. By way of further response, the DOC employees do not have the training or the ability to recalculate max sentences of parole violators and therefore, it is only up to the Parole Board to change any errors in calculations they may have made.

226.     Admitted. By way of further response, the DOC records administrator and supervisors are only concerned with those sentences of original sentences of defendants and not those inmates who are under the jurisdiction of the Parole Board, such as a parole violator as was plaintiff.

227.     Admitted. By way of further response, this related to original sentences and not parole violators with recalculated max dates by Parole Board.

228.     Admitted.

229.     Admitted. By way of further response, there was no necessity to contact DOC central office records because any concerns by plaintiff had to do with the Parole Board.

230.     Admitted in part. Denied in part. It is admitted that plaintiff only had

two state convictions with a six to twelve year sentence. It is denied that Kodack approved Herbst's DC-16E form, which "computed plaintiff's new maximum release date to be September 6, 2014." The form does not compute plaintiff's new maximum release date. The computation of plaintiff's new maximum release date was done by the Parole Board, which had exclusive jurisdiction over the plaintiff.

231.     Admitted. By way of further response, plaintiff acknowledged there was nothing more that he had that he could have told Kodack if there was a face to face meeting.

232.     Admitted. By way of further response, there is no additional information plaintiff could have given Kodack if an interview took place.

233.     Admitted. By way of further response, inmates commonly submit grievances claiming that their max date was miscalculated by parole.

234.     Admitted.

235.     Admitted.

236.     Admitted.

237.     Admitted.

238.     Admitted. By way of further response, as a recommitted parole violator, plaintiff was under the jurisdiction of the parole board not DOC.

239.    Admitted. By way of further response, there is no necessity to seek a legal opinion from the DOC chief counsel's office concerning plaintiff's complaints. Plaintiff was properly told to address his complaints to the Parole Board who had exclusive jurisdiction over him.

Facts pertaining to what Herbst knew

The Defendants object to this characterization. Some of the testimony by Herbst was opinion and not facts.

240.    Admitted.

241.    Admitted.

242.    Admitted. By way of further response, only the Parole Board can determine the appropriate back time to give an inmate who received a subsequent sentence while out on parole.

243.    Admitted.

244.    Admitted. By way of further response, information concerning the

calculation of back time for a parole violator as calculated by the Parole Board was considered to be accurate because there was no training or calculations done by anyone in DOC for parole violator inmates.

245.     Admitted. By way of further response, document investigation relative to back time assessed by the Parole Board on parole violator inmates serving as parole violators was assumed to be correct, as this is their expertise and sole responsibility.

246.     Admitted. By way of further response, regardless of where an inmate had been imprisoned at any time in the past, Herbst did not have the ability to determine where that time should be credited to state or federal convictions for purposes of an inmate who is a parole violator.

247.     Admitted in part. Denied in part. It is admitted that Herbst was responsible for the computation of inmates original sentences by the court. It is denied that Herbst was responsible for re-computation of inmate sentences who are convicted parole violators. That was the sole responsibility of the Parole Board.

248.     Denied. Although Herbst could find out what an inmate's total maximum sentence was on an original sentence by looking at a total sentence field on a DC-16E form, Herbst could not determine what a convicted parole violator's new maximum sentence was without a recalculation received by the Parole Board.

249.     Admitted in part. Denied in part. If an inmate's sentence information changed because of something other than the inmate being a parole violator, Herbst could type new information into the computer. However, if the inmate was a parole violator, Herbst could not type in any information about a sentence change until that new calculation was done on a parole violator by the Parole Board.

250.     Admitted.

251.     Denied. While it is true that the records specialist is required to review a file when the parole violator is returned, they cannot ensure that credit is applied until they receive that information from the Parole Board. The Parole Board and only the Parole Board can recalculate a parole violator and determine what back time is due.

252.     Denied. The reception process where a parole violator being returned was to be done by the individual who was on duty at the time the parole violator was returned, not necessarily the records specialist assigned to the particular case.

253.     Admitted in part. Denied in part. It is admitted that the sentence status sheet does contain some of the information alleged in this paragraph. It is denied that the records specialist can complete the DC-16E form relative to sentences by a parole violator because any back time would have to be completed first by the Parole Board.

254.     Denied. Herbst could not redo his sentencing by completing a DC16-E form of a recommitted parole violator, who was in her caseload, until she received the maximum date that was recalculated by the Parole Board.

255.     Denied. It is denied that Herbst testified that if she had questions about back time numbers on the Parole Board's orders to recommit, she would contact Parole. Herbst deposition (p. 103) indicates that Herbst testified that if she had a question about anything on the order to recommit, she would get hold of parole.

256.     Admitted.

257.     Admitted. By way of further response, Herbst seldom met with inmates to explain issues related to sentence status change because such information could be done by way of written grievance responses.

258.     Admitted. By way of further response, plaintiff himself also had the ability to communicate with persons at the institutional parole office.

259.     Admitted. By way of further response, plaintiff also could have contacted the Parole Board to investigate the basis for the calculation, which plaintiff in fact did.

260.     Admitted.

261.     Admitted.

262.     Admitted. By way of further response, this is only on initial court orders and not for recalculated parole violators.

263.     Denied. It is denied that if Herbst detected a discrepancy or an error in connection with any type of sentence, she could check into it by calling the court. She could only do this if it concerned original sentences and not recalculated maximum sentences by the Parole Board.

264.     Admitted.

265.     Admitted.

266.     Admitted in part. Denied in part. It is admitted that plaintiff had no new state sentences. It is further admitted that he still had a total state sentence of six to twelve years. It is denied that plaintiff's calculation as to when his state sentences were maximized were correct. Plaintiff believed that he should have received some credit on his state sentence for time he did on his federal sentences, which was incorrect.

267.     Admitted. By way of further response, Herbst could not calculate back time credit as a convicted parole violator because she did not have the training, and it was not her responsibility or jurisdiction to do so.

268.    Denied. It is denied that the only reason she does not double check the calculations of new parole violator's max dates is because she simply accepts the date the computer generates. Another reason she does not double check the calculation is because she does not have the training or the ability to recalculate parole violator's maximum sentence.

269.    Admitted. By way of further response, at that time, plaintiff had not been past his maximum date.

270.    Admitted.

271.    Admitted. By way of further answer, plaintiff was under the jurisdiction of the Parole Board not the Department of Corrections and therefore, the response she gave to plaintiff was correct.

272.    Admitted. By way of further response, the plaintiff admitted that there was no additional information he could have given Herbst other than the written information he already had.

273.    Admitted. By way of further response, Herbst knew that plaintiff was a recommitted parole violator and therefore, any errors in calculation would have to be addressed to Parole.

274.    Denied. It is denied that Herbst did not look into any parole

information that she had received. Herbst testified (p. 111) of her deposition that she may have reviewed the computer screen to determine what plaintiff was talking about in his grievance.

275.     Admitted.

276.     Admitted.

277.     Admitted.

278.     Admitted. By way of further response, there was no need to talk to plaintiff because any error in calculation was an issue that could only be addressed to the Parole Board.

279.     Admitted.

280.     Admitted.

281.     Admitted.

282.     Admitted.

283.     Admitted.

284.     Admitted.

285.     Admitted. By way of further answer, there was no need for Plaintiff's

counselor to meet with plaintiff because all of the information plaintiff had concerning his multiple sentences had been sent to the Parole Board which had jurisdiction over the plaintiff.

286.     Admitted. By way of further answer, plaintiff had not served his state time at the time they spoke.

287.     Admitted. By way of further answer, there was no need for Herbst to meet with plaintiff because Herbst already had.

288.     Admitted.

289.     Admitted.

290.     Admitted.

291.     Admitted.

292.     Admitted.

293.     Admitted.

294.     Denied.

295.     Admitted in part. Denied in part. It is admitted the plaintiff testified to this. Denied that there is any evidence other that plaintiff's testimony that this is true.

296.     Admitted.

297.     Admitted.

298.     Admitted.

299.     Admitted in part. Denied in part. It is admitted that Dunn could pull

the minimum/maximum dates form, which had the inmate's sentence structure on

it. It is denied that Dunn could pull off a maximum date of an inmate who was

recommitted as a parole violator who had not yet had their recalculated max date

from the Parole Board.

300.     Admitted.

301.     Admitted.

302.     Denied. It is denied that a unit manager is responsible for "addressing

inmate's needs". There are only certain needs that a unit manager can address

relative to inmate requests. By way of further response, concerning having inmates

speak to whomever they need to speak to get a problem resolved, the only persons

plaintiff could speak to concerning his alleged problem was parole board members

and not any DOC members.

303.     Admitted in part. Denied in part. It is admitted that a unit manager can

arrange a meeting between an inmate and records supervisor to discuss sentence

structures. It is denied that just because an inmate requests a meeting that one

should be scheduled. Many inmates' claim their recalculated max dates were done erroneously by the Parole Board and plaintiff himself testified that any such meeting would result in him just already explaining and giving information that he had already provided by way of written complaint.

304.    Admitted.

305.    Admitted.

306.    Denied. It is denied that the unit managers meet with inmates in response to request slips. Unit managers can meet with inmates if necessary. It was not necessary to meet with plaintiff concerning his complaint.

307.    Admitted.

308.    Denied. It is denied that at any time plaintiff told Dunn that he was actually being held past his maximum sentence of July 14, 2009.

309.    Admitted in part. It is admitted that plaintiff testified to this.

310.    Admitted.

311.    Admitted.

312.    Admitted in part. It is admitted that plaintiff testified to this.

Respectfully submitted,

LINDA L. KELLY
Attorney General


By:   *s/Timothy P. Keating*

TIMOTHY P. KEATING
Senior Deputy Attorney General
Attorney ID 44874

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 705-8580
Fax:    (717) 772-4526
tkeating@attorneygeneral.gov

GREGORY R. NEUHAUSER
Chief Deputy Attorney General
Chief, Civil Litigation Section

Date: November 16, 2012

Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON CHAPPELLE** | : | |
| **Plaintiff,** | : | **Civil Action - Law** |
| | : | **No. 11-0304** |
| **v.** | : | |
| | : | **(Judge Conner)** |
| **DAVID VARANO, JOHN DUNN,** | : | |
| **DEBORAH HERBST, MICHELLE** | : | **Electronically Filed** |
| **KODACK and RENEE FOULDS** | : | |
| **Defendants,** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy P. Keating, Senior Deputy Attorney General for the

Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that

on November 16, 2012, I caused to be served a true and correct copy of the

foregoing document titled Defendants' Answers to Plaintiff's Counter Statement of

Facts to the following:

**VIA ECF:**

**Jennifer J. Tobin, Esq.**
**Pennsylvania Institute Law Project**
**718 Arch Street, Suite 304 South**
**Philadelphia, PA 19106**
*Attorney for Plaintiff*

> *s/Timothy P. Keating*
> **TIMOTHY P. KEATING**
> Senior Deputy Attorney General