IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAMON CHAPPELLE             :
                            :        Civ. No. 4:11-CV-00304
            Plaintiff,      :
                            :        (Judge Brann)
                            :
    v.                      :
                            :
DAVID VARANO,               :
MICHELLE KODACK,            :
DEBORAH HERBST,             :
JOHN DUNN,                  :
RENEE FOULDS                :
                            :
            Defendants.     :

**MEMORANDUM**
October 30, 2013

This civil rights action, filed pursuant to 42 U.S.C. § 1983, was commenced

on Feburary 11, 2011.  Pl.'s Compl., Feb. 11, 2011, ECF No. 1 [hereinafter Pl.'s

Compl.].  Damon Chappelle ("Plaintiff") asserts an overdetention claim under the

Eighth Amendment to the United States Constitution and a false imprisonment

claim under Pennsylvania law, because he was held in custody for several weeks

beyond his maximum sentence date.  Presently before the Court is Defendants'

Motion for Summary Judgment (ECF No. 44), filed on September 24, 2012.

Defendants David Varano, John Dunn, Deborah Herbst, Michelle Kodack,

Renee Foulds (together "Defendants") were all employees of the Pennsylvania

1

Department of Corrections ("DOC") at the time of the incident. They seek summary judgment in their favor both with respect to Plaintiff's claims, as well as on their two asserted affirmative defenses: qualified immunity and the favorable termination rule. Defs.' Br. Supp. Mot. Summ. J. 17, September 24, 2012, ECF No. 45 [hereinafter Defs.' Br. Summ. J.].

For the reasons that follow, summary judgment is denied in part and granted in part with respect to Defendants Varano, Kodack, and Herbst. With respect to Defendants Foulds and Dunn, summary judgment is granted and they are dismissed from the action.

## I.    BACKGROUND

Mr. Chappelle was released on parole while serving a six to twelve (6 to 12) year state sentence for armed robbery when he was arrested on federal gun and drug charges on September 25, 2001. Pl.'s Answer Statement Facts ¶¶ 131–32, 137, Oct. 22, 2012, ECF No. 49 [hereinafter Pl.'s SOF]. He had served six (6) years and seventy-two (72) days of his original sentence, which left five (5) years and two-hundred ninety-three (293) days on his sentence before he reached the maximum of twelve (12) years. Pl.'s Compl. ¶ 11. At the time of this arrest, Mr. Chappelle had been out on parole (not incarcerated) for approximately one-hundred seventy (170) days, which was then added to his maximum state sentence

date, resulting in a new maximum sentence date for his original crime of about July 15, 2007.[1] Id. Mr. Chappelle served the remainder of his 12-year state sentence in Department of Corrections ("DOC") custody until July 18, 2007, when he was then transferred to federal custody to serve his federal sentence for the September 2001 crimes. Id. ¶ 16.

After completing his federal sentence on April 15, 2009, Mr. Chappelle was returned to the State Correctional Institute Coal Township ("Coal Township"), where he spent the next ninety-four (94) days. Id. ¶¶ 18; Pl.'s SOF ¶¶ 145–46. During this period of time after April 15, 2009, Mr. Chappelle believed he was being wrongly imprisoned beyond his maximum sentence date. He made numerous verbal and formal written requests to prison officials to remedy or investigate his predicament, but the officials responded with varying degrees if ineffectiveness and inefficiency. See Pl.'s Compl. ¶ 24.

The Defendants contend that the Pennsylvania Board of Probation and Parole ("PBPP") has the exclusive authority to recalculate an inmate's maximum time remaining on his or her sentence. Defs.' Br. Summ. J., at 1. Ultimately, the Parole Board recalculated Chappelle's state maximum time to be July 14, 2009.

---

[1]The parties dispute the accuracy of this calculation of Mr. Chappelle's exact maximum date. See, e.g., Pl.'s Br. Opp'n Summ. J. 35, Oct. 23, 2012, ECF No. 50.

The Defendants received this information on July 30, 2009, and released Mr. Chappelle from Coal Township on either July 30 or 31, 2009.[2]    Defs.' Br. Summ. J., at 1; Defs.' Statement Facts ¶ 40, Sept. 24, 2012, ECF No. 46 [hereinafter Defs.' SOF].

David Varano served as the Superintendent of State Correctional Institute Coal Township ("Coal Township") since 2008.  Defs.' SOF ¶ 1.  In that capacity, Mr. Varano was responsible for the daily operations of Coal Township including the safe housing of between 2,200 and 2,300 inmates, in addition to overseeing a staff of more than 500 people.  Id. ¶ 2.  During the relevant time, Varano supervised the inmate grievance system and would typically review ten to fifteen "request slips" per week through the appeals process.  Id. ¶ 9.  Although it was not his general practice, Mr. Varano would meet with inmates on occasion to address their greviances.  Pl.'s SOF ¶¶ 168, 176.  Mr. Varano was an ultimate authority with the ability to resolve prisoner grievances; at the very least, he knew how to pursue the parties or agencies that could resolve the issues.  See id. ¶¶ 176, 181–84.

Michelle Kodack was the Records Supervisor, responsible for the maintenance and accuracy of inmates' institutional files.  Id. ¶ 211.  She was

_____

[2]The parties dispute Mr. Chappelle's actual date of release.  Mr. Chappelle contends he was finally released on July 31, 2009, whereas the Defendants state it was July 30, 2009.  See Pl.'s SOF ¶ 40; Defs.' SOF ¶ 40.  As previously noted, the parties also dispute the calculation of his maximum sentence date.  See supra note 1.

charged with the duty to review the computation data involving inmates' sentence statuses to ensure accuracy, and oversee both the reception and release process for prisoners. Id. ¶ 214. When an inmate complained he or she was held past the maximum date of his or her sentence, Ms. Kodack generally checked the prisoner's data, often met with prisoners to obtain more information, and was able to contact the Parole Board to investigate issues. Id. ¶¶ 222–24.

Deborah Herbst was a Records Specialist with access to all information on inmates in the DOC's inmate records system, and was responsible for the maintenance and accuracy of those files. Pl.'s SOF ¶¶ 240, 244. She was also responsible for computation of inmates sentences and investigating sentence lengths. Id. She also met with inmates to explain issues relating to sentence statuses and talked with staff persons in the institutional parole office to solve issues. Id. ¶¶ 257–58.

Renee Foulds was a Corrections Officer: a Counselor responsible for keeping track of the programs required of the inmates and their progress in the programs, as well as helping inmates plan for their release. Id. ¶¶ 283. Unlike the previous three Defendants, who were directly involved with inmates' sentence information, Ms. Foulds often did not consult that information, had only ancillary access to it, and was not responsible for the accuracy of detention records. Id. ¶¶

283–86; Defs.' Br. Summ. J., at 7.

John Dunn was a Unit Manager, charged with, *inter alia*, planning, coordinating, and directing treatment programs for inmates on his unit.  Pl.'s SOF ¶ 300.  He was responsible for addressing inmates' needs, including asking other staff members to help or making arrangements for inmates to speak with other members of the staff.  Id. ¶ 302.  Mr. Dunn had neither direct access to inmates records nor the responsibility for their accuracy.  See id.

In light of the Defendants' roles within the prison, the Court now considers Chappelle's claims on summary judgment.

## II.   DISCUSSION

### A.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 447 U.S. at 331 (Brennan, J., dissenting)). For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Affidavits and declarations may be used to support a motion, but summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 54(a).

B.     42 U.S.C. § 1983 CLAIM

It is well established that imprisonment for a significant period beyond the

term of one's sentence may constitute cruel and unusual punishment in violation of the Eighth Amendment.  <u>Sample v. Diecks</u>, 885 F.2d 1099, 1109–10 (3d Cir. 1989).  Federal law provides a cause of action against any "person who, under color of" state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution" under 42 U.S.C. § 1983.

To establish § 1983 liability on this issue, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem, and therefore of the risk that unwarranted punishment may be inflicted.  <u>Sample</u>, 885 F.2d at 1110. "Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances indicating that [the official's] response to the problem was a product of deliberate indifference to the prisoner's plight." <u>Id</u>.  Third, the plaintiff must prove causality—namely, that there was "a connection between the official's response to the problem and the infliction of the unjustified detention."  <u>Id</u>.

For example, in <u>Sample v. Diecks</u>, 885 F.2d 1099, 1112 (3d Cir. 1989), Judge Stapleton of the United States Court of Appeals for the Third Circuit held that there was a violation of an inmate's Eighth Amendment rights when the records supervisor—who had the responsibility and authority to direct the release of inmates whose time had expired—had notice of the issue and exhibited

deliberate indifference that caused the plaintiff's unjustified detention.

In the present case, Defendants draw the issue quite narrowly attempting to distinguish the instant litigation from the facts of <u>Sample</u>. They claim that, while Defendants maintain responsibility and authority over calculating an inmate's sentence when they are initially sentenced, once that inmate has been subjected to Parole Board action—for example, absconding supervision—it is the sole responsibility of the Parole Board to recalculate the prisoner's new maximum date. Defs.' SOF ¶¶ 96, 98. Thus, Defendants assert they did not act with deliberate indifference toward Plaintiff's claim of miscalculation—rather, there was simply nothing they could do about it. Defs.' Br. Summ. J., at 22. The Court considers these assertions within the three-part framework articulated in <u>Sample</u>, turning first to the notice element.

### 1. Four Defendants Had Notice of Risk of Overdetention

Defendants argue that they were not specifically aware of a risk that unwarranted punishment (over-detention) was being inflicted upon Plaintiff, as inmates—of which there are over 2000 at Coal Township—routinely claim that they are being held past their release date. Defs.' SOF ¶¶ 1–7 . In the past twelve (12) years, Defendants know of only three inmates (including Plaintiff) who have actually been held past their proper maximum sentence date. Defs.' Br. Summ. J.,

at 27.

In order for Defendants to be properly on notice that he was being unlawfully detained, Mr. Chappelle must have presented credible evidence corroborating his claim that his sentence was in error. Askew v. Kelchner, 2007 WL 763075, at *6 (M.D. Pa., Mar. 7, 2007) (Conner, J.) (finding prisoner's un-corroborated assertion that he believed his sentence computation to be in error was insufficient to put prison officials on notice); see also Moore v. Tartler, 986 F.2d 682, 686–87 (3d Cir. 1993) (citing with approval only cases where inmate presented credible evidence of over-detention). Without this evidentiary requirement, any passing complaint by an inmate regarding the length of his sentence could put a prison guard "on notice" of a constitutional violation. See Askew, 2007 WL 763075, at *6. To say such a rule would overwhelm prison officials is an understatement, and the Court declines to adopt such an onerous requirement. See id.

In the matter at hand, however, four of the five Defendants fully acknowledge that they were aware of Chappelle's concern regarding his detention. See Defs.' Br. Summ. J., at 17–24. This is likely due, in part, to the grievance system maintained by the prison. It is designed to address inmates' legitimate concerns by way of filing request slips with Defendant Varano's assistant, who

then assigns each request to an appropriate staff member.  Defs.' SOF ¶¶ 7–10.

Superintendent Varano admits reviewing a request slip from Chappelle dated April 17, 2009, which he understood as a complaint that Chappelle was not properly credited for time he had previously served.  Pl.'s SOF ¶¶ 162, 165–66.  In fact, Varano responded in writing to Chappelle's grievance stating that his issues "can be addressed with both parole and our records office," adding that "obviously we would not be keeping you past your max date."  Pl.'s Brf. Opp., Ex. C, Oct. 25, 2012, ECF No. 52.  This undisputed evidence defeats summary judgment with respect to Defendant Varano's awareness of Chappelle's grievance and presents a material issue of fact concerning whether this prison official had been put on notice of a risk that Chappelle was being over-detained.

Defendant Herbst, a Records Specialist at Coal Township, also acknowledges receiving and responding to a request slip from Chappelle seeking to speak to someone in records about his incarceration at that institution as he believed there was an error in his sentence calculation.  Pl. SOF ¶ 271; Def. Brf. Summ. J., Ex. D, ECF No. 46-5.  Defendant Herbst recalls responding to Plaintiff's request in writing by informing Plaintiff that he needed to contact the Parole Board.  Id.  This undisputed evidence—like that discussed in connection with Defendant Varano—also defeats Herbst's claim that he had no notice, as a matter

of law, that Chappelle may have been unlawfully detained.

Defendant Michelle Kodack also read Chappelle's grievance for the purpose of issuing a response. Pl.'s SOF ¶ 208. She understood Plaintiff's grievance to be a complaint that he was not being credited with all the time to which he was entitled. Id. And, like all such complaints that an inmate is being held past his max date, Defendant Kodack would have either checked the computer or pulled Plaintiff's file in response. Id. ¶ 222. Although Kodack did not specifically recall Chappelle's grievance of the many she routinely receives, when presented with her written response to Chappelle's complaint, Defendant Kodack identified it as such and did not contest that she would have received and responded to this grievance. Id. ¶¶ 230–39. This evidence, while not conclusive, defeats summary judgment in Defendants' favor on this point. There remains the material question of fact regarding whether Defendant Kodack was made aware of Plaintiff's grievance by his request slip and Defendant's response.

Unlike the three other defendants, Renee Foulds—a corrections officer and counselor at the facility—never received a formal request slip containing Plaintiff's grievance. Instead, however, Defendant Foulds recalls speaking with Chappelle on several occasions regarding his sentence. Pl.'s SOF ¶ 286; Def.'s Brf. Summ. J., Ex. E, ECF No. 46-6. In fact, it was Chappelle's insistence on and frustration with

his allegedly unlawful detention that Defendant specifically recalls about this inmate. Id. In light of Defendant's admission and the repeated conversations she recalls having had with Plaintiff on this specific topic, the Court concludes that a material issue of fact remains on this point.

Defendant Dunn (a Unit Manager who oversees the correction officers), by contrast, denies ever being made aware of Chappelle's over-incarceration concern. Defs.' Answer Statement Facts ¶ 308, Nov. 16, 2012, ECF No. 55 [hereinafter Defs.' Ans. SOF]. Although Chappelle claims that, upon being placed in Dunn's unit he immediately notified Dunn that he was being improperly held at the Coal Township facility, Chappelle points to no other competent evidence to corroborate his claim. There is no request slip evidencing a properly-filed grievance, nor is there any evidence demonstrating that Dunn, in particular, knew of Plaintiff's concern. Accordingly, summary judgement in favor of Defendant Dunn is proper and he will be dismissed from this action. See Askew, 2007 WL 763075, at *6.

Chappelle argues that, in addition to the personal notification each Defendant received, all of them had access to his sentencing and custody information through the DOC computer system. Pl.'s Br. Opp'n Mot. Summ. J. 13, Oct. 23, 2012, ECF No. 50 [hereinafter Pl.'s Br. Opp'n]. To the extent that Chappelle's argument can be construed as placing an affirmative duty upon

14

Defendants to investigate Plaintiff's uncorroborated complaint, the Court declines to adopt this approach.  See Askew, 2007 WL 763075, at *6.

It is Defendants' awareness of Plaintiff's plight that triggers a potential duty to investigate, not the availability of means by which to do so.  Sample, 885 at 1112.  As discussed above, allowing an inmate's bare assertion that he believes his sentence is erroneous to provide sufficient notice of a constitutional violation would impose an untenable burden on prison officials.  See Askew, 2007 WL 763075, at *6.  If anything, the accessibility of Plaintiff's sentencing information and records might support whether Defendants acted with deliberate indifference in responding to a credible claim.  It does nothing, however, to assist Chappelle in establishing notice.

### 2.    Deliberate Indifference

Turning to whether the four remaining Defendants acted with deliberate indifference in responding to Plaintiff's concern, the Court considers the scope of Defendants' duties and the role they play in the everyday life of the prison.  Sample, 885 F.2d at 1110.  Deliberate indifference can be demonstrated where prison officials are put on notice and then simply refuse to investigate a prisoner's claim of sentence miscalculation.  Id. (citing Alexander v. Perrill, 916 F.2d 1392, 1398 (9th Cir. 1990); Haygood v. Younger, 769 F.2d 1350 (9th Cir. 1985)).

For example:

> if a prison official knows that, given his or her job
> description or the role he has assumed in the
> administration of the prison, a sentence calculation
> problem will not likely be resolved unless he or she
> addresses it or refers it to others, it if far more likely that
> the requisite attitude [for deliberate indifference] will be
> present.

Id.  By contrast, "[a] warden . . . although he may have ultimate responsibility for

seeing that prisoners are released when their sentences are served, does not exhibit

deliberate indifference by failing to address a sentence calculation problem brought

to his attention when there are procedures in place calling for others to pursue the

matter."  Sample, 885 F.2d at 110.  "Moreover, not every official who is aware of a

problem will be found to exhibit deliberate indifference by failing to resolve it."

Atwell v. Lavan, 557 F. Supp. 2d 532, 562 (M.D. Pa. 2008) (Rambo, J.; Blewitt,

M.J.).

Deliberate indifference was not present where prison officials responded to

prisoner's complaint regarding over-detention by beginning a five month

investigation into the claim, which ultimately resulted in the prisoner's release.

Moore, 986 F.2d at 687 (finding that an investigation, however slow and

incompetent, was conducted pursuant to policy and therefore precluded evidence of

deliberate indifference).

In the instant case, Defendants frame the issue of deliberate indifference in terms of which party was responsible for calculating the remainder of Plaintiff's sentence after he absconded parole. Defs.' Br. Summ. J., at 26. The Defendants argue that party—which, according to Defendants, is the Pennsylvania Board of Probation and Parole ("PBPP")—and only that party, can be held to answer for Plaintiff's concern of over-detention. See id.

Defendants claim that PBPP is solely responsible for calculating Plaintiff's maximum sentence, and not DOC. See id. Further, Defendants state that even if PBPP's recalculation is incorrect, DOC has no authority to alter that date or release the inmates. See id. This, in Defendants' view, absolves them from any responsibility for holding Plaintiff past his release date.

In support of this contention, Defendants point to Pennsylvania's parole statute, 61 Pa. C.S.A. § 331.21a(a). That section, however, was repealed in 2009 and replaced by 61 Pa. C.S.A. § 6138, which sets out the parameters by which the PBPP may recommit an offender following a parole violation. See 61 Pa. C.S.A. § 6138. It is true that the Board has the authority to make decisions regarding an inmate's back time or credit to be applied to his new sentence, and where that sentence should be served. Id. It is not readily apparent on the face of the statute, however, that the computation and oversight of a sentence is within the exclusive

province of the PBPP.  See id.

Moreover, in Sample the Third Circuit noted that the crux of the deliberate indifference inquiry is whether the defendant had a duty to investigate and unravel the sentencing problems, not whether the defendant had the primary ability to resolve the problem.  Sample, 885 F.2d at 1112.  In that decision, Judge Stapelton elucidated that, because the defendant had access to all relevant records and the ability to understand them, he was "in the best position to either solve the problem or know who could."  Id.  Thus, defendant's failure to take meaningful steps to resolve the problem constituted deliberate indifference, even though he was not the primary authority with the ability to resolve it.  See id.

Turning to the individual Defendants, Renee Foulds is the Corrections Unit Manager.  Defs.' Br. Summ. J., at 7.  Unlike the other Defendants who process formal inmate grievances, her "main responsibility is to review inmate files and treatment recommendation to help them plan for their release."  Defs.' SOF ¶ 58.  It is very common, however, for inmates who are brought back as parole violators to dispute verbally their maximum date with Defendant Foulds.  Id.

Defendant Foulds remembers Plaintiff complaining he was not supposed to be there because he was not a parole violator.  Id. at 8.  In response, she told Plaintiff to express his concerns to the records department and his parole agent,

because they could respond more accurately. Id. Therefore, she attempted to point Plaintiff in the direction of the people she believed could solve his problem, based on her experience and role in the daily life of the prison. Defendant did not deliberately ignore Plaintiff. Rather, she spoke with him, but could not understand the discrepancy, and thus, took PBPP's action to be accurate when she received it. Id. In light of her role, duties, and responsibilities in the everyday life of the prison, this is not a deliberately indifferent response to Plaintiff's verbal and informal complaint. See Sample, 885 F.2d at 1110. As such, Defendant Foulds shall be granted summary judgment in her favor on this issue and dismissed from the action.

Regarding Defendant Michelle Kodack, she is charged with accepting and processing inmates' formal requests for information in her role as Records Supervisor. Defs.' SOF ¶¶ 15–22. In response to Chappelle's request for information, Defendant Kodack did explain Plaintiff's reference to "backtime credit" and the fact that he was returned to Coal Township as parole violator meant that she had "no authority to change what the [P]arole [B]oard" gave her, which was why she denied Plaintiff's grievance. Defs.' SOF, Ex. C, 44–45, ECF No. 46-4. Kodack could not, however, identify specific steps she took in responding to Plaintiff's grievance, such as, conferring with the Parole Board or the legal department, reviewing Chappelle's file or speaking with Varano. See id. This

being the case, Kodack is not entitled to summary judgment on the issue of deliberate indifference.

Turning to Defendant Deborah Herbst's actions in her role as a Records Specialist, she did not recall evaluating Chappelle's file for information about the time he had spent at Coal Township, or anywhere else. Defs.' SOF, Ex. D 110, ECF No. 46-5. She did not schedule an interview with Chappelle, consult with a supervisor, anyone in Parole or any other source. See id. Rather, she simply told Plaintiff he should contact the Parole Board. Id. Herbst could not recall much information about the sentence calculation process—including whether she had ever fielded a grievance from an inmate complaining that he was being held past his maximum sentence. See id. at 112. As such, the ambiguities in Herbst's response to Chappelle's complaints render her unentitled to summary judgment on this issue.

Considering Defendant David Varano, it appears undisputed that he personally responded to three of Plaintiff's request slips that came across his desk, all of which concerned the same grievance: that Chappelle was being held past his maximum sentence. Defs.' SOF ¶¶ 1–14; Pl.'s SOF ¶¶ 181–84. Although Defendant Varano does not regularly meet with inmates concerning their grievances, certain circumstances may warrant such a face-to-face meeting if the inmate so requests one. Varano did not meet with Plaintiff in connection with any

of his request slips and could not recall any other specific steps he took in responding to Chappelle's request, such as contacting the Parole Board, or the Records Department at Coal Township. Although Varano testified that he contacted Michelle Kodack in Records regarding her response to Plaintiff's grievance—the same one she denied—Kodack did not recall ever speaking with anyone, including Varano, about this particular request. See id. These inconsistencies in the testimony clearly raise issues of disputed material facts, and therefore, summary judgment is not appropriate with respect to Varano on this issue.

Defendants next argue that Plaintiff's apparent claim that Defendants did not respond to his grievance should not give rise to a constitutional violation as there is no constitutional right of prisoners to a grievance process. Defs.' Br. Summ. J., at 28–29. This may well be true. But it is also true that Defendants, once aware of Plaintiff's plight, were not free to disregard his claim with deliberate indifference. See Moore, at 687. Indeed, the Third Circuit considers a defendant's failure to follow procedures mandated by the Pennsylvania Board of Correction as a relevant factor in considering defendants' exhibited deliberate indifference. See Sample, 885 F.2d at 1111.

Finally, Defendants claim that "the most obvious demonstration" that they

were not deliberately indifferent to Plaintiff's complaints is Defendant Varano's written response to Plaintiff grievance that, "[o]bviously, we would not be keeping you past your max date." Defs.' Br. Summ. J., at 29–30. Despite Defendant's zealous assertion, the Court cannot discern why this alleged statement amounts to an "obvious demonstration" of anything at all. Perhaps it evidences Defendant Varano's stated intent not to violate Plaintiff's constitutional rights. But true to the maxim that actions speak louder than words, the Court considers the totality of Defendants' *actions* in responding to Plaintiff's complaint, not merely their stated intentions.

### 3. Causation

Chappelle must also prove, or in the case of summary judgment demonstrate a genuine dispute of material facts, that Defendants' notice of and deliberate indifference to Plaintiff's claim were causally related to his overdetention. Sample, 885 F.2d at 1111. Indeed, "for liability to attach . . . the identified deficiency . . . must be closely related to the ultimate injury." Sample, 885 F.2d at 1117 (quoting City of Canton v. Harris, 489 U.S. 378 (1989) (internal quotations omitted)).

There is clearly a dispute between the parties on genuine issues of material fact on the causation issue. Chappelle directly contends that, but for the Defendants' deliberate indifference to his plight, he would not have suffered the

overdetention giving rise to the constitutional claims.  Defendants, however, center their causation argument around allegations that they had no inherent power to resolve Plaintiff's issue.  Rather, Defendants urge that the power to resolve Plaintiff's plight, and thus the alleged cause of his injury, was with the PBPP. Moreover, the parties dispute what Plaintiff's proper release date should have been. Pl.'s Br. Opp'n, at 35.  As the parties dispute these material facts, Defendants are not entitled to summary judgment on the issue of causation.

## C. DEFENDANTS NOT ENTITLED TO QUALIFIED IMMUNITY

The Defendants contend that they are entitled to qualified immunity from Plaintiff's § 1983 claims.  Defs.' Br. Summ. J., at 24.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (Alito, J.) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The undergirding principles of qualified immunity attempt to strike a balance between providing a means of redress when government officials abuse their office, and mitigating "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."  Anderson v. Creighton, 483 U.S. 635, 638 (1987); see also Davis v. Scherer, 468 U.S. 183, 195

(1984).

The qualified immunity doctrine provides "an immunity from suit rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). As such, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," including summary judgment. <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991). Qualified immunity may apply "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" <u>Pearson</u>, 555 U.S. at 231 (citing <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

In the instant case, the relevant question is whether a reasonable prison official could have believed Defendant's response to Plaintiff's assertions was lawful in light of clearly established law (here, the Eight Amendment) and the information the official possessed. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). This is a two-part inquiry. For one, the court must determine whether the law was "clearly established" at the time of the allegedly infringing conduct. <u>Schneyder v. Smith</u>, 653 F.3d 313, 318 (3d Cir.). Second, the court must apply the objective standard of whether a reasonable person, acting as Defendants did, would have known that their conduct violated the clearly established law. <u>Id.</u> These

considerations may be addressed in either order—here this Court initially considers whether the right in question was "clearly established." See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

First, for a law or constitutional right to be "clearly established" in the context of a § 1983 claim, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citing Mitchell, 472 U.S. at 535 n. 12) (internal quotations omitted). Moreover, the right must be "clearly established in a more particularized . . . sense," rather than at a high level of abstraction. Anderson, 483 U.S. at 640 (citing Mitchell, 472 U.S. at 535, n. 12) (internal quotations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of pre-existing law the unlawfulness must be apparent." Id.

Decades before the alleged over-detention in this case, the Third Circuit had firmly stated that "there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." Sample, 885 F.2d at 1108 (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)). Moreover, it was also clearly established that a prison official who had "access to all of the relevant inmate records and . . . [the] training in how to decipher them . . . was in the best

position either to solve the problem himself or know who could." <u>Sample</u>, 885

F.2d at 1112. As a result, he had "the duty expeditiously to unravel sentencing

problems." <u>Id.</u> This statement of the law is sufficient to determine that the

Plaintiff's Eighth Amendment right against over-detention the Defendants allegedly

violated was clearly established at the time of the questionable conduct. <u>See</u> <u>id.</u>

Next, the Court must determine whether a reasonable prison official, with the

information Defendants' possessed, would have believed his response to

Chappelle's complaints was lawful and not in contravention of the Plaintiff's

clearly established right. <u>Anderson</u>, 483 U.S. at 641. This is an objective standard.

<u>Id.</u> It does, however, take into account the information Defendants' had at the time.

<u>Id.</u> In this case, it is established that the remaining Defendants (Mr. Varano, Ms.

Herbst, and Ms. Kodack) had notice of Chappelle's grievances. <u>See</u> *supra* pp.

6–11. Thus, the issue turns on whether, in light of that notice, the Defendants'

responses were objectively appropriate. <u>Anderson</u>, 483 U.S. at 641.

Given that it was clearly established that "imprisonment beyond one's term"

is a violation of the Eighth Amendment, and that a prison official who had the

access and ability to address a prisoner's legitimate complaint had a duty to do so, a

reasonable prison official would have known the Defendants' responses render

them unentitled to qualified immunity in this case. <u>Sample</u>, 885 F.2d at 1108. In

response to Chappelle's complaints, Defendant Varano did not meet with the

Chappelle and could not recall any other specific steps he took in responding to

Chappelle's request, such as contacting the Parole Board or the Records Department

at Coal Township.  Defendant Herbst did not schedule an interview with Chappelle,

consult with a supervisor or anyone in Parole, or take any other steps to address

Chappelle's concerns despite having the wherewithal and capability to provide

redress.  Pl.'s SOF ¶ 271; Defs.' Br. Summ. J., Ex. D.  Defendant Kodack simply

stated that she had "no authority to change what the [P]arole [B]oard" gave her, and

could not state any other specific steps she took to address Chappelle's complaint

despite having the means and ability to do so.  Defs.' Br. Summ. J., Ex. C 44–45.

Thus, the Defendants are not entitled to qualified immunity.

Moreover, finding that the Defendants' responses to Chappelle's repeated

complaints are not entitled to qualified immunity will not "unduly inhibit officials

in the discharge of their duties."  Anderson, 483 U.S. at 638.  Rather, it reinforces

the clearly established law that they do, in fact, have a duty to act, rather than pass

off their responsibilities while a man remains wrongfully detained.  See id.; Sample,

885 at 1112.

### D. THE FAVORABLE TERMINATION RULE ESTABLISHED IN HECK v. HUMPHRY DOES NOT APPLY TO THIS CASE

Defendants contend that Chappelle's claims are barred by the favorable

termination rule, articulated by Justice Scalia in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486–87 (1994), which provides:

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

<u>Heck v. Humphrey</u>, 512 U.S. 477, 486–87 (1994).

This rule only applies, however, when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." <u>Id.</u> at 487. In contrast, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." <u>Id.</u> Judge Rendell further discussed the rule's application, writing for the Third Circuit that "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate." <u>Leamer v. Fauver</u>, 288 F.3d 532, 542 (3d Cir. 2002)

In the instant case, the Plaintiff does not dispute the validity of his conviction or his corresponding sentence at all. <u>See generally</u> Pl.'s Compl. The conflict

centers on the amount of time he was held *in excess* of his valid conviction and sentence.  The disputed period of confinement is both temporally and legally separate from the Plaintiff's actual conviction and sentence.  A finding for Plaintiff under § 1983 based on the period he was held beyond his original sentence would not imply the invalidity of the conviction or sentence, and therefore does not trigger the application of the favorable termination rule.  See Heck, 512 U.S. at 487; Leamer, 288 F.3d at 542.  Consequently, Defendants' reliance on Heck is misplaced; it does not apply to the issue in this case.

E.     STATE LAW FALSE IMPRISONMENT CLAIM DISMISSED

The Court may exercise supplemental jurisdiction over the state law false imprisonment claim in this case because it is part of the same case or controversy as the federal claims and it derives from a "common nucleus of operative fact."  See 28 U.S.C. § 1367(a); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

An unreasonable delay before release may constitute a claim for false imprisonment based on unlawful detention.  Regan v. Upper Darby Twp., CIV A 06-1686, 2009 WL 650384, at *11–12 (E.D. Pa. Mar. 11, 2009) aff'd, 363 F. App'x 917 (3d Cir. 2010) (citing Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994)).  A short delay of several days, however, may not constitute the tort of false imprisonment.  Burgess v. Roth, 387 F. Supp. 1155, 1161 (E.D. Pa. 1975).

For example, in <u>Burgess</u> the court found that a six (6) day delay between the parole board's order to a prison to release the plaintiff, and the receipt of that order and release of the plaintiff, did not constitute false imprisonment. <u>Id.</u>, *cited with approval in* <u>Regan v. Upper Darby Twp.</u>, 363 F. App'x 917, 924 (3d Cir. 2010).

In the instant case, on July 29, 2009, the Parole Board notified the DOC that the Chappelle's maximum date had been recalculated to July 14, 2009. Chappelle was then released pursuant to procedure either the following day, July 30, or the day after that, July 31, 2009.[3] A delay of at most two nights is not an "unreasonable delay" sufficient to constitute a claim for false imprisonment in this context. <u>Reagan</u>, 363 F. App'x at 925. Moreover, Chappelle did not even address the issue in his Motion in Opposition to Defendants' Motion for Summary Judgment. The Defendants are, therefore, granted summary judgment on the Plaintiff's false imprisonment claim.

## III. Conclusion

For the reasons discussed above, the Motion for Summary Judgment by Defendants Foulds and Dunn is GRANTED and they are dismissed from the action. The Motion for Summary Judgment is DENIED in part and GRANTED in part for

---

[3]As previously discussed, the parties dispute Mr. Chappelle's actual date of release. <u>See</u> Pl.'s SOF ¶ 40; Defs.' SOF ¶ 40.

Defendants Varano, Kodack, and Herbst.

An appropriate Order follows.

BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge